**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEIZED PROPERTY RECOVERY CORPORATION | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1570 (PLF) |
| | ) |
| UNITED STATES CUSTOMS AND BORDER PROTECTION | ) |
| | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Customs and Border Protection, by and through its undersigned attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully moves for summary judgment in this case brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552. Summary judgment is sought on the grounds that there are no material facts in dispute and that defendant is entitled to judgment as a matter of law.

A statement of material facts as to which there is no genuine dispute and a memorandum of points and authorities with supporting declarations and exhibits are filed herewith.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney

_____        _____
                                         R. CRAIG LAWRENCE, D.C. Bar # 171538
                                         Assistant United States Attorney

PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated: December 13, 2005

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEIZED PROPERTY RECOVERY<br>CORPORATION | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 05-1570 (PLF) <br> ) |
| UNITED STATES CUSTOMS AND<br>BORDER PROTECTION | ) <br> ) <br> ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.  FACTUAL BACKGROUND**

By regulation, Customs and Border Protection ("CBP") (a subcomponent of the Department of Homeland Security since 2002) publishes notices of seizure and intent to sell or forfeit property that has been seized by CBP.  See 19 C.F.R. § 162.45.  See also 19 U.S.C. § 1607 (providing the statutory basis for 19 C.F.R. § 162.45).  CBP's notice includes among other things a description of the property seized and the time, cause and place of the seizure.  See 19 C.F.R. § 162.45(a).  The notice is published for at least three successive weeks in a newspaper circulated at the Customs port and in the judicial district where the property was seized.  See 19 C.F.R. § 162.45(b); see also Aug. 3, 2005 Complaint Exhibit J (sample newspaper notice).  CBP does not include the name and residence of the person or entity from whom the property was seized, unless the seizure is done under the navigation laws.  See 19 C.F.R. § 162.45(a)(4).

The plaintiff, the Seized Property Recovery Corporation ("SPRC"), is a Florida corporation.

See Amended Complaint ("Am. Comp.") at ¶ 4.  According to the Division of Corporations, Florida

Department of State, SPRC has the same address as counsel for plaintiff in this matter, and counsel

for plaintiff in this matter is the listed principal Officer/Director for SPRC.  See Public Inquiry,

Corporations Online, Florida Department of State, available on www.sunbiz.org.  (Exhibit 31).

SPRC has sent at least eighteen separate FOIA requests to CBP in several ports in the United

States seeking the names and addresses of persons and commercial entities from whom Customs has

seized property.  See Amended Complaint ("Am. Comp.") at ¶¶ 6, 21-109 (listing each of the

separate requests made for names and addresses).  See also Declaration of John Elkins ("Elkins

Dec.") at ¶ 10, 13, 16, 19, 25-26.[1]  On information and belief, SPRC is seeking these names and

addresses so that it can make contact with persons or companies who have had their goods seized

and offer the services of SPRC in working to recover the seized property from the government.  See

Elkins Dec. at ¶ 31.

As the exhibits appended to plaintiff's original Complaint indicate, the responses to SPRC's

requests from the various ports were not uniform.  In some cases, names and addresses were

released; in other instances, the sought-after information was withheld under FOIA Exemptions 3,

7(a), and/or 7(c).  See August 3, 2005 Complaint, Ex. C, see also Elkins Dec. at ¶ 11, 14, 17.  In

another instance, the names were released, but not the addresses.  See Elkins Dec. at ¶ 20.  CBP also

_____

[1]John Elkins is the Freedom of Information Act Appeals Officer and Branch Chief of the
FOIA Appeals, Policy & Litigation Branch (FAPLB), Regulations and Disclosure Law Division,
Office of Regulations and Rulings (OR&R), CBP, Department of Homeland Security (DHS).
See Elkins Dec. at ¶ 1; see also id. at ¶¶ 2-6 (explaining the responsibilities of CBP and Mr.
Elkins' responsibilities within that organization).  Mr. Elkins is familiar with  the procedures
followed by CBP in responding to requests for information from its files pursuant to the FOIA
and is also familiar with the procedures followed in responding to the initial FOIA requests and
subsequent appeals of SPRC in this matter.  Id. at ¶ 8.

looked to Exemption 4 as a basis for withholding the requested information, and, in fact, commenced a "reverse FOIA" process in response to SPRC's FOIA appeals.  See Elkins Dec. at ¶ 22 (citing Executive Order 12,600 and 19 C.F.R. § 103.35).

