UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEIZED PROPERTY RECOVERY CORPORATION ) <br> Plaintiff <br><br> v. <br><br> UNITED STATES CUSTOMS AND <br> BORDER PROTECTION <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:05CV01570 <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF JOHN E. ELKINS

I, JOHN E. ELKINS, hereby declare the following to be a true and correct statement of facts to the best of my knowledge, recollection and belief:

### I. BACKGROUND

1. I am the Freedom of Information Act Appeals Officer and Branch Chief of the FOIA Appeals, Policy & Litigation Branch (FAPLB), Regulations and Disclosure Law Division, Office of Regulations and Rulings (OR&R), U.S. Customs and Border Protection (CBP or Customs), Department of Homeland Security (DHS).

2. CBP is the unified border agency within the Department of Homeland Security. Created by the Homeland Security Act of 2002, CBP combined the inspectional workforces and broad border authorities of the U.S. Customs Service, U.S. Immigration and Naturalization Service, the U.S. Department of Agriculture's Animal and Plant Health Inspection Service, and the U.S. Border Patrol. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135; *see*

*also*, U.S. Department of Homeland Security, "Border Reorganization Fact Sheet," January 30, 2003, *see* Exhibit 1.

3. CBP has full authority to assess penalties and liquidated damages claims, seize merchandise for violation of CBP laws or those of other federal agencies that are enforced by CBP, remit forfeitures, mitigate penalties, decide petitions, and cancel claims. *See, e.g.*, 19 U.S.C. §§ 1589a, 1592, 1595, and 1595a. Moreover, as a law enforcement agency, many of the files created and maintained by CBP are directly related to law enforcement investigations and operations, such as the administrative fines, penalties, and forfeitures files established in the instant case.

4. U.S. Immigration and Customs Enforcement (ICE) is a law enforcement agency within the Department of Homeland Security. *See* 19 U.S.C. § 1589a and 8 U.S.C. § 1357; *see also* Transitional Authorities and Savings Provisions of the Homeland Security Act of 2002 (6 U.S.C. § 551, *et seq.*). Pursuant to the Homeland Security Act of 2002 and the subsequent organization of DHS, the enforcement and investigation arms of the U.S. Customs Service and the enforcement and investigative functions of the U.S. Immigration and Naturalization Service and the Federal Protective Service, including special agents of those organizations, were combined into ICE. *See* U.S. Department of Homeland Security, "Border Reorganization Fact Sheet," January 30, 2003, Exhibit 1, *supra*.

5. The FAPLB is the office within DHS/CBP that is charged at all times pertinent to this litigation with the responsibility of managing and responding to administrative appeals of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, of initial responses of offices within CBP and ICE. *See* Customs and Border Protection FOIA Reference Guide, Section X, Appeals,"

November 1, 2001, http://www.cbp.gov/xp/cgov/admin/fl/foia/making_a_request/reference_guide.xml, Exhibit 2.

6.   As the Chief, FAPLB, I am responsible for the overall supervision and management of the FAPLB (formerly the Disclosure Law Branch, Office of Regulations & Rulings, U.S. Customs Service, U.S. Department of the Treasury). My responsibilities include, *inter alia*: 1) reviewing initial FOIA decisions that are subject to administrative appeal; 2) giving guidance and instructions to CBP personnel regarding the processing of FOIA requests; 3) adjudicating administrative appeals that concern FOIA requests; and 4) overseeing all CBP activities related to information disclosure.

7.   The statements I make in this Declaration are based upon 1) my personal knowledge, 2) knowledge I have acquired through the performance of my official duties, or 3) my review of the official files and records of the FAPLB.

8.   Due to the nature of my official duties, I am familiar with the procedures followed by CBP in responding to requests for information from its files pursuant to the provisions of the FOIA; specifically, I am familiar with the procedures followed in responding to the initial FOIA requests and subsequent appeal of Plaintiff Seized Property Recovery Corporation (the "Plaintiff").

9.   The purpose of this declaration is to advise the Court of 1) the processing and status of the Plaintiff's administrative appeal of its FOIA requests, and 2) CBP's course of action in regards to Plaintiff's appeals.

