**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SEIZED PROPERTY RECOVERY )
CORPORATION, )
                                        )
        Plaintiff, )
                                        )
v. )        **Civil Action No. 05-1570(PLF)**
                                        )
UNITED STATES CUSTOMS AND )
BORDER PROTECTION, )
                                        )
        Defendant. )

**PLAINTIFF'S POINTS AND AUTHORITIES IN SUPPORT**
**OF ITS OPPOSITION TO DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT AND OF ITS CROSS MOTION FOR**
**SUMMARY JUDGMENT**

## I. FACTUAL BACKGROUND

**A.**    **Release Of Names And Addresses**

When the defendant, U. S. Customs and Border Protection ["Customs"],

intends to summarily forfeit seized property [other than controlled substances], it

publishes such intent in a local newspapers as prescribed in 19 C.F.R. §162.45. [1]

Customs never publishes the names and addresses from whom the property was

---

[1] As examples, Customs in Miami publishes in the Daily Business Review; in Los Angeles The Daily Journal; in New York/Newark in the New York Post; in San Francisco the CAL LAW; and, in San Juan in El Nuevo Dia. Herrick Dec. paragraphs 11 & 12.

seized unless required to do so under the provisions of 19 C.F.R. §162.45(a).

Plaintiff, Seized Property Recovery Corporation ["SPRC"] is incorporated in the state of Florida and is located in Miami-Dade County, Florida.

SPRC has submitted and continues to submit Freedom of Information Act ["FOIA"] requests to Customs at various ports in the United States for names and addresses of persons from whom Customs has seized property as set forth in the notices published in local newspapers. Some of these requests and appeals are set forth in Counts 1-18 of the Amended Complaint.

It is the intent of SPRC to notify persons from whom Customs has seized property that they should take immediate action by filing an administrative petition, cost bond and/or claim to avoid the forfeiture of their property. These persons could retain the services of SPRC for assistance; do nothing; hire their own attorney; and/or, proceed on their own.

One example of how this notification by SPRC would be helpful may be found in Fernando Mesa Valderrama v. United States of America, 417 F. 3d 1189 (11th Cir. 2005). It appears Valderrama was not an avid reader of the Miami Daily Business Review. Beginning on August 14, 2003 Customs began publication of its intent to forfeit Valderrama's $100,000 check. Valderrama, supra, p. 1193. The check was forfeited on September 3, 2003. This case points out the need to publish the names

2

and addresses in the newspapers which will be discussed in detail *infra*. This case points to a mixed legal and factual dilemma. Had SPRC filed a FOIA request on August 3, 2003 for Valderrama's name and address, according to Customs new directive, by the time the name and address was released, the $100,000 check would have been forfeited. See Elkin's Decl. at ¶ 30.

Defendant's Factual Background at page 2 is correct in stating "...the responses to SPRC's requests from the various ports were not uniform." There was a time when Customs was releasing requested names and addresses. Herrick Dec. ¶ ¶ 4-7. There was a time when Customs was publishing names and addresses. Herrick Dec. ¶ 8.

The defemdamt's Factual Background refers to a reverse FOIA process and cites to Elkins Dec. ¶ 22 citing to Executive Order 12,600 and 19 C.F.R. §103.35. The E.O. and regulation refer to "submitters" who are defined as corporations, state governments and foreign governments. Persons from whom Customs seized currency are not "submitters," and, therefore, neither the E.O. or the regulation are applicable. Some of the merchandise seized by Customs is from individuals and, therefore, neither the E.O. nor the regulation are applicable. Customs must explain in detail to the Court why these persons are subject to the Customs' "reverse FOIA" process.

When merchandise is seized from corporations, neither the E.O. nor the regulation shields the release of the names and addresses. The E.O. specifically states

3

at Section 8(b) "[t]he information has been published or has been officially made available to the public." In the case of merchandise imported into the United States, pursuant to 19 C.F.R. §103.31(e)(3) the names and addresses of the shipper, consignee and notify party are officially made available to the public.

