**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEIZED PROPERTY RECOVERY CORPORATION, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1570 (PLF) |
| | ) |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S CONSOLIDATED REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant Customs and Border Protection ("CBP" or "Customs") hereby files its consolidated reply in support of its Motion for Summary Judgment ("MSJ") and opposition to plaintiff's Cross Motion for Summary Judgment ("Opp.")

**I.    THE NAMES AND ADDRESSES OF INDIVIDUALS WHO HAVE BEEN SUBJECT TO A CUSTOMS SEIZURE IS PROPERLY EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. § 552(b)(6) and (b)(7)(C).**

**A.  Individuals Who Have Had Property Seized by CBP Have a Substantial Privacy Interest in Not Having Their Names and Addresses Made Publicly Available**

1.    The Relevant Case Law, Including Washington Post v. Department of Agriculture, Supports Withholding the Names and Addresses Under the Facts and Circumstances of this Case.

In this Freedom of Information Act ("FOIA") matter, plaintiff Seized Property Recovery Corporation ("SPRC") seeks the names and addresses of persons whose property has been seized by CBP and whose property is subject to forfeiture proceedings.  In its Motion for Summary

Judgment, CBP cited copious case law standing for the proposition that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." NARFE v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989).  See MSJ at 7 (citing United States Department of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 502 (1994); Painting and Drywall Preservation Fund v. Department of Housing and Urban Development, 936 F.2d 1300, 1302 (D.C. Cir. 1991); Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991); NARFE, 879 F.2d at 879; Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 135 (3d Cir.1974)); see also Department of Agriculture v. FLRA, 836 F.2d 1139, 1143 (8th Cir. 1988); Minnis v. Department of Agriculture, 737 F.2d 784, 787 (9th Cir.1984); Heights Community Congress v. Veterans Administration, 732 F.2d 526, 529 (6th Cir.1984); American Federation of Government Employees v. United States, 712 F.2d 931, 932 (4th Cir. 1983).

SPRC looks principally to this Court's decision in Washington Post Co. v. Department of Agriculture, 943 F. Supp.2d 31 (D.D.C. 1996), in support of its contention that the names and addresses should not be exempt from disclosure under 5 U.S.C. § 552(b)(6) and (b)(7)(C).  Yet when one applies the framework and analysis utilized in Washington Post to the facts and circumstances of this case, the conclusion that follows is that the agency's withholding decision should be affirmed.

As acknowledged in Washington Post, "whether disclosure of a list of names is a 'significant or de minimis threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue.'" Id. at 34 (quoting Department of State v. Ray, 502 U.S. 164, 176 n.12 (1991) (quoting NARFE, 879 F.2d at 877)).  In Washington Post, the information sought was a list of names, addresses and amounts paid to business entities that received payments under the Department of Agriculture's cotton price support program.  In that instance, the only

information that would be ascertainable from release was that the particular individual grew cotton, the address of the farm, and the amount of subsidy received.  See id.  Revealing that someone grows cotton does not implicate nearly the same privacy interests as revealing that someone has had their property seized by the government.  The law interpreting the FOIA has long recognized the stigma that follows from having one's name associated with law enforcement.  See, e.g., King v. Department of Justice, 830 F.2d 210, 233 n.169 (D.C. Cir. 1987); Senate of the Commonwealth of Puerto Rico v. Department of Justice, 832 F.2d 574, 588 (D.C. Cir. 1987); Bast v. Department of Justice, 665 F.2d 1251, 1254 (D.C. Cir. 1981).  The same stigma simply does not apply to the growing of cotton, making the Washington Post case readily distinguishable from the instant matter.

