UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEIZED PROPERTY RECOVERY )
CORPORATION, )
)
)
Plaintiff, )
)
v. ) Civil Action No. 05-1570(PLF)
)
UNITED STATES CUSTOMS AND )
BORDER PROTECTION, )
)
Defendant. )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CONSOLIDATED REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Seized Property Recovery Corporation ["SPRC"], by and through its undersigned attorney, hereby files its response to defendant's consolidated reply in support of its Motion for Summary Judgment and opposition to plaintiff's Cross Motion for Summary Judgment, and, states the following:

I. **THE NAMES AND ADDRESSES OF INDIVIDUALS WHO HAVE BEEN SUBJECT TO A CUSTOMS SEIZURE ARE NOT PROPERLY EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. §§552(b)(6) OR (b)(7)(C)**

A. **Individuals Who Have Had Property Seized by Customs Do Not Have a Substantial Privacy Interest In Not Having Their Names and Addresses Made Publicly Available.**

1

1. The Relevant Case Law, Including <u>Washington Post v. Department of Agriculture</u>, Does Not Support Withholding the Names and Addresses Under The Facts and Circumstances of this case

Since the commencement of this litigation Customs issued a "directive" to its Fines, Penalties and Forfeiture field offices that it may release business names and addresses requested under FOIA under certain conditions. This authority to release the business names and addresses follows admonition in <u>The Washington Post Company v. United States Department of Agriculture</u>, 943 F. Supp. 31, 35 (USDC DC 1996) at footnote 4, that "[t]he address of a business itself receives no protection at all under Exemption 6 because a business entity has no 'personal privacy' interest. See infra note 6."

Turning to the issue of releasing the names and addresses of individuals the defendant's Reply at page 3 would have us believe that "[t]he law interpreting the FOIA has long recognized the stigma that follows from having one's name associated with law enforcement." If there is a "stigma," and Customs has not provided any proof that there is any stigma in the pending requests, it was caused by Customs at the time of seizure. Perhaps a greater stigma nowadays would be that of an alleged terrorist. Nevertheless in the two concurrent cases <u>Associated Press v. United States Department of Defense</u>, 2006 U. S. Dist. LEXIS 211 decided January 6, 2006 and

2006 U. S. Dist. LEXIS 2456 decided January 23, 2006 Judge Rakoff in the U. S. District Court for the Southern District of New York brushed aside the government's 5 U.S.C. §552(b)(6) claim and ordered the release of the names of the terrorist detainees at Guantanamo.

"The Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to [certain other exemptions]." United States v. Ray, 502 U.S. 164, 172, 112 S. Ct. 541 (1991). The government must show that disclosure "would constitute" (as opposed to "could reasonably be expected to constitute") a "clearly unwarranted" (as opposed to simply "unwarranted") invasion of personal privacy. United States Dep't. of Justice v. Reporters Comm. for Freedom Of Press, 489 U. S. 164, 172, 109 S. Ct. 1468 (1989).

The government has not provided any credible evidence that their seizures of property from individuals has created a stigma for these individuals. On the contrary, in measuring the balancing of interests pursuant to Exemption 6, it is necessary to open the operations of the government to determine if these individuals have been denied due process. The government has failed to provide any competent evidence that these individuals have an expectation of confidentiality and/or privacy when their property was seized. See, e.g. Associated Press, 2006 U. S. Dist. LEXIS 2456 paragraphs 14 & 15. The government has not introduced a scintilla of evidence that

these individuals would be subject to embarrassment or retaliation. Paragraph 20. The government has produced no evidence that the addresses provided by these individuals are their home addresses and not their business addresses. As noted in *Washington Post* at page 35, "[w]hile their business addresses might in many instances be the same as their home addresses...." The "list" of individuals being sought by SPRC is defined by the characteristic that their property has been seized by the government and is about to be forfeited absent an opportunity to pursue their due process rights.

A significant public interest lies in shedding light on the government's attempts to deny these individuals their due process rights to recover their seized property.