As explained in CBP's Motion for Extension of Time filed on November 30, 2005, CBP has conducted an internal review of its handling of these FOIA requests, and has determined that the proper response to SPRC's FOIA requests for names and addresses ultimately depends upon two variables.  The first is whether the request would result in the release of an individual's name and address (as opposed to a commercial entity's) in which case the requested information is properly withheld under FOIA exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).  If the entity whose goods have been seized is a commercial entity, CPB must next determine whether that commercial entity is the subject of an ongoing law enforcement investigation or proceeding.   If the commercial entity is the subject of an ongoing law enforcement proceeding, then FOIA exemption 7(A) requires withholding, because release of the name and address could be reasonably expected to result in interference with those proceedings.  See 5 U.S.C. § 552(b)(7)(A).  Where the entity subject to the seizure is neither an individual nor subject to ongoing law enforcement proceedings, release under the FOIA is appropriate.  See Elkins Dec. at ¶ 36 and Exhibit 30 thereto (guidance to Field Operations Offices).[2]   Defendant will thus release all business names and addresses unless the release of the name and address could be expected to interfere with a law enforcement proceeding. See id. The factual and legal basis for this determination is described below.

---

[2]This guidance includes an attachment, which identifies the FOIA request number, the seizure number and the names and addresses.  See Exibit 30 (referencing attachment).  Since the matrix includes either information that the plaintiff already has, or the very information that is the subject of this lawsuit (the names and addresses), it is not being included with this filing.

## II.  STANDARD OF REVIEW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which

provides that the "judgment sought shall be rendered forthwith if . . . there is no genuine issue as to

any material fact." Fed. R. Civ. P. 56(c).  Where no genuine dispute exists as to any material fact,

summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine

issue of material fact is one that would change the outcome of the litigation.  Id. at 248.  "The burden

on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there

is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill

Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987), (quoting Celotex Corp. v. Catrett,

477 U.S. 317 (1986) (emphasis in original)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations,

but must instead proffer specific facts showing that a genuine issue exists for trial.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the

plaintiff must state specific facts or present some objective evidence that would enable the court to

find he is entitled to relief.  In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court held

that, in responding to a motion for summary judgment, the party who bears the burden of proof on

an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish

a genuine dispute.  Id. at 322-23.

In an opinion issued the same day as Celotex, the Supreme Court attempted to explain under

what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary
> judgment may be granted . . . [T]he mere existence of a scintilla of evidence in
> support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff.

Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50, 252.  See Johnson v. Digital Equipment Corp.,

836 F. Supp. 14, 15 (D.D.C. 1993).  In Celotex, the Supreme Court further instructed that the

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'"  477 U.S. at 327.

FOIA cases are typically resolved on summary judgment.  See Cooper Cameron Corp. v.

Department of Labor, 280 F.3d 539, 543 (5th Cir. 2002).  To discharge its burden, the agency must

prove that each document that falls within the class of requested records has either been produced,

is unidentifiable, or is exempt.  See National Cable Television Ass'n, Inc. v. Federal

Communications Commission, 479 F.2d 183, 186 (D.C. Cir. 1973).  In a FOIA case, the Court

typically adjudicates summary judgment solely on the basis of information provided in affidavits or

declarations when the affidavits or declarations describe, "the documents and the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld logically

falls within the claimed exemption, and are not controverted by either contrary evidence in the record

nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir.