## II. INITIAL CBP ACTION

### Count I - Appeal of Los Angeles Port Decision 2005-2704-119 mk

10.     By letter dated June 12, 2005, Plaintiff submitted a FOIA request to the Port of Los Angeles requesting the names and addresses of the parties from whom seizures were made relating to the following twenty-six (26) Fines, Penalties & Forfeitures ("FP&F") case file numbers that CBP published in a Notice of Forfeiture in the Los Angeles Daily Journal on June 10, 2005: case numbers 2005-2720-00079-01; 2005-2704-000140-01; 2005-2704-000253-01; 2005-2704-000277-01; 2005-2704-000278-01; 2005-2704-000282-01; 2005-2704-000289-01; 2005-2704-000308-01; 2005-2704-000320-01; 2005-2704-000329-01; 2005-2704-000345-01; 2005-2704-000346-01; 2005-2704-000347-01; 2005-2704-000352-01; 2005-2704-000355-01; 2005-2704-000373-01; 2005-2704-000394-01; 2005-2704-000396-01; 2005-2704-000419-01; 2005-2770-000001-01; 2005-2704-000430-01; 2005-2704-000422-01; 2005-2704-000399-01; 2005-2704-000398-01; 2005-2704-000421-01; 2005-2704-000401-01, *see* Exhibit 3.

11.     On July 1, 2005, the Port of Los Angeles in Port Decision 2005-2704-119 mk, denied Plaintiff's request for the names and addresses under 5 U.S.C. § 552 (b)(7)(A) (pertaining to matters which could reasonably be expected to interfere with enforcement proceedings) and 5 U.S.C. § 552(b)(7)(C) (pertaining to matters which could be expected to constitute an unwarranted invasion of personal privacy), *see* Exhibit 4.

12.     On July 5, 2005, Plaintiff filed an administrative appeal of Los Angeles Port Decision 2005-2704-119 mk, dated July 1, 2005, with the FAPLB, *see* Exhibit 5.  Plaintiff asserts that there has been no response to the appeal.

### Count I - Appeal of Los Angeles Port Decision 2005-2704-115 mk

13. By letter dated May 24, 2005, Plaintiff submitted a FOIA request to the Port of Los Angeles requesting the names and addresses from whom CBP seized property in the following six (6) FP&F case numbers that CBP published in a Notice of Forfeiture in the Los Angeles Daily Journal on May 24, 2005: case numbers 2004-2704-000966-01; 2004-2704-000977-01; 2004-2704-000984-01; 2004-2704-000969-01; 2004-2704-001309-01; 2004-2704-000996-01, *see* Exhibit 6.

14. On July 1, 2005, the Port of Los Angeles in Port Decision 2005-2704-115 mk denied Plaintiff's request for the names and addresses under 5 U.S.C. § 552 (b)(7)(A) (pertaining to matters which could reasonably be expected to interfere with enforcement proceedings) and 5 U.S.C. § 552(b)(7)(C) (pertaining to matters which could be expected to constitute an unwarranted invasion of personal privacy), *see* Exhibit 7.

15. On July 5, 2005, Plaintiff filed an administrative appeal of Los Angeles Port Decision 2005-2704-115 mk, dated July 1, 2005, *see* Exhibit 5. In that appeal, Plaintiff cites *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 776 (1989), claiming that exemption 5 U.S.C. § 552(b)(7)(C) is not applicable.

### Count II – Appeal of San Francisco Port Decision 05-14 FOIA

16. By letter dated May 6, 2005, Plaintiff submitted a FOIA request to the Port of San Francisco requesting the name and address of the party in FP&F case number 2001-2801-000007-01, *see* Exhibit 8.

17. On June 20, 2005, the Port of San Francisco in Port Decision 05-14 FOIA, released the name of the party involved, *see* Exhibit 9, and stated that this was in accordance with 19 C.F.R. §

5

103.32, *see* Exhibit 10. The Port denied the Plaintiff's request for the address of the party involved under 5 U.S.C. § 552(b)(3) (exempt from disclosure by statute).[1]

18. On June 24, 2005, the Plaintiff filed an administrative appeal of San Francisco Port Decision 05-14 FOIA, dated June 20, 2005, with the FAPLB, *see* Exhibit 11. Plaintiff asserts that no explanation was given as to why the (b)(3) exemption precludes the release of the address, and that CBP policy does not justify withholding the information.

## Count III – Appeal of Newark Port Decision NK-05155I

19. By a letter dated June 22, 2005, Plaintiff submitted a FOIA request to the Port of Newark requesting the names and addresses of persons from whom CBP seized currency relating to the following fifteen (15) FP&F case numbers: 2005-1001-000027-01; 2005-1001-000220-01; 2005-1001-000223-01; 2005-1001-000138-01; 2005-1001-000150-01; 2005-1001-000158-01; 2005-1001-000216-01; 2005-1001-000244-01; 2005-1001-000224-01; 2005-1001-000208-01; 2005-1001-000236-01; 2005-1001-000237-01; 2005-1001-000277-01; 2005-1001-000278-01, 2005-1001-000218-01, *see* Exhibit 12.