When Customs publishes a notice of forfeiture for 3 consecutive weeks there is no longer an ongoing law enforcement proceeding. Herrick Dec. ¶ 13.

## B.    **Publishing Names And Addresses**

In its complaint, SPRC seeks a declaratory judgment to require Customs to publish names and addresses in its notices of seizure. There was a time in April, 2005 when Customs began publishing names and addresses with no adverse results. Herrick Dec. ¶ 4. Other Federal state and local law enforcement agencies publish names and addresses in their notices of seizure on a regular basis. Herrick Dec. ¶ 10.

During the period when Customs was publishing names and addresses SPRC and/or I immediately discontinued making FOIA requests. Herrick Dec. ¶ 14. However, when Customs ceased publishing names and addresses either I and/or SPRC resumed filing FOIA requests for names and addresses. Herrick Dec. ¶ 9.

When Customs was publishing the names and addressesI know that it saved me and SPRC a considerable amount of time, energy and expense in not having to file FOIA requests and appeals to all of the ports. I would further assume that during this

4

period it saved the ports and the Customs' FOIA appeals office a considerable amount of time, energy and expense in not having to respond to these FOIA requests and appeals.

## II. **STANDARD OF REVIEW**

SPRC agrees with the standard of review set forth by the defendant and adopts it as its own.

## III. **ARGUMENT**

### A.    **FOIA Exemption 6.**

Pursuant to the provisions of FOIA, SPRC seeks the names and addresses from whom Customs seized their property. As stated in The Washington Post Company v. United States Department of Agriculture 943 F. Supp. 31 (USDC DC 1996):

> " The fundamental purpose of the Freedom of Information Act is to assist citizens in finding out 'what their government is up to.' United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773, 103 L. Ed. 2d 774, 109 S. Ct. 1468 (1989). The FOIA mandates full public disclosure of agency records unless the requested records 'fall squarely' within one or more of the nine statutory exemptions. Burka v. United States Department of Health and Human Services, 318 U.S. App. D.C. 274, 87 F.3d 508, 515 (D.C. Cir. 1996); see Oglesby v. United States Department of the Army 316 U.S. App. D.C. 372, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Against the FOIA's strong presumption in favor of full disclosure, the government bears the burden of establishing that one or more of the FOIA exemptions applies when it seeks to withhold requested information. Department of State v. Ray, 502 U.S. 164, 173, 116 L. Ed. 2d 526, 112 S. Ct. 541 (1991)."

In *Washington Post* the Department of Agriculture withheld the names and addresses sought by the newspaper based on the FOIA exemption set forth at 5 U.S.C. §552(b)(6). "Exemption 6 is designed to protect against unwarranted invasions of personal privacy and not typically to protect businesspeople from commercial mailings directed at their business needs. Washington Post, supra, p. 34. The court further held that the release of a home address was not protected by Exemption 6. Of course Exemption 6 does not apply to business entities because they have no privacy interest. Washington Post, supra, p. 37, footnote 6. The court concluded that there is a significant public interest in shedding light on the workings of the Department of Commerce which outweighed the privacy interests.

In the instant case there is a significant public interest in the manner in which Customs administers its administrative forfeiture proceedings. The Federal government's forfeiture proceedings have been under continuing scathing attack by the courts, Congress, the media and persons affected by the forfeitures. An excellent discussion of these abuses may be found in Prosecution and Defense of Forfeiture Cases, David B. Smith, Matthew Bender, (1999). Of special interest in this publication is the article at ¶ 1.02 **The Swing of the Pendulum: Reaction to Overzealous Use of the Forfeiture Weapon.** While there are a myriad number government abuses set forth in this article there is one example of note:

6

> "Lest the reader suppose that these strong comments are the stuff of law reviews but no judicial opinions, let uslook at what the Second Circuit has told the government. In one opinion, authored by Judge Pratt, the court stated that it 'continue[d] to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statues and the disregard for due process that is buried in those statutes.'" at page 1-32.6.