In addition, the Washington Post sought the names and addresses of entities engaged in the business of growing cotton.  As the Court concluded, "the 'defining characteristic' of the list sought by The Post is that it contains business addresses." Washington Post, 943 F. Supp. at 35 (emphasis added) (quoting NARFE, 879 F.2d at 876).  Here, CBP has already acknowledged that it will release the requested information insofar as SPRC's request seeks business or commercial names and addresses (subject to withholding under Exemption 7(A)).  See MSJ at 7.  CBP seeks to protect the names and addresses of individuals who have had their property seized, and those individuals' home addresses.  This is not, as was the case in Washington Post, a request that concerns a "professional relationship," but rather reflects an individual's personal interface with the government, implicating a far greater privacy interest.  See Washington Post, 943 F. Supp. at 35.  For these reasons, SPRC's reference to Washington Post does not advance its cause, and, in fact, provides further support for CBP's decision to withhold the names and addresses of individuals whose property is subject to forfeiture proceedings.

2.    There is Evidence in the Record that the Individuals Do Not Want Their
Names and Addresses Released

In this case, because the agency commenced a "reverse FOIA process" (typically applicable

to Exemption 4 claims), the record includes communications from several individuals who have

expressly and unequivocally stated that they do not wish to have their names and addresses made

publicly available. See Declaration of John Elkins ("Elkins Dec.") at ¶ 22 and Exhibits 23-29

thereto.[1]    SPRC's response is that defendant has given only seven examples of persons who

responded to CBP's communication, and that "[m]ore than likely if SPRC had contacted these

persons the letters would have been ignored." Opp. at 8. This argument misses the import of the

letters. In the normal course, determining whether a privacy interest exists under Exemptions 6 and

7(C) would not require contacting the affected individuals. Rather, the court would assess the

privacy interest based on the nature of the information being sought and the nature of the intrusion

on personal privacy that would follow from release. See Ray, 502 U.S. at 175-77; United States

Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 771-72

(1989), cited in Washington Post, 943 F. Supp. at 34. Here, the information requested would make

public a list of persons who have had their property seized by Customs, along with each person's

home address.[2]    For the reasons set forth above and in its opening motion, CBP submits that the

_____

[1]In its opening brief, CBP stated that engaging in a "reverse FOIA" process under
Executive Order 12,600 was not applicable to Exemptions 6 and 7(C). See MSJ at 9 n.3.
Having made this acknowledgment, CBP does not understand exactly what further explanation
plaintiff seeks on this issue. See Opp. at 3.

[2]In this regard, it is important to keep in mind that a release under the FOIA is considered
to be a public release; whether or not SPRC might make limited use of the information is no part
of the FOIA analysis. As the Supreme Court has recently explained, "there is no mechanism
under FOIA for a protective order allowing only the requester to see whether the information
bears out his theory, or for proscribing its general dissemination." National Archives and

-4-

affected individuals have a substantial privacy interest in not having their names and addresses publicly associated with seizures and forfeiture proceedings.  Here, the agency has <u>additional</u> evidence illustrating this point, including indications from some individuals that they would fear for their personal safety and the safety of their families if their names and addresses were made available to the public.  <u>See</u> Elkins Dec. at ¶ 23(a-g).  In other words, while CBP could readily establish the privacy interest of the individuals without reference to these letters, the letters make the claimed privacy interest all the more compelling, as the record contains actual expressions of concern from persons whose identities and addresses would be made public if the agency's withholding decision is not affirmed.

## B.  The Names and Addresses Are Being Sought in Furtherance of a Private, Not a Public, Interest

### 1.  <u>Obtaining Information for Personal Use Is Not a Public Interest</u>

Since the release of the names and addresses constitutes an invasion of privacy, the question then becomes whether the invasion is "unwarranted"; that is whether the privacy interest is greater than the public interest in disclosure.  <u>See</u> 5 U.S.C. § 552(b)(6), (b)(7)(C).  In addition, the Supreme Court's decision in <u>National Archives and Records Administration v. Favish</u> has made in clear that:

> the citizen must show that the public interest sought to be advanced is a <u>significant</u> one, an interest more specific than having the information for its own sake.  Second, the citizen must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted.