   2. There is Some Evidence in the Record that Some Individuals Do Not Want Their Names and Addresses Released

From a sampling of several letters that were returned out of at least ten times that number which were mailed by Customs, the government points to two examples, Elkin's Declaration, paragraph 23(f) & (g) for the broad proposition put forth by their attorneys that they would "fear for their personal safety" if their names and addresses were released. The government goes on to state that "CBP could readily establish the privacy interest of the individuals...." This is a statement without substance as the government has provided no credible evidence of the privacy interests of any of the

individuals from whom they seized property.

### B. The Names and Addresses Are Not Being Sought In Furtherance of a Private, Not a Public Interest

1. <u>SPRC's Obtaining Information Is For a Public Interest</u>

The government has the burden to prove that the release of the names and addresses requested by SPRC is "clearly unwarranted." The government has cited to <u>National Archives and Records Administration v. Favish</u>, 541 U.S. 157 (2004). This case was interpreting 5 U.S.C. §552(b)(7)(C). At page 171 the court cited to the general FOIA rule as follows:

> "FOIA is often explained as a means for citizens to know 'what the Government is up to.' [Reporters Committee] Id., 489 U.S. 749, at 773, 103 L. Ed. 2d 774, 109 S. Ct. 1468. This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy. The statement confirms that, as a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve. The information belongs to citizens to do with as they choose. Furthermore, as we have noted, the disclosure does not depend on the identity of the requester. As a general rule, if the information is subject to disclosure, it belongs to all.
>
> \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.

> Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.
>
> We do not in this single decision attempt to define the reasons that will suffice, or the necessary nexus between the requested information and the asserted public interest that would be advanced by disclosure. On the other hand, there must be some stability with respect to both the specific category of personal privacy interests protected by the statute and the specific category of public interests that could outweigh the privacy claim. Otherwise, courts will be left to balance in an ad hoc manner with little or no real guidance. Id., 489 U.S. 749, at 776, 103 L. Ed. 2d 774, 109 S. Ct. 1468. In the case of photographic images and other data pertaining to an individual who died under mysterious circumstances, the justification most likely to satisfy Exemption 7(C)'s public interest requirement is that the information is necessary to show the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties."

The release of individuals names and addresses is not confined to only the interests of SPRC. In the government's consolidated reply at page 4, footnote 2, it argues "[i]n this regard, it is important to keep in mind that a release under the FOIA is considered to be a public release; whether or not SPRC might make limited use of the information is no part of the FOIA analysis." SPRC cannot be pursuing a private interest where the release is a public release.

While the cases being cited by the government in this subsection relate to exemption (b)(7)(C), nevertheless it is the intention of SPRC to call into question the mishandling of these cases by Customs. This was discussed extensively in SPRC's cross-motion for summary judgment. The seizure and forfeiture abuses by Customs

resulted in the passage of the Civil Asset Reform Act of 2000 ["CAFRA"]. Most of the seizure cases involving individuals concern currency. In the currency cases being published for forfeiture, Customs is seeking the forfeiture of all of the seized currency. As an example, from the numerous FOIA appeals filed by SPRC, a sampling of eighteen (18) cases shows Customs is attempting to forfeit all of the seized currency. Roy Leon Declaration, paragraph 5 attached as Exhibit A. Unless the currency is drug related, forfeiture of all of the seized currency is contrary to CAFRA; Customs own mitigation guidelines; and, <u>United States v. Bajakajiian</u>, 118 S. Ct. 2028 (1998) and its progeny.

It is the intent of SPRC, in satisfying the public interest requirement, to contact the individuals to show them the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties by not mitigating the seizure especially of currency for alleged violations of reporting requirements.

    2.    <u>Parties Who Have an Interest in Forfeiture Proceedings May or May Not be Provided Individual Notice of the Proceedings</u>.

The government is correct in asserting that 19 U.S.C. §1607(a) requires Customs to send written notice of the pending forfeiture proceedings to all interested parties. However, the realities, which is unbelievable for a "law enforcement" agency

such as Customs, is that they cannot locate the persons from whom they seized property to provide them due process notice. For example, the Elkin's Declaration at paragraph 24 states: "[t]he remaining letters[1] sent to the parties associated with the remaining case numbers for Counts I-III were returned to sender [presumably Customs] marked 'not deliverable as addressed,' 'forwarding order expired.' 'attempted not known,' and/or 'unable to forward;' or otherwise a response has not been received by OR & R." There is no explanation what further steps Customs took to deliver written notice to these individuals. See, also, Roy Leon Declaration, Exhibit B.