1981).  See also Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The Court

exercises de novo review over FOIA matters, and the burden is on the agency to justify all

nondisclosures.  See 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. for

Freedom of the Press, 489 U.S. 749, 755 (1989).

### III.  ARGUMENT

**A.    Exemptions 6 and 7(c)**

    1.    Governing Law

Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that "applies to a particular individual" qualifies for consideration under this exemption.  Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (declining to limit Exemption 6 to "a narrow class of files"); see also New York Times Co. v. NASA, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc); Chang v. Dep't of Navy, 314 F. Supp.2d 35, 42-43 (D.D.C. 2004).  Thus, the Exemption 6 threshold is met if the information requested applies to any particular, identifiable individual.

Once it has been established that the information sought by the request qualifies under Exemption 6, the inquiry then turns to whether disclosure would result in a "clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This requires a balancing of the public's interest in disclosure against the individual's right to privacy.  See Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989) ("Reporters Committee"); Department of Air Force v. Rose, 425 U.S. 352, 372 (1976).  Of course, if no valid public interest would be served by release, the information necessarily should be exempt from disclosure:  as the D.C. Circuit has observed, "something, even a modest privacy interest, outweighs nothing every time."  National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) ("NARFE").

Exemption 7(C) is the law enforcement counterpart to Exemption 6.  It provides protection

for law enforcement information, the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The burden of sustaining a claim of exemption under 7(C) is less than that for Exemption 6, as the text of law enforcement exemption omits the word "clearly," recognizing the strong interest in an individual's not being associated with alleged criminal activity. See Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990).

CBP is a law enforcement agency, with full authority to assess penalties and liquidated damages, seize merchandise for violation of CBP laws or those of other federal agencies that are enforced by CBP, remit forfeitures, mitigate penalties, decide petitions, and cancel claims. See Elkins Dec. at ¶ 3 (citing 19 U.S.C. §§ 1598a, 1592, 1595, and 1595a); id. at ¶ 39. The term "law enforcement purposes" has been construed to include civil and criminal statutes as well as administrative determinations. See, e..g., Center for National Policy Review on Race and Urban Issues v. Weinberger, 502 F.2d 370, 373 (D.C. Cir. 1974) (administrative determination has "salient characteristics" of 'law enforcement' contemplated" by Exemption 7). Since SPRC seeks the names and addresses of those who have had their goods seized by CBP, the "law enforcement" aspect of Exemption 7(C) is satisfied here. See O'Kane v. United States Customs Service, 169 F.3d 1308 (11th Cir. 1999)

By their respective statutory texts, Exemptions 6 and 7(C) both concern "personal privacy." As such, these exemptions have not been extended to protect the privacy interests of businesses or corporations. See Sims v. CIA, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980); Nat'l Parks & Conservation Ass'n v. Kleppe, 547 F.2d 673, 685 n. 44 (D.C. Cir. 1976).

2.      Persons Who Have Their Property Seized by CBP Have a Privacy Interest in
        Not Having Their Identities Released to Third Parties

In this matter, SPRC seeks public release of the names and addresses of persons who have

had their goods, merchandise, currency or other property seized by CPB for violations of Customs

or other laws. "[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or

her name and address is significant." NARFE, 879 F.2d at 875. As such, the courts – including the

Supreme Court – have routinely found that individuals have a recognizable privacy interest in their

names and addresses. See United States Department of Defense v. Federal Labor Relations

Authority, 510 U.S. 487, 502 (1994) ("FLRA") (shielding the names and home addresses of agency

employees from being released to unions that requested the lists under FOIA); Painting and Drywall

Preservation Fund v. Department of Housing and Urban Development, 936 F.2d 1300, 1302 (D.C.

Cir. 1991) (names and addresses of employees of public contractors); Reed v. National Labor

Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (names and addresses of employees eligible

to vote); NARFE, 879 F.2d at 875-78 (list of names and addresses of retired or disabled federal

employees); Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 135 (3d Cir.1974) (names and addresses

of federally registered wine producers are "similar files").