20. On July 20, 2005, in Port Decision No. NK-05155, the Port of Newark denied Plaintiff's request for the names and addresses under 5 U.S.C. § 552(b)(7)(C) (pertaining to matters that could be expected to constitute an unwarranted invasion of personal privacy) in three (3) of the cases: 2005-1001-000223-01; 2005-1001-000150-01; 2005-1001-000218-01, *see* Exhibit 13. The port further stated that CBP action had been completed for twelve (12) of the cases, and pursuant to 19 C.F.R. 103.32, *see* Exhibit 10, it released the names of the parties involved, but not the addresses, in the following case numbers: 2005-1001-000220-01; 2005-1001-000138-01; 2005-1001-000158-01; 2005-1001-000216-01; 2005-1001-000244-01; 2005-1001-000224-01;

---

[1] The port in all likelihood meant that the information was exempt under 19 C.F.R. § 103.32, *see* Exhibit 10.

2005-1001-000208-01; 2005-1001-000236-01; 2005-1001-000237-01; 2005-1001-000027-01, 2005-1001-000277-01; and 2005-1001-000278-01.

21.   On July 25, 2005, Plaintiff filed an administrative appeal of Newark Port Decision NK 05155, dated July 20, 2005, with the FAPLB, *see* Exhibit 14. Citing *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 776 (1989), Plaintiff asserts that by being able to contact the persons subject to its FOIA request, Plaintiff will be able to shed light on CBP's action in forfeiting the currency at issue in those cases. Further, Plaintiff claims that the failure to provide the names and addresses is contradictory to the ruling letters (attached as Exhibits A and C to the original Complaint of August 3, 2005) issued by my predecessor, Joanne Roman Stump, former Chief, Disclosure Law Branch, on March 17 and 20, 2005.

### III. OR&R ACTION FOR COUNTS I-III

22.   On July 7, 2005, OR&R began a reverse FOIA process in response to Plaintiff's FOIA appeals. In accordance with Executive Order 12,600, *see* Exhibit 15, as implemented by 19 C.F.R. § 103.35 (CBP Reverse FOIA procedures), *see* Exhibit 16, letters were mailed to the parties identified by CBP for the FP&F cases requested by Plaintiff in Counts I-III of Plaintiff's Complaint[2], in which the parties were advised of Plaintiff's FOIA request. In those letters, the parties were provided with the opportunity to respond as to why the requested information should not be disclosed by CBP to the Plaintiff. The letters state that absent a response from the party requesting that their information be withheld from Plaintiff, their information may be disclosed. Examples of these letters are at Exhibits 17 through 22.

---

[2] Counts I-III of Plaintiff's Complaint for Injunctive and Declaratory Relief (filed August 3, 2005) are identical in substance to Counts I-III of Plaintiff's Amended Complaint for Injunctive and Declaratory Relief (filed October 14, 2005) in that the Plaintiff appeals CBP's denial of information through the FOIA and seeks the names and addresses of parties from whom CBP seized property.

7

23.  Several parties receiving OR&R's letters requested that CBP/OR&R withhold their information from Plaintiff:

a.  By letter dated October 17, 2005, the party involved in case number 2005-2704-00419-01 requested that CBP not release its records pending its review of the seizure case, *see* redacted Exhibit 23.

b.  By facsimile dated October 20, 2005, the party involved in case number 2005-2704-000320-01 requested that CBP "decline the request for information," *see* redacted Exhibit 24.

c.  On October 23, 2005, a letter was received, via facsimile, from John Pelligrini of McGuireWoods LLP, on behalf of his client for case number 2005-2704-000345-01, objecting to the release of the his client's name and address, *see* redacted Exhibit 25. Counsel contends that release of the client's name and address is exempt under 5 U.S.C. § 522(b)(4) (trade secrets and commercial or financial information) and that release of the information could harm the client's competitive position and/or adversely impact the company's reputation as a purveyor of first quality merchandise. Additionally, counsel cites *Michael J. O'Kane* v. *United States Customs Service*, 169 F.3d. 1308 (11th Cir. 1999), wherein the court rebuffed the efforts of an attorney to obtain the name and address of a company from whom Customs seized merchandise for the purposes soliciting their business.

d.  On October 21, 2005, a letter was received from the Law Offices of Ramsey & Price, on behalf of the party in case number 2005-2704-000140-01, objecting to the release of the name and address of the client, *see* redacted Exhibit 26. Counsel claims, among other things, that the release of the information would invade the right to privacy of his client and his client's family.