The issue with the attempt by Customs to forfeit property is for the owner of the property to be made aware of what his, her or its government is up to. Quite possibly, the persons from whom their property has been seized have no idea that with the proper representation and advocacy they may be able to recover their property. "The fact that disclosure would permit plaintiff and his clients to contact these individuals is hardly significant. As in other investigations or litigation, the persons contacted could simply decline to talk to them." Michael A. Hertzberg v. Ann M. Veneman, 273 F. Supp. 2d 67, 86 (USDC DC 2003).

Once Customs releases the names and addresses to SPRC or any other party, if these persons are contacted by SPRC or any other party they could simply decline to talk to them.

## B.    FOIA Exemption 7(C).

According to The Nation Magazine, etc. v. United States Customs Service, 71 F. 3d 885, 893 (D.C. Cir. 1995):

> "Exemption 7(C) allows an agency to withhold 'investigatory

7

records compiled for law enforcement purposes, or information which if written would be contained in such records but only to the extent that the production of such records or information would...constitute an unwarranted invasion of personal privacy....The courts have construed this provision as permitting exemption if the privacy interest at stake outweighs the public's interest in disclosure.'" [citations omitted].

The court went on to state at page 894: "[s]econd, we must evaluate the public interest. This interest must be assessed in light of FOIA's central purpose which is 'to open agency action to the light of public scrutiny.' Dep't of Air Force v. Rose, 425 U.S. 352, 372, 48 L. Ed. 2d 11, 96 S. Ct. 1592(1976)." FOIA extends only to those records which reveal something about agency action and the conduct of the agency.

Of the 43 letters [Elkins Dec. ¶ 22] sent by Customs to persons who might be targeted by SPRC, there are only 7 examples cited of persons who wanted to protect their privacy. [Elkins Dec. ¶ 23]. More than likely if SPRC had contacted these persons the letters would have been ignored.

According to the Elkins Dec. ¶ 24, many of the letters could not be delivered or there was no response. Amazingly, although Customs maintains these seizures are "law enforcement proceedings," the agency has totally lost track of the whereabouts of the persons from whom they seized the property. How can an agency have an ongoing "law enforcement proceeding" when they have lost the alleged guilty owner of the seized property?

8

Pursuant to the Fifth Amendment of the U. S. Constitution, the government cannot confiscate or forfeit property without due process. Notice required by the due process clause requires the property owner to be apprised of the forfeiture proceeding and the rights available for the return of the property. See, e.g. <u>Mullane v. Central Hanover Bank & Trust Company</u>, 339 U.S. 306, 315 (1950). Mere knowledge that one's property has been seized does not equate with knowledge of the forfeiture proceeding. See, <u>Gonzalez-Gonzalez v. United States</u>, 257 F. 3d 31, 38 (1st Cir. 2001).

If in the "reverse FOIA" process, letters are being returned as undeliverable, then Customs is forfeiting property without actual knowledge to the property owner of the forfeiture proceeding. If there is no response, it is difficult to know whether there has been actual knowledge. Also, as demonstrated *supra*, Customs publishes notices of forfeiture in obscure publications.

Here, the balance between the privacy interest and what the government is doing weighs heavily in favor of what the government is doing where the rights of the owners of the seized property are being denied due process. SPRC strongly disagrees with the conclusion reached in the Elkins Dec. ¶ 32 "that a protectible privacy interest exists that would be threatened by disclosure...." What Customs is claiming is that it is better to protect personal privacy by not releasing the names and addresses of

9

individuals than it is to give these individuals the opportunity to save their seized property from forfeiture. This position defies common sense.