<u>Favish</u>, 541 U.S. at 172-73.  SPRC argues that if the names and addresses of persons subject to

---

<u>Records Administration v. Favish</u>, 541 U.S. 157, 174 (2004).  Once disclosed, the documents can be used by the requester in any manner he seeks, whether that be sharing the documents with others; posting them on the Internet, or otherwise arranging for a wider distribution. In fact, SPRC's counsel has used the Internet to make public information provided to him under the FOIA through his website.  <u>See</u> http://www.customslawyer.net.

seizure are released, SPRC can, in turn, contact those individuals and inform them of the pending

forfeiture proceedings.  See Opp. at 2.  This will (according to SPRC) allow "the owner of the

property to be made aware of what his, her or its government is up to," and take steps to recover their

goods, including potentially utilizing the services of SPRC in doing so.  Opp. at 2, 7.  However,

whether viewed from the point of the view of the persons whose property is subject to forfeiture

proceedings or from the point of view of SPRC this release of information serves only private,

personal interests, and not a public interest as that term has been defined by the decisional case law

interpreting the FOIA.

 The public interest in disclosure refers to "open[ing] agency action to the light of public

scrutiny," Oguaju v. United States, 288 F.3d 448, 450 (D.C. Cir. 2002), and "it does not include

helping an individual obtain information for his personal use." Id. (quoting Mays v. DEA, 234 F.3d

1324, 1327 (D.C. Cir. 2000)), vacated by Oguaju v. United States Marshals Service, 541 U.S. 970

(2004), judgment reinstated by Oguaju v. United States, 378 F.3d 1115 (D.C. Cir. 2004).  Yet

seeking to obtain information for personal use is precisely what SPRC is doing here.  The names and

addresses are being requested so that the individuals might be contacted about recovering their goods

and how SPRC might be able to assist in that effort.  An individual's "personal stake" in using the

requested information to further a personal economic interest, or a personal liberty interest  (such as

release from prison) "does not count in the calculation." Oguaju, 288 F.3d at 450; see also Mack v.

Department of the Navy, 259 F. Supp.2d 99, 109 (D.D.C. 2003).

 By way of analogy, the courts have consistently refused to recognize any public interest in

the disclosure of information solely to assist a prisoner in challenging his conviction.  See, e.g.,

Oguaju, 288 F.3d at 450; Neely v. Federal Bureau of Investigation, 208 F.3d 461, 464 (4th Cir. 2000);

Hale v. United States Dep't of Justice, 973 F.2d 894, 901 (10th Cir. 1992), vacated on other grounds,

509 U.S. 918 (1993); Landano v. Department of Justice, 956 F.2d 422, 430 (3d Cir. 1991), rev'd on

other grounds, 508 U.S. 165 (1993); Mack, 259 F. Supp.2d at 109.  "The innocence of a particular

defendant in a particular case 'tell[s] us nothing about matters of substantive law enforcement policy

that are properly the subject of public concern.'"  Neely, 208 F.3d at 464.  Similarly, whether a given

person might be entitled to recover his or her seized goods tells us nothing about the operations of

CBP that is "properly the subject of public concern."  Seeking information in order to assist a person

in the recovery of personal property is practically the textbook definition of a personal interest, and

not one that overcomes the substantial privacy interests at issue here.

> 2.    Parties Who Have an Interest in Forfeiture Proceedings Are
> Provided Individual Notice of the Proceedings

SPRC claims that providing it with the names and addresses is in the public interest because

absent SPRC's attempts to communicate with these individuals, persons with goods subject to

forfeiture might not otherwise find out about the proceedings.  SPRC intimates that unless one is a

devotee of the fine print in local newspapers, one has little to no chance to find out about a forfeiture

proceeding that might affect his or her interests.  See Opp. at 2-3 (citing the Fernando Mesa