Since SPRC has started receiving requested names and addresses of businesses from Customs it has encountered the same problem of letters being undelivered. SPRC then has the ability to research the names on the internet and to use a private agency to locate the business.

      3.    Releasing a List of Names and Addresses Does
            <u>Shed Light on Customs Operations</u>

The information published by Customs in the newspaper usually identifies the property seized; the case number; the date to respond; whether a claim and cost bond must be filed; and, the law violated. At this stage SPRC does not need any

---

[1] It would have been very easy for Customs to identify the number of letters returned mailed and those returned.

substantive information from Customs. SPRC needs to get information to these persons to explain their rights to recover their property.

As examples we would refer to the Elkin's Declaration. At paragraph 23c. the law firm was claiming its client was a "purveyor of first quality merchandise." Definitely a mitigating factor. At paragraph 23e. the attorney was claiming the seized property was "pre-marketing samples." Again a mitigating factor. At paragraph 23f. the attorney was claiming his client was cooperating with the U. S. Attorney. Again a mitigating factor. Aggressive pursuit of these mitigating factors could lead to the release of the seized merchandise if the citizenry knew what its government was up to.

## II. CBP HAS NOT JUSTIFIED THE WITHHOLDING OF THE NAMES AND ADDRESSES OF COMMERCIAL ENTITIES WHERE THOSE ENTITIES ARE ALSO THE SUBJECT OF ONGOING LAW ENFORCEMENT PROCEEDINGS.

SPRC strongly disputes the declaration of Marshall Fields especially paragraphs 7 and 8. There is no credible or competent evidence presented that any of the litany of case numbers are the subject of any law enforcement proceeding. The Customs <u>Seized Asset Management and Enforcement Procedures Handbook</u> states that "[t]he seizing agent is responsible for notifying FP&F immediately if any item that has been seized has been included in a criminal indictment.... If appropriate, the

administrative process should be stayed pending judicial disposition." See, Peter S. Herrick Declaration attached as Exhibit B. Clearly none of the case numbers in Fields' declaration are the subject of any law enforcement proceeding or they would not have reached the administrative forfeiture stage. There is no sworn testimony from Fields that he has compared any persons in any and/or all of these case numbers with any system of law enforcement records indicating that any subjects associated with these seizure numbers are being investigated by ICE. Since this declaration by Fields is subject to perjury, there is a very serious issue here. Fields has referred us to 90 cases and has not identified one case where one subject is being investigated by ICE. Furthermore, all 90 cases refer to the port designations "2704" and "2720" which covers the Los Angeles/Long Beach seaport and airport only. Fields did not review any cases from any other ports. To SPRC, paragraphs 7 & 8 have the real appearance of being a sham and do not amount to competent, credible evidence.

At paragraph 8 Fields states "[t]hat named entity may, in turn, become suspicious of other enforcement proceedings...." It is reasonable to predict that when Customs seizes currency from an individual, everyone connected to the currency will become aware of the law enforcement proceeding. Where property is seized from a commercial entity, it is reasonable to predict that everyone connected with the shipment would become aware of the law enforcement proceeding. This would

include but not limited to the importer, consignee, exporter, shipper, factory, carrier, customs broker, freight forwarder, customer, trucker, and, warehouse operator.

The Fields' declaration presents no credible evidence that any law enforcement proceeding has been compromised with the release of the names and addresses from whom Customs has seized property.

How could SPRC reaching out to a commercial entity cause that entity to be more suspicious than that entity receiving a notice of forfeiture by mail from Customs? There is no credible basis for this pure speculation. This is not "predictive judgment." Customs has not pointed to a single case wherein SPRC has requested information that could possibly have caused any entity to change its behavior.