In this case, SPRC seeks the names and addresses of persons who have had their property

seized by CPB. Separate and apart from the threshold interest in not having their names and home

addresses released to third parties, see NARFE, 879 F.2d at 875; F.L.R.A. v. United States

Dep't of Defense, 977 F.2d 545 (11th Cir.1992), these individuals have a privacy interest in not

having their names and addresses publicly associated with a CBP seizure and a forfeiture proceeding.

The damage to reputation that follows from being associated with law enforcement activity is well-

established.  See Davis v. U.S. Department of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992);

Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904-05 (D.C.

Cir. 1996) (quoting Dunkelberger v. Department of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990));

Brunetti v. FBI, 357 F. Supp.2d 97, 105 (D.D.C. 2004).

In this case, because CBP actually commenced a "reverse FOIA" process and contacted the

individuals implicated by SPRC's FOIA request, CBP actually has more information at its disposal

with respect to personal privacy concerns than in the typical case.[3]  See Elkins Dec. at ¶ 23.  One

individual, through counsel, objected on the basis that the release of information would invade his

or her privacy and the right to privacy of his or her family.  See id. at ¶ 23(d).  Another expressed

concerns for his/her safety and the safety of his/her family because he/she had provided information

to the United States Attorney's Office in Los Angeles.  See id. at ¶ 23(f); see also at ¶ 23(g) (also

expressing concerns about possible endangerment to the individual or the individual's family).

Moreover, the fact that these individuals are likely (if not certain) to be the target of a

solicitation for professional services has been recognized to impede upon their privacy interests.

In Department of Defense v. FLRA, a union sought the names and addresses of agency employees

who were in bargaining units.  See FLRA, 510 U.S. at 490.  The Supreme Court found that "it is

clear that [these employees] have some nontrivial privacy interest in nondisclosure, and in avoiding

the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would

follow disclosure."  Id.  The opinion continued, "[w]e are reluctant to disparage the privacy of the

---

[3]The "reverse FOIA" process is applicable under Exemption 4, when a FOIA request may result in the disclosure of trade secrets or confidential commercial information. See 5 U.S.C. § 552(b)(4); Exec. Order 12,600.  CBP had looked to Exemption 4 as a possible basis for withholding, but ultimately determined that such a claim was not supportable.

home, which is accorded special consideration in our Constitution, laws, and traditions." Id.  See

also Prof'l Programs Group v. Department of Commerce, 29 F.3d 1349, 1353-55 (9th Cir. 1994).

In the case at bar, the individuals have a similar "nontrivial privacy interest in nondisclosure" in

seeking to avoid solicitation letters from SPRC, and/or any competitors of SPRC that might seek to

submit the same or similar FOIA requests for precisely the same purposes.

> 3.    There is no Public Interest to Be Served By the Release of The Names
>       and Addresses

It is CBP's understanding that SPRC seeks the names and addresses of individuals who have

had their goods seized from Customs so that SPRC can contact them and offer SPRC"s services in

assisting them with recovering the seized goods.  See Elkins Dec. at ¶ 31.  In correspondence with

CBP, SPRC claimed that "[b]y us being able to contact the person from whom the currency was

seized, we will be able to shed light on CBP's action in forfeiting all the currency."  See Aug. 3,

2005 Complaint, Ex. G.   There are two problems with this contention.  First, the FOIA public

interest in disclosure refers to "open[ing] agency action to the light of public scrutiny," Oguaju v.

United States, 288 F.3d 448, 450 (D.C. Cir. 2002), and "it does not include helping an individual

obtain information for his personal use."  Id. (quoting Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir.