  e. On October 10, 2005, a letter was received from the party involved in case numbers 2005-2704-000346-01 and 2005-2704-000347-01 objecting to the release of name and address, stating that the seized merchandise was "pre-marketing samples…not for retail", *see* redacted Exhibit 27.

  f. On October 15, 2005, a reply was received from the Law Office of Kirt J. Hopson, on behalf of his client, for case numbers 2004-2704-000966-01, 2004-2704-000977-01, and 2004-2704-000984-01. Counsel objects to the disclosure of information requested by the Plaintiff stating, among other things, that release of the information could endanger his client's family as the individual named has provided information to the United States Attorney's Office in Los Angeles for the investigation, arrest and prosecution of individuals suspected of illegal drug trafficking, *see* redacted Exhibit 28.

  g. On October 12, 2005, CBP received a letter from the Law Offices of Arnold Silverstein, on behalf of his client, concerning case number 2005-1001-000158-01, objecting to the release of the name and address of his client. Counsel asserts that release of the information would be an invasion of his client's privacy and could possibly endanger his client and/or client's family, *see* redacted Exhibit 29.

24. The remaining letters sent to the parties associated with the remaining case numbers for Counts I-III were returned to sender, marked "not deliverable as addressed," "forwarding order expired," "attempted not known," and/or "unable to forward;" or otherwise a response has not been received by OR&R.

  **IV.** **OR&R's COURSE OF ACTION FOR COUNTS IV THROUGH XVIII**

25. Plaintiff filed an Amended Complaint For Injunctive Relief And Declaratory Relief on October 14, 2005 ("Amended Complaint"), which, in part, amends Count IV of the original

Complaint and substitutes new Counts IV through XVIII. A copy of the Amended Complaint was received in the FAPLB on October 24, 2005.

26. To the best of my information and belief, the challenge presented in the amended Counts IV through XVIII are in all material respects identical to the challenge alleged in Counts I through III, in that the Plaintiff seeks the names and addresses of parties from whom CBP seized property.

27. Letters similar to those contained in Exhibits 17 through 22 were sent to the persons from whom property was seized for the cases Plaintiff listed in Counts IV through XVIII of its Amended Complaint.

## V. BALANCING TEST FOR RELEASE OF INDIVIDUALS' NAMES AND ADDRESSES

28. CBP has been in the process of identifying and evaluating any privacy interest implicated in each request when it is determined that the party involved is an individual. First, it must be ascertained whether a protectible privacy interest exists that would be threatened by disclosure. If no privacy interest is found, further analysis is unnecessary and the information at issue may be disclosed. In this case, CBP submits that individuals who have been involved in seizure proceedings have some degree of a privacy interest in their name and address. For example, with respect to individuals, case law has long recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation. *Branch v. FBI*, 658 Supp 204, 209 (D.D.C. 1987).

29. Once it has been determined that a personal privacy interest exists, a determination regarding the public interest in disclosure must be made. The standard of public interest to be considered is limited to the FOIA's core purpose of shedding light on an agency's performance of

its statutory duties. Information that does not directly reveal the operations or activities of the federal government falls outside the ambit of the public interest that the FOIA was enacted to serve.

30.     Once both the privacy interest at stake and the public interest in disclosure have been ascertained, the two competing interests must be weighed against one another. In other words, it must be determined which is the greater result of disclosure: the harm to personal privacy or the benefit to the public. The public interest in disclosure must be sufficiently compelling, on balance, to outweigh legitimate privacy interests.

31.     Disclosure must benefit the public overall and not just the requester himself. The public interest must be sufficient to overcome the clear privacy interest an individual has in his or her name and home address. Names and addresses may be protected, especially where the request is clearly for the purpose of soliciting business or for other commercial purposes. *See, e.g.*, Prof'l Programs Group v. Dep't of Commerce, 29 F.3d 1349, 1353-55 (9th Cir. 1994) (withholding names and addresses of persons registered to take patent bar examination from business offering patent bar exam preparation courses to lawyers); Robbins v. HHS, No. 1:95-cv-3258, slip op. at 8-9 (N.D. Ga. Aug. 12, 1996) (withholding names and addresses of rejected social security disability claimants from attorney hoping to solicit business); Schoettle v. Kemp, 733 F. Supp. 1395, 1397-98 (D. Haw. 1990) (declining to order release of identities of mortgagors eligible for distributions of money); O'Kane v. United States Customs Service, 169 F.3d 1308 (11th Cir. 1999) (withholding addresses of individuals whose possessions had been seized from lawyer wanting to solicit individuals for his law practice). It is CBP's belief that Plaintiff seeks the requested information in order to solicit business from the parties from whom CBP seized property in various forfeiture proceedings.