As an illustration as to why the names and addresses should be released to determine what Customs is doing may be found by beginning with Elkins Dec. ¶ 19. Plaintiff requested the names and addresses from whom Customs had seized currency in 15 separate cases. On information and belief the currency in these cases had been seized for alleged violations by individuals of 31 U.S.C. §§5316 and/or 5317. Furthermore, also on information and belief, Customs was attempting to forfeit all of the currency that had been seized from these individuals without any mitigation. However, this action is directly contrary to Customs' mitigation guidelines. Herrick Dec. ¶ 16. If the names and addresses of these individuals are released, they may be contacted by an entity other than Customs and advised of their rights to obtain at least 95% recovery of their seized currency.

Contrary to the assertion made by the government that "[i]n this case, the public interest in disclosure of names and addresses is either completely non-existent or negligible" individuals need to know why Customs is forfeiting their property, when, by their own guidelines they are entitled to mitigation or remission.

## C.    Exemption 7(A).

Once Customs publishes a notice of its intent to forfeit property, there is no

pending law enforcement proceeding. The Elkins Dec. at ¶ 35 is misleading. It is true that Customs enforces the criminal laws set forth in this paragraph. It is my understanding as an attorney who previously worked for Customs and in representing clients before Customs that any administrative proceeding is always deferred pending the conclusion of any related criminal activity.

As an example of the priorities of the government proceedings reference is made to John Doe v. The United States, 16 Cl. Ct. 412 (1989) in which undersigned counsel represented the plaintiff/informer. The proceedings in this case were stayed 2 years and 10 months pending the outcome of the underlying criminal and civil forfeiture proceedings of One Lear Jet Aircraft. United States v. One Lear Jet Aircraft, 808 F. 2d 765 (11th Cir. 1987). The purpose of referring to this case is that in the hierarchy of the priority of the handling of cases, the government always pursues criminal matters before considering civil administrative matters. We believe the Elkins Dec. could have been more candid on this point.

As to the issue of the release of such information that could be expected to interfere with law enforcement proceedings the government cites to Solar Sources, Inc. v. United States, 142 F. 3d 1033 (D.C. Cir. 1998). However, in that case, the government failed to point out that at page 1036 the court made a finding that "[a]lthough the Government has concluded its criminal proceedings against the four

11

defendants named in the appellants' FOIA request, the Antitrust Divisions's investigation is ongoing." The government has also cited to Alyeska Pipeline Service Co. v. Environmental Protection Agency, 856 F. 2d 309, 312 (D.C. Cir. 1988). In that case at page 312 the court made its finding that "[h]itherto we have realized that it is not enough for an agency to shore up its exemption claim merely with general and conclusory statements regarding the effect of disclosure. n30...." Footnote 30 refers to James T. Campbell v. Department of Health and Human Services, 682 F. 2d 256 (D.C. Cir. 1982). In *Campbell* at page 265 the court pointed out that in an Exemption 7(A) case "...that the district court must conduct a more focused and particularized review of the documentation on which the government bases its claim that the information Campbell seeks would interfere with the investigation."

The Elkins Dec. sets forth merely general and conclusory statements. It has not offered any proof that in any of the cases for which the names and addresses have been requested that there is in fact any pending investigation.

**D.    The Names and Addresses Must Be Published In The Notice of Forfeiture**

In its complaint, SPRC has requested the Court to issue a declaratory judgment that Customs must publish the names and addresses of persons from whom it has seized property when it publishes its notices of forfeiture. This will eliminate all of the FOIA requests which have precipitated this litigation. Authority for publishing the

12

names and addresses has been set forth in the above-described FOIA analysis and by

statute.

### 1. The Rule Of *In Pari Materia* Requires Customs To Publish The Names And Addresses From Whom Customs Has Seized Property

The statutes administered by Customs requires the names and addresses from

whom Customs has seized property to be included in the same advertisement as the

notice of forfeiture. The statutes at issue are as follows:

46 U.S.C. §327 Notice of seizure

> "In every case where a forfeiture of any vessel or merchandise shall accrue, it shall be the duty of the collector or other proper officer, who shall give notice of the seizure of such vessel or of such merchandise, to insert in the same advertisement the name and the place of residence of the person to whom any such vessel and merchandise belonged or were consigned, at the time of such seizure, if the same be known to him."