Valderrama case).  This intimation is incorrect.  The exact same statute that requires publication of

the notice of seizure for three successive weeks also requires that "[w]ritten notice of seizure

together with information on the applicable procedures shall be sent to each party who appears to

have an interest in the seized article."  19 U.S.C. § 1607(a).  Thus, the interested parties do receive

notice of the relevant proceedings from CPB.[3]  Thus, SPRC's proposed solicitation letter would be

---

[3]For this reason, SPRC's suggestion that CBP is somehow violating the Due Process
Clause of the Fifth Amendment is without merit.  See Opp. at 9.  In any event, SPRC did not

only an additional communication, informing these individuals that "with the proper representation and advocacy they may be able to recover their property." Opp. at 7. The very language employed by SPRC in their opposition memorandum belies any claim that the release of the names and addresses would further a public interest.

        3.      Releasing a List of Names and Addresses Does Not
                    Shed Light on Agency Operations

Also indicative of the lack of a public interest in the information being sought is the fact that SPRC's FOIA request seeks only names and addresses, not any substantive information about CBP that would inform the citizenry about what their government is up to. See Ray, 502 U.S. at 177-78. As the Supreme Court has articulated, the public interest in disclosure is limited to the FOIA's core purpose of "shed[ing] light on an agency's performance of its statutory duties." Reporters Committee, 489 U.S. at 773. The Reporter's Committee decision went on to explain that the public interest is "not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." Id. at 796. Information that does not directly reveal the operations or activities of the government falls outside the ambit of the public interest that FOIA was enacted to serve. See id. at 775; see also Nation Magazine v. United States Customs Service, 71 F.3d 885, 894-95 (D.C. Cir. 1995). When

_____

plead a constitutional claim in the Amended Complaint, nor could SPRC satisfy the requirements of Article III or prudential standing to assert a Fifth Amendment claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (for Article III standing, a plaintiff must show, inter alia, that it has suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical); Allen v. Wright, 468 U.S. 737, 751 (1984) (holding that prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.")

a request seeks personal information but does not seek official information about a government agency, the invasion of privacy is unwarranted.  See Favish 541 U.S. at 171-72; Reporter's Committee, 489 U.S. at 780.  Indeed, in the 7(C) context, the balance categorically favors withholding the names and addresses of third parties absent exceptional circumstances as "the type of information sought is simply not very probative of an agency's behavior or performance." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991); see also Nation Magazine, 71 F.3d at 896.  No exceptional circumstances are present here, as a list of names and addresses says nothing about the manner in which CBP performs its duties.

II.    **CBP HAS JUSTIFIED THE WITHHOLDING OF THE NAMES AND ADDRESSES OF COMMERCIAL ENTITIES WHERE THOSE ENTITIES ARE ALSO THE SUBJECT OF ONGOING LAW ENFORCEMENT PROCEEDINGS**

SPRC accurately states that defendant's summary judgment motion did not offer "any proof that in any of the cases for which the names and addresses have been requested that there is in fact any pending investigation."  Opp. at 12.  This is because at the time of the filing of the Motion for Summary Judgment, CBP had just recently finalized its approach for the handling of SPRC's FOIA requests, and had not yet had the opportunity to consult with Immigration and Customs Enforcement ("ICE") to verify whether there were any ongoing criminal investigations with respect to the commercial entities whose names and addresses are being sought.  See Elkins Dec. at ¶ 35.  That process has now been completed, and through the Declaration of Marshall Fields, CBP has identified those seizure numbers for which the subjects associated with proceedings are being investigated by ICE for various violations of the law that may or may not have been associated with those particular seizures.  See Declaration of Marshall Fields at ¶¶ 7, 8 (Reply Exhibit 1).  Since SPRC has cross-moved for summary judgment and will have the opportunity for a reply brief, SPRC has not been

prejudiced by the inclusion of this additional declaration in CBP's opposition/reply memorandum.