### III. CUSTOMS IS STATUTORILY REQUIRED TO PUBLISH THE REQUESTED NAMES AND ADDRESSES

SPRC's Amended Complaint cites to the Declaratory Judgment Act, 28 U.S.C. §2201 for this Court's jurisdiction to require Customs to publish the names and addresses from whom it has seized property.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides:

> "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

The government has cited to GNB Battery Technologies, Inc. v. Gould, Inc., 65 F. 3d 615 (7th Cir. 1995) for the proposition that the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction. SPRC agrees. SPRC believes *GNB* supports its claim for a declaratory judgment. At page 619 that court determined:

> "However, because the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, see Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 94 L. Ed. 1194, 70 S. Ct. 876 (1950), the district court must possess an independent basis for jurisdiction. In this case, GNB premises jurisdiction over Count One on 'federal question jurisdiction. See 28 U.S.C. § 1331. The 'presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' Burda v. M. Ecker Co., 954 F.2d 434, 438 (7th Cir. 1992).
>
> Under the 'well-pleaded complaint' rule, 'federal law must create the cause of action, or some substantial, disputed question of federal law must be an element in the plaintiff's claim.' Commercial Nat'l Bank v. Demos, 18 F.3d 485, 488 (7th Cir. 1994); see generally Ceres Terminals, Inc. v. Industrial Comm'n, 53 F.3d 183 (7th Cir. 1995). In declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant. Nuclear Eng'g Co. v. Scott, 660 F.2d 241, 253 (7th Cir. 1981), cert. denied, 455 U.S. 993 (1982). In this case, Count One of GNB's complaint presumes the possibility of an action by Gould under §§ 107(a) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9067(a), 9613(f)(1), a federal cause of action. Thus, GNB's complaint is a request for a declaration of nonliability under CERCLA. It therefore constitutes an adequate request for

declaratory relief and supports our federal question jurisdiction."

SPRC is challenging the validity of 19 C.F.R. §162.45(a)(4) in that Customs should not limit the publication of names and addresses to only those cases arising under Title 46 of the U. S. Code. SPRC would argue that its Amended Complaint is well pled and raises a federal question under 28 U.S.C. §1331. While section 1331 was not raised in the Amended Complaint we would respectfully request the Court to conform the pleadings to the evidence presented.

In the case of <u>Coalition to Preserve the Integrity of American Trademarks v. United States</u>, 790 F 2d 903 (DC Cir. 1986) the appellants sought injunctive and declaratory relief to prevent Customs from enforcing a portion of its regulations regarding trademarks as not being in conformance with the statute. That court at page 918 held:

> "We turn to the remedy. The appellants have requested that the Customs Service be enjoined from enforcing the present regulations and ordered, in effect, to enforce the statute to its fullest. We think, however, that injunctive relief is inappropriate at this juncture of the controversy. The appellants have levelled a facial challenge to the validity of the regulations; the relief they seek is not an order compelling the Customs Service to exclude specific goods, but rather a broad decree that would entail continuing supervision by the courts. We must decline the invitation. Although the appellants are entitled to declaratory relief -- 'an alternative to the strong medicine of the injunction,' <u>Steffel v. Thompson</u>, 415 U.S. 452, 466, 39 L. Ed. 2d 505, 94 S. Ct. 1209 (1974) -- their request for injunctive relief should be denied.

> For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the district court with instructions to issue a declaratory judgment that the Customs regulations in question, 19 C.F.R. § 133.21(c)(1) - (3), are contrary to Section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526, and hence unlawful."

In the Supreme Court's review of this decision, K Mart Corp. v. Cartier, 486 U.S. 281, 108 S. Ct. 1811 (1988) it reversed the appeals court as to 19 C.F.R. §133.21(c)(1)-(2) and affirmed as to section 133.21(c)(3).

SPRC argues that when 19 U. S. C. §1607 and 46 U. S. C. App. §327 are read together than this Court should issue declaratory relief for the requested changes in section §162.45(a)(4). We note in passing that the several courts called upon to review the customs regulations regarding the trademark issue never considered whether the several plaintiffs had standing to pursue their cause of action. We further note in passing to the exhibits in SPRC's cross-motion for summary judgment of the numerous federal law enforcement agencies who do publish the names and addresses of individuals.

Respectfully submitted,

Peter S. Herrick<br>
Attorney for Plaintiff<br>
3520 Crystal View Court<br>
Miami, Florida 33133<br>
Tel. 305-858-2332

Fax. 305-858-6347
Email pherrick@bellsouth.net
D C Bar No. 137935