2000)), vacated by Oguaju v. United States Marshals Service, 541 U.S. 970 (2004), judgment

reinstated by Oguaju v. United States, 378 F.3d 1115 (D.C. Cir. 2004).  In this regard, courts have,

for example, consistently refused to recognize any public interest in the disclosure of information

solely to assist a prisoner in challenging his conviction.  See, e.g., Neely v. Federal Bureau of

Investigation, 208 F.3d 461, 464 (4th Cir. 2000); Hale v. United States Dep't of Justice, 973 F.2d 894,

901 (10th Cir.1992), vacated on other grounds, 509 U.S. 918 (1993); Landano v. Department of

<u>Justice</u>, 956 F.2d 422, 430 (3d Cir. 1991), <u>rev'd on other grounds</u>, 508 U.S. 165 (1993). The result should be no different here, when the information is sought so that a third party might assist an individual in recovering seized items from the government.

Second, the law has consistently declined to find a public interest in the disclosure of names and addresses where information was being sought for the purpose of soliciting business or for other commercial purposes. In fact, at least one federal Court of Appeals has considered the <u>exact situation</u> presented in this lawsuit. In <u>O'Kane v. United States Customs Service</u>, 169 F.3d 1308 (11th Cir. 1999) (per curiam), a FOIA requestor sought the names and addresses of individuals whose possessions had be seized by Customs, so that he could solicit those individuals for his law practice. <u>See id</u>. at 1310, note (asterisk). Similar to SPRC, the plaintiff claimed that "a public interest exists in promoting legal representation for violators of customs laws." <u>Id</u>. at 1310. Comparing this claimed public interest with the "important privacy interest in their home addresses," the Eleventh Circuit affirmed the invocation of Exemption 7(c). <u>See id</u>.

Reaching a similar result is <u>Professional Programs Group v. Commerce</u>, 29 F.3d 1349 (9th Cir. 1994), in which the requestor sought a list of persons registered to take the patent bar so that the requestor could offer its test-preparation services to those individuals. The court concluded that "the plaintiff's interest in disclosure is purely commercial, to obtain a list of potential customers. We have held that the FOIA 'was not intended to require release of otherwise private information to one who intends to use it solely as personal gain.'" <u>Id</u>. at 1354 (citing <u>Minnis v. United States Dept. of Agriculture</u>, 737 F.2d 784, 787 (9th Cir.1984)). The plaintiff test-prep service argued that providing the requested information would also serve a public interest, in that disclosure would allow the company to help more patent bar applicants pass the test and that this in turn would increase the

-11-

number of patent lawyers available to assist American inventors. See id. The Court rejected this

argument, finding that this was not the public interest that FOIA was designed to serve, which is to

"'contribut[e] significantly to public understanding of the operations or activities of the

government.'" Id. (quoting Reporters Committee, 489 U.S. at 775). Other name and address

solicitation cases are in accord. See Schoettle v. Kemp, 733 F. Supp. 1395, 1397-98 (D. Haw. 1990)

(request for names of persons owed distributive shares and mortgage premiums by person who

wanted to contact and assist those persons denied under Exemption 6).

In this case, the public interest in disclosure of names and addresses is either completely non-

existent or negligible. If an interest exists at all, it is easily outweighed by the substantial invasion

of personal privacy that would result from the public release of the names and addresses of persons

who have been subject to CPB seizures. CPB's withholding of the names and addresses of

individuals under Exemptions 6 and 7(C) should therefore be affirmed by the Court.

**B.      Exemption 7(A)**

     1.      Governing Law

Exemption 7(A) of the FOIA protects from mandatory disclosure "records or information

compiled for law enforcement purposes, but only to the extent that production of such law

enforcement records or information ... could reasonably be expected to interfere with enforcement

proceedings." 5 U.S.C. § 552(b)(7)(A). The agency seeking to justify the withholding must

demonstrate that: (1) a law enforcement proceeding is pending or prospective, and (2) release of the

information could reasonably be expected to cause some distinct harm to the proceeding. See Butler

v. Department of the Air Force, 888 F. Supp. 174, 183 (D.D.C. 1995), aff'd, 116 F.3d 941 (D.C. Cir.

1997); see also NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 235 (1978); Crooker v. Bureau

of Alcohol, Tobacco & Firearms, 789 F.2d 64, 65-67 (D.C. Cir.1986); Campbell v. Dep't of Health

and Human Serv., 682 F.2d 256, 263 (D.C. Cir. 1982); Stern v. FBI, 737 F.2d 84, 88 (D.C. Cir.