32.     After review and discussion within CBP it has been administratively determined that under law and regulation, including the FOIA statute and implementing CBP FOIA regulations, that a protectible privacy interest exists that would be threatened by disclosure, and that the names and addresses of the individuals 1) do not directly reveal the operations or activities of the federal government and 2) fall outside the ambit of the public interest that the FOIA was enacted to serve. In addition, the individuals' interest in their privacy outweighs any interest Plaintiff has in this information as a third party.

33.     Accordingly, the release of individuals' names and addresses pursuant to the Plaintiff's FOIA requests identified in Counts I through XVIII of Plaintiff's Complaint is not proper.

34.     The FAPLB is not currently in a position to verify that each entity subject to a seizure identified in Counts I through XVIII of Plaintiff's Complaint was an individual acting in a private capacity or whether they were commercial entities. Accordingly, the FAPLB, in conjunction with CBP's Office of Field Operations (OFO), has initiated action to have the appropriate field offices which are in a position to make that determination for each individual identified in Counts I through XVIII of Plaintiff's Amended Complaint make such determination. The names of business entities may be disclosed pursuant to paragraph 36 of this declaration, if no law enforcement action is pending in that matter, see paragraph 35, *infra*.

VI.     **RELEASE OF COMMERCIAL ENTITIES' NAMES AND ADDRESSES**

35.     After review and discussion within CBP it has been administratively determined that under law and regulation, the release of the names and addresses of business entities pursuant to the Plaintiff's FOIA requests identified in Counts I through XVIII may be proper. However, the FAPLB is not currently in a position to verify that the release of any or all of the names and addresses of the business entities identified in Counts I through XVIII of Plaintiff's Amended

Complaint "could reasonably be expected to interfere with enforcement proceedings" under the provisions of 5 U.S.C. § 552 (b)(7)(A). CBP must check each individual file and/or check with ICE in order to verify that no open criminal investigation remains at issue in these matters either within CBP or ICE. CBP enforces laws under Title 18 of the United States Code including criminal conduct either within CBP or these other law enforcement agencies under, *inter alia*, 18 U.S.C. § 541 (Entry of goods falsely classified); 18 U.S.C. § 542 (Entry by means of false statements); 18 U.S.C. § 543 (Entry of goods for less than legal duty); 18 U.S.C. § 545 (Smuggling goods into the United States); 18 U.S.C. § 549 (Removing goods from Customs custody); 18 U.S.C. § 553 (Importation or exportation of stolen motor vehicles); 18 U.S.C. §§ 831, 836 (Dangerous Cargo Act); 18 U.S.C. § 841-848 (Importation of Explosive Materials); 18 U.S.C. §§ 981-982, 984, 1956, 1957, 1960 (Money laundering); 18 U.S.C. § 2320 (Trafficking in counterfeit goods or services). Releasing or publishing the name and address of an individual or company allegedly involved in criminal conduct may lead to third party recipients of that information, including Plaintiff, reaching out to the named party. That named party may, in turn, become suspicious of other enforcement proceedings even if the matter that is the subject of the contact is not currently under investigation. As a result, there is a reasonable expectation that the company or individual will alter its practices, *i.e.*, attempt to divert merchandise through different ports of entry, change parties with whom it conducts business such as the foreign shipper or supplier, or change a relationship with any confidential informant, and thus do irreparable harm to an existing criminal investigation.

36.     Accordingly, the FAPLB, in conjunction with OFO, has initiated action to have the appropriate field offices which are in a position to make that determination for each business entity identified in Counts I through XVIII of Plaintiff's Amended Complaint and, if appropriate,

through a supplemental release provide the names and addresses to Plaintiff, *see* redacted Exhibit 30.[3] Individuals identified as acting on behalf of a business entity under paragraph 35 of this Declaration will be disclosed unless the disclosure "could reasonably be expected to interfere with enforcement proceedings" under the provisions of 5 U.S.C. § 552 (b)(7)(A).

I declare, under penalty of perjury, that the matter and facts set forth in this Declaration fall within my official purview and, based upon my personal knowledge, information, and belief, are correct and true.

Executed on this _13th_ day of December, 2005, in Washington, D.C.

John E. Elkins

---

[3] Exhibit 30 does not contain the attachments. Plaintiff already has this information except for the names and addresses which are the subject of this lawsuit.