46 U.S.C. §328  Recovery of forfeitures and penalties.

> "All penalties and forfeitures which shall be incurred by virtue of this Title may be sued for, prosecuted, and recovered as penalties and forfeitures incurred by virtue of the laws relating to the collection of duties, and shall be appropriated in like manner; except when otherwise expressly prescribed."

19 U.S.C. §1600.  Application of the customs laws to other seizures by customs officers

> "The procedures set forth in sections 602-619 of this Act (19 U.S.C. 1602 through 1609) shall apply to seizures of any property effected by customs officers under any law enforced or administered by the Customs Service unless such law specifies different procedures."

19 U.S.C. §1607. Seizure; value $ 500,000 or less, prohibited articles, transporting conveyances, monetary instruments

> "(a) Notice of seizure. If--
>   (1) the value of such seized vessel, vehicle, aircraft, merchandise, or baggage does not exceed $ 500,000;
>   (2) such seized merchandise is merchandise the importation of which is prohibited;
>   (3) such seized vessel, vehicle, or aircraft was used to import, export, transport, or store any controlled substance or listed chemical; or
>   (4) such seized merchandise is any monetary instrument within the meaning of section 5312(a)(3) of title 31 of the United States Code;
>
> the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.
>
> (b) 'Controlled substance' and 'listed chemical' defined. As used in this section, the terms "controlled substance" and "listed chemical" have the meaning given such terms in section 102 of the Controlled Substances Act (21 U.S.C. 802).
>
> (c) Report to Congress. The Commissioner of Customs shall submit to the Congress, by no later than February 1 of each fiscal year, a report on the total dollar value of uncontested seizures of monetary instruments having a value of over $ 100,000 which, or the proceeds of which, have not been deposited into the Customs Forfeiture Fund under section 613A [19 USCS § 1613b] within 120 days of seizure, as of the end of the previous fiscal year."

It is SPRC's contention that when these sections are read together it is the intent

of Congress that the names and addresses of persons from whom Customs seized

14

property must be included in the advertised seizure notice.

> "Statutory provisions *in pari materia* normally are construed together to discern their meaning. Erienbaugh v. United States, 409 U.S. 239, 244, 34 L. Ed. 2d 446, 93 S. Ct. 477 (1972) (noting that the rule that statutes *in pari materia* should be construed together 'is...a logical extension of the principle that individual sections of a single statute should be construed together')...." Motion Picture Association of America, Inc., et al. v. Federal Communications Commission, et. al., 309 F. 3d 796, 802 (D C Cir. 2002).

The interplay between the forfeiture provisions of the Shipping Act and Customs Act was settled in United States v. The Brazil, 134 F. 2d 929 (7th Cir. 1943). At page 930 the court stated: "[t]he incorporation by reference of another statute will not render the incorporating act less particular or less specific, if the interpolated statute is clear and the incorporating act is likewise clear."

Here, the interpolated statute, section 1607, is clear as to the requirement that notice of seizure must be published for 3 consecutive weeks. The incorporating act, section 327, is clear that the notice of seizure must include the names and addresses of the persons from whom the property was seized.

## 2.    Precedent For Publishing Names and Addresses

As set forth in the Factual Background *supra* other federal, state and local agencies routinely publish names and/or addresses in their notices of forfeiture. Examples of these notices are set forth in the Herrick Dec. Exhibits G-L.

## **CONCLUSION**

WHEREFORE, SPRC respectfully requests the Court to deny defendant's

Motion for Summary Judgment; and, to grant SPRC's Cross Motion For Summary

Judgment and to grant the relief requested in the complaint.

> Respectfully submitted,
>
> Peter S. Herrick
> Attorney for Plaintiff
> 3520 Crystal View Court
> Miami, Florida 33133
> Tel. 305-858-2332
> Fax. 305-858-6347
> Email. pherrick@bellsouth.net
> D C Bar 137935

16