SPRC's counsel also claims that because CBP has published notices of forfeiture proceedings it is necessarily the case that the criminal proceedings have concluded. See Opp. at 11 (stating that based on his experience as a former Customs attorney, administrative proceedings are always deferred pending the conclusion of any related criminal activity). As explained in the Elkins Declaration, the fact that the specific seizure at issue is now subject to forfeiture proceedings does not mean that there may not be another open criminal investigation(s) involving that commercial entity. See Elkins Dec. at ¶ 35. As CBP explained in its opening brief, the release of the name and address might result in a third party (such as SPRC here) reaching out to the commercial entity subject to the proceedings, which might cause that commercial entity to become suspicious of other enforcement proceedings. See id. This could reasonably be expected to result in the company altering its practices; i.e., attempting to divert merchandise through different ports of entry, changing parties with whom it conducts business such as the foreign shipper or supplier, or changing a relationship with a confidential informant, and thus do irreparable harm to an existing criminal investigation. See id.

SPRC's response is that "[t]here is no evidence of record that the release of the names and addresses will alert the persons of ongoing law enforcement proceedings." See Plaintiff's Statement of Material Facts Not In Dispute, ¶ 4. Neither the text of Exemption 7(A) nor the decisional law require that the agency demonstrate with absolute certainty that the ongoing investigation will be harmed. The 1986 Amendments to the FOIA explicitly lessened the showing that the agency must make, from a demonstration that release "would interfere with" to "could reasonably be expected to interfere with" ongoing law enforcement proceedings. See Pub. L. No. 99-570, § 1802, 100 Stat.

3207, 3207-48.  In addition, the D.C. Circuit has also recognized that Exemption 7(A) necessarily requires the exercise of some degree of predictive judgment by the agency.  See Center for National Security Studies, 331 F.3d 918, 932 (D.C. Cir. 2003).  Here, CBP believes that if entities that are under investigation receive unsolicited communications about the proceedings, those entities might change their behavior and thus impede law enforcement efforts.  See Elkins Dec. at ¶ 35.

Through the declarations of Marshall Fields and John Elkins, CBP has shown both that (1) there are ongoing law enforcement proceedings with respect to the seizure numbers for which 7(A) has been asserted and (2) that the release of such information could reasonably be expected to cause some articulable harm to ongoing law enforcement efforts.  CBP has thus met its burden justifying the withholding of the names and addresses of this subset of commercial entities under Exemption 7(A).  See NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978); Crooker v. ATF, 785 F.2d 70, 77 (3d Cir. 1986).

## III.    CBP IS NOT STATUTORILY REQUIRED TO PUBLISH THE REQUESTED NAMES AND ADDRESSES

Separate and apart from its FOIA request for the names and addresses, SPRC also claims that it should have access to the names and addresses through an alternative means, one which would obviate the need to submit FOIA requests.  Specifically, plaintiff contends that CBP is required to include the name and address of the person to whom the property belonged at the time of the seizure when it provides public notice in the newspaper announcements.  See Opp. at 12-15.

As a threshold matter, plaintiff never explains the basis on which the Court has jurisdiction to adjudicate such a claim.  The only statutory cause of action cited in the Amended Complaint is the FOIA, and plaintiff has not even endeavored to argue that the lack of publication of the names

and addresses contravenes any provision of the FOIA  See Amended Complaint.  The Amended

Complaint does cite the Declaratory Judgment Act, 28 U.S.C. § 2201, but the Act does not, by itself,

create a basis for federal jurisdiction.[4]  "[T]he Declaratory Judgment Act is not an independent

source of federal subject matter jurisdiction. . . ."  GNB Battery Technologies, Inc. v. Gould, Inc.,

65 F.3d 615, 619 (7th Cir. 1995); see also Borg-Warner Protective Services Corp. v. United States,

81 F. Supp. 2d 20, 28-29 (D.D.C. 2000); aff'd 245 F.3d 831 (D.C. Cir. 2001).  A request for

declaratory relief will not confer jurisdiction on the federal courts if jurisdiction would not otherwise

exist. See Skelly Oil Co. v. Phillips Petrol. Co., 339 U.S. 667, 671 (1950); Nashoba Communications

Ltd. Partnership v. Town of Danvers, 893 F.2d 435, 437 (1st Cir. 1990).