1984).

> 2.    The Ongoing Law Enforcement Proceedings and the Expected Interference
> With Enforcement Proceedings

It is possible that in addition to the seizure matters published in the newspaper that form the

basis for SPRC's requests these entities might also be the subject of an ongoing law enforcement

investigation or proceeding. See Elkins Dec. at ¶ 35. CPB is charged with the enforcement of

several criminal statutes, including 18 U.S.C. § 541 (entry of goods falsely classified); 18 U.S.C. §

542 (entry by means of false statements); 18 U.S.C. § 543 (entry of goods for less than legal duty)

8 U.S.C. § 545 (Smuggling goods into the United States); 18 U.S.C. § 549 (Removing goods

from Customs custody); 18 U.S.C. § 553 (Importation or exportation of stolen motor vehicles);

18 U.S.C. §§ 831, 836 (Dangerous Cargo Act); 18 U.S.C. § 841-848 (Importation of Explosive

Materials); 18 U.S.C. §§ 981-982, 984, 1956, 1957, 1960 (Money laundering); 18 U.S.C. §

Trafficking in counterfeit goods or services). See id.

Releasing or publishing the name and address of an individual or company may lead to

third party recipients of that information reaching out to the named party. See Elkins Dec. at ¶

35. Indeed, making contact with the entity subject to the seizure is understood to be the purpose

for SPRC's request in this matter. See Elkins Dec. at ¶¶ 31, 35. That named party may, in turn,

become suspicious of other enforcement proceedings, even if the instant matter is not currently

under investigation. See Elkins Dec. at ¶ 35. As a result, there is a reasonable expectation that

the company or individual will alter its practices, *i.e.*, attempt to divert merchandise through

different ports of entry, change parties with whom it conducts business such as the foreign

shipper or supplier, or change a relationship with any confidential informant. See id. The release

of such information thus could be expected to interfere with these proceedings. Id; see. e.g.,

Solar Sources, Inc. v. United States, 142 F.3d 1033, 1039 (D.C. Cir. 1998) (affirming 7(a) claim

where disclosure "could result in destruction of evidence"); Alyeska Pipeline Service Co. v.

Environmental Protection Agency, 856 F.2d 309, 312 (D.C. Cir. 1988) (ruling that disclosure

could allow for destruction or alteration of evidence, fabrication of alibis, and identification of

witnesses).

Consequently, in cases where SPRC's request would result in the release of a name and

address of a commercial entity, CBP will ascertain whether the commercial entity is the subject

of an ongoing criminal investigation or ongoing criminal proceedings. See Elkins Dec. at ¶ 36

(referencing Exhibit 30). If there are no such proceedings, then the name and address will be

released under the FOIA. See id.

For these reasons, CPB's withholding of the names and addresses of commercial entities

that are the subject of an ongoing law enforcement investigation should be affirmed under

Exemption 7(A).

**C.     Segregability**

FOIA requires that if a record contains information that is exempt from disclosure, any

"reasonably segregable" information must be disclosed after deletion of the exempt information

unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. §

552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C.

Cir. 1977). This Circuit has held that a reviewing court has an obligation to consider

segregability sua sponte.  See Trans-Pacific Policing Agreement v. United States Customs

Service, 177 F.3d 1022 (D.C. Cir. 1999).

In this case, however, the only information sought by SPRC is the names and addresses of

the individuals or business entities who have had the seizure notices published in the newspaper.

Thus, there is no segregable material that can be separated from the exempt information and

provided to plaintiff.

## IV.  CONCLUSION

WHEREFORE, defendant requests that its Motion for Summary Judgment be granted,

that judgment be entered for defendant, and that this matter be dismissed with prejudice.  A

proposed order consistent with the foregoing is included.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney

_____/s/_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____/s/_____
PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated: December 13, 2005