    Moreover, SPRC does not have standing to challenge CBP's alleged non-compliance with

the relevant statute, as SPRC has not alleged that the absence of publication causes it to suffer an

"injury in fact" that is "concrete and particularized."  See Lujan, 504 U.S. at 561.  Nor do SPRC's

professed interests fall within the zone of interests encompassed by the statute requiring notice of

forfeiture proceedings.  The zone of interests test excludes those whose interests are "so marginally

related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be

assumed that Congress intended to permit the suit." Clarke v. Sec. Indus. Ass'n., 479 U.S. 388, 399

---

[4]The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction, . . . any court
> of the United States, upon the filing of an appropriate pleading,
> may declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable as
> such.

28 U.S.C. § 2201.

(1987).  SPRC's only plausible contention is that the absence of publication makes it much more

difficult to obtain the names and addresses of potential clients, which has some speculative impact

on SPRC's potential revenue stream.  SPRC's interest is "so incongruent with the statutory purposes

as to preclude an inference that Congress might have intended such a party as a challenger." Judicial

Watch v. United States Senate, 432 F.3d 359, 365 (D.C. Cir. 2005) (quoting Clarke v. Sec. Indus.

Ass'n, 479 U.S. 388, 399 (1987)).

In any event, CBP's practice of not including names and addresses in its published forfeiture

notices is entirely consistent with the relevant statutory framework.  With respect to public notice

of forfeiture proceedings, Section 1607 of Title 19 provides that:

> the appropriate customs officer shall cause a notice of seizure of such articles and the
> intention to forfeit and sell or otherwise dispose of the same according to law to be
> published for at least three successive weeks in such manner as the Secretary of
> Treasury may direct.  Written notice of seizure together with information on the
> applicable procedures shall be sent to each party who appears to have an interest in
> the seized article.

19 U.S.C. § 1607 (emphasis added).  The statute thus makes it clear that the manner of publication

of the notice is a matter committed to the discretion of the Secretary.[5]  The implementing regulation,

19 C.F.R. § 162.45, does not require names and addresses to be included in the notice.  See 19

C.F.R. § 162.45.

Plaintiff claims that 19 U.S.C. §1607 must be read in pari materia with a 46 U.S.C. app. §

327, which provides:

> In every case where a forfeiture of any vessel or merchandise shall accrue, it shall be
> the duty of the collector or other proper officer, who shall give notice of the seizure
> of such vessel or of such merchandise, to insert in the same advertisement the name

---

[5]This discretion now lies with the Secretary of the Department of Homeland Security,
pursuant to 6 U.S.C. § 552(d).

and the place of residence of the person to whom any such vessel and merchandise belonged or were consigned, at the time of such seizure, if the same be known to him.

This provision of the appendix to Title 46 of the United States Code ("Shipping") has <u>already</u> been addressed and encompassed in CBP's regulations. 19 C.F.R. § 162.45(a)(4) requires CBP to include "the name and place of residence of the person to whom any vessel or merchandise seized for forfeiture under the navigation laws belongs or is consigned, if that information is known to the Fines, Penalties, and Forfeitures Officer." In other words, where the seizure is effected under the authority of Title 46 of the U.S. Code, CBP does, in fact, include the name and place of residence. Where Title 46 does not apply, there is neither a statutory nor a regulatory requirement that the name and address of the person from whom the property was seized be included in the notice. For this reason, even if SPRC had the ability to challenge the manner in which CBP publishes notices of forfeiture proceedings, CBP would prevail on such a challenge.

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN , D.C. Bar # 451058
United States Attorney

_____/s/_____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____/s/_____
PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated: February 2, 2006

-14-