## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SEIZED PROPERTY RECOVERY CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1570 (AK)** |
| | ) | |
| **UNITED STATES CUSTOMS AND BORDER PROTECTION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant United States Customs and Border Protection, by and through its undersigned attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby renews its motion for summary judgment in this case brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552. Summary judgment is sought on the grounds that there are no material facts in dispute and that defendant is entitled to judgment as a matter of law.

A statement of material facts as to which there is no genuine dispute and a memorandum of points and authorities with supporting declarations and exhibits are filed herewith.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated: October 11, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEIZED PROPERTY RECOVERY CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1570 (AK) |
| | ) |
| UNITED STATES CUSTOMS AND BORDER PROTECTION | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. FACTUAL BACKGROUND**

**A.    Plaintiff's Freedom of Information Act Requests**

By regulation, Customs and Border Protection ("CBP") (formerly the U.S. Customs Service ("Customs")) publishes notices of seizure and intent to sell or forfeit property that has been seized by CBP. See 19 C.F.R. § 162.45. See also 19 U.S.C. § 1607 (providing the statutory basis for 19 C.F.R. § 162.45). CBP's published notices include, among other things, a description of the property seized and the time, cause and place of the seizure. See id.; see also Complaint Exhibit J (sample newspaper notice). CBP does not include the name and residence of the person or entity from whom the property was seized; however, CBP does publish the name and place of residence of the person to whom a seized vessel or merchandise belongs or is consigned if the seizure is made pursuant to the navigation laws. See 19 C.F.R. § 162.45.

Plaintiff Seized Property Recovery Corporation ("SPRC") is a Florida corporation. See Amended Complaint ("Am. Comp.") at ¶ 4. According to the Division of Corporations, Florida

Department of State, SPRC has the same address as counsel for plaintiff, and counsel for plaintiff is the listed principal Officer/Director for SPRC.  See Public Inquiry, Corporations Online, Florida Department of State, available on www.sunbiz.org.  (Exhibit 1).

SPRC has sent at least eighteen FOIA requests to CBP in several ports in the United States seeking the names and addresses of individuals and commercial entities from whom CBP has seized property and that have been listed in a published notice of forfeiture.  See Am. Comp. at ¶¶ 6, 21-109 (listing each of the separate requests made for names and addresses).  See also Declaration of Richard Chovanec ("Chovanec Dec.") at ¶ 10, 13, 16, 19, 25-26.[1]  On information and belief, SPRC is seeking these names and addresses so that it can attempt to contact those who have had their goods seized and offer the services of SPRC in working to recover the seized property from CBP.  See Chovanec Dec. at ¶ 31 and Ex. 14 thereto.

As the exhibits appended to plaintiff's Complaint and Amended Complaint indicate, the initial responses to SPRC's request from the various ports were not uniform.  In some cases, names and addresses were released; in other instances, the sought-after information was withheld under FOIA Exemptions (b)3, (b)7(A) and (b)7(C).  See Complaint Ex. C, see also Chovanec Dec. at ¶¶

---

[1]Richard Chovanec is the acting Freedom of Information Act Appeals Officer and acting Branch Chief of the FOIA Appeals, Policy & Litigation Branch(FAPLB), Regulations and Disclosure Law Division, Office of Regulations and Rulings (OR&R).  See Mr. Chovanec is responsible for the overall supervision and management of the FAPLB.  His duties include, inter alia:  1) reviewing initial FOIA decisions that are subject to administrative appeal; 2) giving guidance and instructions to CBP personnel regarding the processing of FOIA requests; 3) adjudicating administrative appeals that concern FOIA requests; and 4) overseeing all CBP activities related to information disclosure.  Mr. Chovanec is familiar with the procedures followed by CBP in responding to requests and subsequent appeals for information from its files pursuant to the FOIA, and is familiar with the procedures followed in responding to the FOIA requests submitted by SPRC.  See Chovanec Dec. at ¶¶ 1–9.

11, 14, 17. In another instance, the names were released, but not the addresses. See Chovanec Dec. at ¶ 20. Customs also looked to Exemption 4 as a basis for withholding the requested information, and, in fact, commenced a "reverse FOIA" process in response to SPRC's FOIA appeals, contacting the third parties in an effort to ascertain whether they would consent to having their names released. See Chovanec Dec. at ¶ 22.

## B.    Federal Court Proceedings

Plaintiff filed its Complaint in August 2005, and amended in October 2005 to add additional FOIA requests. As explained in CBP's initial motion for summary judgment, CBP conducted an internal review of how these FOIA requests had been handled by the various ports, and ultimately determined that the proper response to the requests for names and addresses depended upon two variables. The first is whether the request would result in the release of an individual's name and address (as opposed to a commercial entity), in which case the requested information is properly withheld under FOIA exemptions (b)6 and (b)7(C). If the entity whose goods have been seized is a commercial entity, CBP must then go on to determine whether that commercial entity is the subject of any ongoing law enforcement proceedings. If the commercial entity is the subject of an ongoing law enforcement proceeding, then FOIA exemption 7(A) calls for withholding, because release of the names and addresses could be reasonably expected to result in interference with those proceedings. Where the entity subject to the seizure is neither a) an individual nor b) subject to ongoing law enforcement proceedings, release under the FOIA is appropriate. See Chovanec Dec. at ¶¶ 28-36.

Briefing on the initial Motion for Summary Judgment was completed in March 2006. While this fully briefed motion was pending before the Court, SPRC raised additional questions with

defendant concerning the degree to which CBP had raised Exemption 7(A) claims.  Specifically, SPRC informed defendant that it did not believe that there were ongoing law enforcement investigations involving each of the entities associated with the seizure numbers listed in the Declaration of Marshall Fields (filed with defendant's reply memorandum).  See Defendant's Motion for a Stay, USDC PACER Dkt. #28.

CBP then engaged in a process of further exploring with United States Immigration and Customs Enforcement ("ICE") whether there were, in fact, ongoing law enforcement investigations associated with each of the entities set forth in Mr. Fields' February 2006 declaration.[2]  ICE determined and communicated to CBP that for a number of entities associated with these seizures, there no longer was an ongoing law enforcement action.  See Defendant's Motion to Withdraw Motion for Summary Judgment, USDC PACER Dkt. Nos. 30, 31.  As explained in defendant's Motion to Withdraw Summary Judgment Motion, when CBP initially went about the process of ascertaining which of the entities associated with each of the seizure numbers might be subject to ongoing enforcement proceedings, it was necessary to obtain that information from ICE.  See id. CBP sought information from a number of different ICE Special Agents in ICE's field offices.  What is meant by a "pending" or "prospective" law enforcement proceeding under Exemption 7(A) has a specific meaning under the case law, and it became clear that this specific legal definition was not fully understood by all of the individual ICE agents contacted with respect to this FOIA request.  See

---

[2]Due to the formation of the Department of Homeland Security as authorized by the Homeland Security Act, P.L. 107-296, 116 Stat. 2310 (2002), and as detailed in the Reorganization Plan Modification for the Department of Homeland Security promulgated pursuant to Sec. 1502 of the Act, CBP no longer conducts investigations; this function was assigned to ICE, a distinct agency created under the Homeland Security Act.  Although CBP works closely with ICE, ICE has the sole responsibility for all customs-related investigations.

id. Defendant acknowledged that a number of the withholdings set forth in the February 2006 Fields Declaration could not be sustained under the FOIA, and that an additional release of responsive names and addresses was therefore appropriate.  See id.

During the time that defendant was looking into the issues raised by SPRC, this Court issued an Order directing the parties to address the impact of the D.C. Circuit's decision in Lepelletier v. FDIC, 164 F.3d 37 (D.C. Cir. 1999) on SPRC's request for names and addresses.  Given the order for briefing on an additional legal issue, in combination with CBP's need to file a revised declaration with respect to its Exemption 7(A) withholding determinations, defendant determined that the most efficient course would be to withdraw the previously filed Motion for Summary Judgment and file a renewed Motion.  The Court granted defendant's Motion to Withdraw on August 15, 2006.  See Minute Order of August 15, 2006.

## II.  **STANDARD OF REVIEW**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides that the "judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 248.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987), (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (emphasis in original)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations,

-5-

but must instead proffer specific facts showing that a genuine issue exists for trial. <u>Matsushita Elec.</u> <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief. In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Supreme Court held that, in responding to a motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. <u>Id.</u> at 322-23.

In an opinion issued the same day as <u>Celotex</u>, the Supreme Court attempted to explain under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249-50, 252. <u>See</u> <u>Johnson v. Digital Equipment Corp.</u>, 836 F. Supp. 14, 15 (D.D.C. 1993). In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327. FOIA cases are typically resolved on summary judgment. <u>See</u> <u>Cooper Cameron Corp. v. Department of Labor</u>, 280 F.3d 539, 543 (5th Cir. 2002). To discharge its burden, the agency must prove that each document that falls within the class of requested records has either been produced, is unidentifiable, or is exempt. <u>See</u> <u>National Cable Television Ass'n, Inc. v. Federal Communications Commission</u>, 479 F.2d 183, 186 (D.C. Cir. 1973). In a FOIA case, the Court typically adjudicates summary judgment solely on the

basis of information provided in affidavits or declarations when the affidavits or declarations describe, "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). See also Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all nondisclosures. See 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

### III. ARGUMENT

#### A.    Exemptions 6 and 7(C)

1.  Governing Law

Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that "applies to a particular individual" qualifies for consideration under this exemption. Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982); see also New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc); Chang v. Dep't of Navy, 314 F. Supp.2d 35, 42-43 (D.D.C. 2004). Thus, the Exemption 6 threshold is met if the information requested applies to any particular, identifiable individual.

Once it has been established that the information qualifies under Exemption 6, then the inquiry then turns to whether disclosure would result in a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This requires a balancing of the public's interest in disclosure against the individual's right to privacy. See Department of Justice v. Reporters Committee for

Freedom of the Press, 489 U.S. 749 (1989); Department of Air Force v. Rose, 425 U.S. 352, 372 (1976). Of course, if no valid public interest exists, the information necessarily should be protected; as the D.C. Circuit has observed, "something, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) ("NARFE").

Exemption 7(C) is the law enforcement counterpart to Exemption 6. It provides protection for law enforcement information, the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The burden of sustaining a claim of exemption under 7(C) is not as great as Exemption 6, as the text of the law enforcement exemption omits the word "clearly," recognizing the considerable interest in an individual's not being associated with alleged criminal activity. See Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990). CBP is a law enforcement agency, with full authority to assess penalties and liquidated damages, seize merchandise for violation of CBP laws or those of other federal agencies that are enforced by CBP, remit forfeitures, mitigate penalties, decide petitions, and cancel claims. See, e.g., 19 U.S.C. §§ 1589a, 1592, 1595, 1595a and 1618; see also Chovanec Dec. at ¶ 34. The term "law enforcement purposes" includes civil and criminal statutes as well as administrative determinations. See, e..g., Center for National Policy Review v. Weinberger, 502 F.2d 370, 373 (D.C.. Cir. 1974) (administrative determination has "salient characteristics of 'law enforcement' contemplated" by Exemption 7); Schiller v. INS, 205 F. Supp.2d at 648, 659 (W.D. Tx. 2002) (citing Rugerio v. Department of Justice, 257 F.3d 534, 550 (6th Cir. 2001)). Since SPRC seeks the names and addresses of those who have had their goods seized by CBP, and the names and addresses are in CBP's files because of those seizures, the "law enforcement" aspect of Exemption 7 is readily

-8-

satisfied here.

By their respective statutory texts, Exemptions 6 and 7(C) both concern "personal privacy." As such, neither corporations nor business associations possess protectable privacy interests. See Sims v. CIA, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980); Nat'l Parks & Conservation Ass'n v. Kleppe, 547 F.2d 673, 685 n. 44 (D.C. Cir. 1976); Multi Ag Media LLC v. Department of Agriculture, 2006 WL 2320941 at ** 2 (D.D.C. Aug 9, 2006).

2.    Persons Who Have Their Property Seized by CBP Have a Substantial Privacy
Interest in Not Having Their Identities Released to Third Parties

In this matter, SPRC seeks the names of addresses of persons who have had their goods, merchandise, currency or other property seized by CBP for violations of customs or other laws. The law has long recognized that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." NARFE, 879 F.2d at 875. As such, courts have routinely found that individuals have a recognizable privacy interest in their names and addresses. See United States Department of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 502 (1994) (shielding the names and home addresses of agency employees from being released to unions that requested the lists under FOIA); Painting and Drywall Preservation Fund v. Department of Housing and Urban Development, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (names and addresses of employees of public contractors); Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (names and addresses of employees eligible to vote); NARFE, 879 F.2d at 879 (list of names and addresses of retired or disabled federal employees); Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 135 (3d Cir.1974) (names and addresses of federally registered wine producers are "similar files").

SPRC seeks the names and addresses of persons who have had property seized by CBP. Based on the authorities listed in the prior paragraph, a finding that these persons have a privacy interest recognizable under Exemptions 6 and 7(C) needs no extended analysis. These individuals have a privacy interest in not having their names and addresses publicly associated with a seizure by CBP and a forfeiture proceeding. See Chovanec Dec. at ¶ 28. The damage to reputation that follows from being associated with such proceedings is well-established in the law. See Davis v. U.S. Department of Justice, 968 F.2d 1276, 1281 (D.C. Cir.1992); Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904-05 (D.C. Cir.1996); Brunetti v. FBI, 357 F. Supp.2d 97, 105 (D.D.C. 2004).

In this case, because CBP initially commenced a "reverse FOIA" process, the agency has far more information at its disposal illustrating the substantial personal privacy concerns that would follow from release than in the typical case. See Chovanec Dec. at ¶¶ 22-23. For example, one individual (through counsel) objected on the basis that the release of information would invade his or her privacy and the right to privacy of his or her family. See id. at ¶ 23(d). Another expressed concerns for his personal safety and the safety of his family because he had provided information to the United States Attorney's Office in Los Angeles. See id. at ¶ 23(f); see also id. at ¶ 23(g) (similarly expressing concerns about possible endangerment to the individual or the individual's family); see also id. at ¶ 23(a), (b), (c), (e).

Moreover, the fact that these individuals are likely (if not certain) to be the target of a solicitation for professional services has been recognized to intrude upon their privacy interests. In Department of Defense v. FLRA, a union sought the names and addresses of agency employees who were in bargaining units. See FLRA, 510 U.S. at 490. The Supreme Court found that "it is

-10-

clear that [these employees] have some nontrivial privacy interest in nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure." See also Prof'l Programs Group v. Department of Commerce, 29 F.3d 1349, 1353-55 (9th Cir. 1994). In the case at bar, the individuals have a similar "nontrivial privacy interest in nondisclosure" in avoiding an influx of solicitation letters from SPRC, or any competitors of SPRC that might seek to submit the same or similar FOIA requests for precisely the same purposes.

3.     There is No Public Interest to Be Served By the Release of The Names and Addresses

Based on communications received from plaintiff's counsel, CBP assumes that plaintiff seeks the names and addresses of individuals who have had their goods seized from CBP so that SPRC can contact them and offer SPRC's services in assisting them with recovering the seized goods. See Chovanec Dec. at ¶ 31 and Ex. 14 thereto. In correspondence with CBP, SPRC claimed that its request for information was in furtherance of a public interest, claiming that, "[b]y us being able to contact the person from whom the currency was seized, we will be able to shed light on CBP's action in forfeiting all the currency." See Complaint, Ex. G.  There are two problems with this overly facile argument.  First, the FOIA public interest in disclosure refers to "open[ing] agency action to the light of public scrutiny," Oguaju v. United States, 288 F.3d 448, 450 (D.C. Cir. 2002), and "it does not include helping an individual obtain information for his personal use." Id. (quoting Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir. 2000)), vacated by Oguaju v. United States Marshals Service, 541 U.S. 970 (2004), judgment reinstated by Oguaju v. United States, 378 F.3d 1115 (D.C. Cir. 2004).  In this regard, courts have consistently refused to recognize any public interest in the disclosure of information solely to assist a prisoner in challenging his conviction. See, e.g., Neely v. Federal Bureau of Investigation, 208 F.3d 461, 464 (4th Cir. 2000); Hale v. United States Dep't of

-11-

Justice, 973 F.2d 894, 901 (10th Cir.1992), vacated on other grounds, 509 U.S. 918 (1993); Landano v. Department of Justice, 956 F.2d 422, 430 (3d Cir. 1991), rev'd on other grounds, 508 U.S. 165 (1993).

The law has consistently declined to find a public interest in the disclosure of names and addresses where information was being sought for the purpose of soliciting business or for other commercial purposes. In fact, at least one federal Court of Appeals has considered the *exact situation presented in this lawsuit* and sustained the agency's invocation of Exemption 6 and 7(C). In O'Kane v. United States Customs Service, 169 F.3d 1308 (11th Cir. 1999), a FOIA requestor sought the names and addresses of individuals whose possessions the U.S. Customs Service had seized, so that he could solicit those individuals for his law practice. See id. at 1310, note. Similar to the instant case, the plaintiff claimed that "a public interest exists in promoting legal representation for violators of customs laws." Id. at 1310. Comparing this with the "important privacy interest in their home addresses," the Eleventh Circuit affirmed the invocation of Exemption 7(C). See id.

Reaching a similar result is Professional Programs Group v. Department of Commerce, 29 F.3d 1349 (9th Cir. 1994), in which the requestor sought a list of patent bar applicants, so that the requestor could offer its test-preparation services to those individuals. The court concluded that "the plaintiff's interest in disclosure is purely commercial, to obtain a list of potential customers. We have held that the FOIA 'was not intended to require release of otherwise private information to one who intends to use it solely as personal gain.'" Id. at 1354 (citing Minnis v. United States Dept. of Agriculture, 737 F.2d 784, 787 (9th Cir. 1984)). The test-prep service argued that providing the requested information would also serve a public interest, in that disclosure would allow the company

-12-

to help more patent bar applicants to pass the test and that this in turn would increase the number of patent lawyers available to assist American inventors.  See id.  The Court rejected this argument, finding that this was not the public interest that FOIA was designed to serve.  See id. (citing Reporters Committee, 489 U.S. at 775).  Other name and address solicitation cases are in accord. See Schoettle v. Kemp, 733  F. Supp. 1395, 1397-98 (D. Haw. 1990) (request for names of persons owed distributive shares and mortgage premiums by person who wanted to contact and assist those persons denied under Exemption 6); Lepelletier v. FDIC, 164 F.3d 37, 47 (D.C. Cir. 1999) (finding "no merit" to the argument that releasing the names associated with certain accounts would shed light on FDIC operations).

The Supreme Court has held that the only relevant "public interest in disclosure" is "the extent to which disclosure would ... 'contribut[e] significantly to public understanding of the operations or activities of the government.'" United States Dept. of Defense v. FLRA, 510 U.S. 487, 495 (1994) (quoting Reporters Committee, 489 U.S. at 775).  Here, the public interest in the information is either non-existent or negligible, and those interests are easily outweighed by the substantial invasion of personal privacy that would result from the public release of the names and addresses of persons who have been subject to CBP seizures.

4.    The Court of Appeals' Holding in Lepelletier v. FDIC Does Not Call for Release of the Names and Addresses of Individuals Sought Through SPRC's FOIA Request

.

By Order of August 2, 2006, this Court ordered additional briefing on the impact of Lepelletier v. Federal Deposit Insurance Company, 164 F.3d 37 (D.C. Cir. 1999) on CBP's withholding argument.  See USDC PACER Dkt #29.  For the reasons set forth below, defendant submits that a consideration of Lepelletier does not call for release of the names and addresses of

-13-

individuals who have had their property seized by CBP and are the subject of forfeiture notices published in the newspapers.

          a. *The* <u>Lepelletier</u> *Case*

In <u>Lepelletier</u>, an independent money finder brought suit under FOIA and other theories, seeking release of the names of depositors with unclaimed funds at banks for which the Federal Deposit Insurance Corporation ("FDIC") was the receiver. <u>See</u> <u>id</u>. 40-42. Consistent with CBP's arguments in this case, the Court of Appeals concluded that "there is no clearly discernable public interest in releasing the names associated with the unclaimed deposits, because such a release would not inform the public of what the government is 'up to.'" <u>Id</u>. (citing and quoting <u>NARFE</u>, 879 F.2d at 878-79). Turning to the corresponding privacy interest, the Court found that there was at least some privacy interest in the non-disclosure of names and addresses in connection with financial information, particularly where the information might ultimately be used for solicitation purposes. <u>Id</u>. at 47 (citing <u>Painting and Drywall</u>, 936 F.2d at 1302-03; <u>NARFE</u>, 879 F.2d at 875-76)).

In the normal course, this would constitute the end of the analysis, because the existence of even an "albeit slight" privacy interest is sufficient when there is no discernable public interest. <u>Id</u>. at 47 (citing <u>NARFE</u>, 879 F.2d at 879). The <u>Lepelletier</u> court, however, looked to one distinguishing feature of the information sought through the FOIA request that called for additional analysis. In the prior cases, the third parties had no clear direct personal interest that might be served through the release of their names and addresses. With respect to Mr. Lepelletier's request, however, if names and addresses were released and if he was ultimately successful in recovering the unclaimed funds, the third parties could secure a direct benefit from the FOIA release of their names and addresses. <u>Lepelletier</u>, 164 F.3d at 47-48. The Court thus held that "the FOIA analysis under Exemption 6 must

-14-

include consideration of any interest the individual might have in the release of the information, particularly when the individuals who are 'protected' under this exemption are likely unaware of the information that could benefit them." Id.   The case was thus remanded to determine at what dollar amount an individual's privacy interest should be deemed to outweigh his or her interest in discovering his or her money. See id. at 48.  In addition, the Court also determined that the names associated with the deposits should not be matched to the amount owed, on the basis that an unmatched list constitutes a lesser privacy invasion than a matched list. See id.

> b. *Application of Lepelletier to SPRC's Request*

The first principal distinction between Lepelletier and the issues before this Court is that Lepelletier is exclusively an Exemption 6 case.  Here, CBP is asserting that withholding the names and addresses is appropriate not only under Exemption 6, but also under Exemption 7(C).  See Chovanec Dec. at ¶ 28 (explaining that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation). The burden for sustaining an Exemption 7(C) assertion is less than that for Exemption 6, as reflected by a comparison between the statutory text of the two exemptions.  Compare 5 U.S.C. § 552(b)(6) (exempting from release information that "would constitute a clearly unwarranted invasion of personal privacy") with § 552(b)(7)(C) ("could reasonably be expected to constitute an unwarranted invasion of personal privacy.").  "Unlike information withheld under Exemption 6, the 'categorical withholding' of information identifying third parties in law enforcement records will ordinarily be appropriate under Exemption 7(C)."  Miller v. Department of Navy, 383 F. Supp.2d 5, 14 n.8 (D.D.C. 2005) (citing SafeCard Serv. v. Securities and Exchange Commission, 926 F.2d 1197, 1206 (D.C. Cir. 1991); see also Nation Magazine v. United States Customs Service, 71 F.3d 885, 896

(D.C. Cir.1995); Coleman v. Federal Bureau of Investigation, 13 F. Supp.2d 75, 80 (D.D.C. 1998).

Second, it is not only the fact that one's name would be associated with a law enforcement file generally (which is by itself a substantial invasion of personal privacy), but also the specific nature of that association that would follow from release in this particular case. What SPRC is seeking here is a list of names of persons who have had their personal property seized by a law enforcement agency. Being subject to a seizure by CBP is most assuredly something that, if made known to the public, "might damage reputation or lead to personal embarrassment and discomfort." Lesar v. United States Dep't of Justice, 636 F.2d 472, 488 (D.C. Cir. 1980); see also Neely v. Federal Bureau of Investigation, 208 F.3d 461, 464 (4th Cir. 2000) (withholding names and identifying information of third-party suspects), O'Kane, 169 F.3d at 1309 (protecting home addresses of individuals whose possessions were seized by the government); Fund for Constitutional Government v. National Archives & Records Service, 656 F.2d 856, 861-66 (D.C. Cir. 1981) (withholding names of persons investigated but not charged); Abraham & Rose, P.L.C. v. United States, 36 F. Supp.2d 955, 957 (E.D. Mich. 1998) (filing of tax lien against individual could cause "comment, speculation and stigma.").

This stands in sharp contrast with the facts in Lepelletier, where the requester sought the names and addresses of individuals with unclaimed bank deposits. Having money on deposit with a bank or other financial institution is not some something that inherently confers a stigma on the individual deposit holder, nor is it likely to lead to "harassment, reprisal or embarrassment." Maynard v. CIA, 986 F.2d 547, 566 (1st Cir. 1993). Indeed, the Lepelletier decision specifically remarked upon the fact that the privacy interest at issue was modest at best. See Lepelletier, 164 F.3d at 47 (referencing the District Court's determination that the interest was "a slight one.")

Suffice it to say that making public a list a bank depositors simply cannot be compared to making public a list of individuals who have had property seized by law enforcement officials for alleged violations of United States law.

Third, there was "one small caveat" to the Court of Appeal's <u>Lepelletier</u> decision to permit release of names and addresses that is of considerable import here.  <u>See</u> <u>Lepelletier</u>, 164 F.3d at 49. <u>Lepelletier</u> involved a highly novel factual situation, where FDIC was originally required to send only one notice about unclaimed funds to depositors, but, following a 1993 statutory revision, two notices were required to be sent.  <u>See</u> <u>Lepelletier</u>, 164 F.3d at 40.  For receiverships that were in progress at the time of the amendment, however, the notification procedures remained the same.  As a result, these pre-amendment receiverships would not be notified by FDIC of certain changes in the law.  <u>See</u> <u>id</u>.  This raised a question of whether the single notice satisfied due process requirements. <u>Id</u>. at 45.  In reviewing whether release of names and address under FOIA was appropriate, the Court held that, "if the District Court requires additional notice procedures, the balancing under FOIA is likely to favor nondisclosure for at least some depositors, because they will have no interest in receiving the same information repeatedly."  <u>Id</u>. at 49.  In other words, <u>because</u> there was some question as to the adequacy of the notice being provided by FDIC which was great enough to necessitate a statutory revision, Mr. Lepelletier's communications to depositors were potentially performing a gap-filling role.  <u>See</u> <u>id</u>. at 48 (explaining that the third party's interest was in "discovering his or her money.")

Here, in contrast, persons subject to forfeiture proceedings are made aware both of the fact of the proceedings and the procedures governing those proceedings by CBP.  <u>See</u> <u>infra</u> Part III.D By statute, "[w]ritten notice of seizure together with information on the applicable procedures shall

-17-

be sent to each party who appears to have an interest in the seized article."  19 U.S.C. § 1607; but

see 19 C.F.R. 162.45a (exempting seizures of Schedule I and II controlled substances that are subject

to summary forfeiture from the notice requirements set forth in 19 C.F.R. § 162.45).  In addition, a

notice of seizure is published for at least three successive weeks in such manner as the Secretary of

the Department of Homeland Security may direct.  See id.  Absent here is the type of situation

presented in Lepelletier; i.e., that through the manner in which a statutory amendment operated,

persons with unclaimed funds that predated a statutory amendment would not be notified of certain

changes in the law.

        For all of these reasons, CBP submits that the holding in Lepelletier does not require release

of the names and addresses of individuals who have had their property seized by CBP and whose

property is subject to forfeiture proceedings.[3]

**B.      Exemption 7(A)**

        1.      Governing Law

        Exemption 7(A) of the FOIA protects from mandatory disclosure "records or information

---

[3]The Lepelletier court did limit any release in two ways.  First, the Court declined to
require that the names of the depositors be matched up with the mount owed; any list released
was to be a list of the names of those with unclaimed deposits.  See Lepelletier, 164 F.3d at 48
(this "unmatched" list constitutes a lesser privacy invasion than a matched one).

        Second, the Court also found that the degree of privacy interest turned on the size of the
deposits; that "for individuals with sizeable accounts, the interest in disclosure may be
substantial."  Id.  The matter was remanded to the District Court to determine the amount below
which an individual's privacy interest should be deemed to outweigh his or her interest in
discovering his or her money.  See id.  Here, because of the combination of a) defendant's
invocation of Exemption 7(C) in addition to exemption 6; b) the far greater privacy interest in not
having one's name associated with a seizure of property by a law enforcement agency; c) the
absence of any deficiency in CBP's notices as was the case in Lepelletier, CBP submits that
withholding is appropriate regardless of the value of the goods seized.

compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The agency seeking to justify the withholding must demonstrate that: (1) a law enforcement proceeding is pending or prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding. See Butler v. Department of the Air Force, 888 F. Supp. 174, 183 (D.D.C. 1995), aff'd, 116 F.3d 941 (D.C. Cir. 1997); see also NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 235 (1978); Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 870 (D.C. Cir. 1980); Stern v. FBI, 737 F.2d 84, 88 (D.C. Cir. 1984).

2.    The Ongoing Law Enforcement Proceedings and the Expected Interference With Enforcement Proceedings

In certain instances, the subjects associated with the seizure numbers are the subjects of ICE investigations that may or may not have been associated with those particular seizures. See October 11, 2006 Declaration of Gloria Marshall. In defendant's previously filed Motion for Summary Judgment, through the Declaration of Marshall Fields, defendant identified those seizure numbers for which the subjects associated with proceedings are being investigated by ICE for various violations of the law that may or may not have been associated with those particular seizures. See Defendant's 2005 Motion for Summary Judgment. As explained above and in defendant's Motion to Withdraw Summary Judgment Motion, the agency's first effort to ascertain this information from the ICE agents in the field resulted in an over broad list of seizure numbers associated with entities subject to ongoing law enforcement proceedings. Consequently, CBP, through ICE, has re-canvassed the field offices, and there are now nine (9) entities for which CBP is withholding the

-19-

names and addresses under 7(A).  <u>See</u> Marshall Dec. at ¶ 6.

Releasing or publishing the name and address of an individual or company may lead to third party recipients of that information, including SPRC, reaching out to the named party.  <u>See</u> Marshall Dec. at ¶ 8.  (Indeed, making contact with the entity subject to the seizure is the stated purpose for SPRC's request in this matter.  <u>See</u> Chovanec Dec. at ¶ 31).  That named party may, in turn, become suspicious of other enforcement proceedings against it even if the seizure that has been published in the newspaper is not currently under investigation.  <u>See</u> Marshall Dec. at ¶ 7.  As a result, there is a reasonable expectation that the company or individual will alter its practices, *i.e.*, attempt to divert merchandise through different ports of entry, change parties with whom it conducts business such as the foreign shipper or supplier, or change a relationship with any confidential informant.  <u>See</u> <u>id</u>.  Thus, the release of the names and addresses could be expected to interfere with these ongoing proceedings.  <u>Id</u>; <u>see. e.g.</u>, <u>Solar Sources</u>, 142 F.3d at 1039 (affirming 7(A) claim where disclosure "could result in destruction of evidence"); <u>Alyeska Pipeline</u>, 856 F.2d at 312 (ruling that disclosure could allow for destruction or alteration of evidence, fabrication of alibis, and identification of witnesses); <u>Holbrook</u>, 914 F. Supp. at 316 (releasing information could allow targets to construct defenses).

For these reasons, CBP's withholding of the names and addresses of commercial entities that are the subject of an ongoing law enforcement investigation under Exemption 7(A) should be affirmed.

## C.    Segregability

FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information

unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. §

552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir.

1977). This Circuit has held that a reviewing court has an obligation to consider segregability sua

sponte. See Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022

(D.C. Cir. 1999).

     In this case, however, the only information sought by SPRC are names and addresses. Thus,

there is no segregable material that can be separated from the exempt information and provided to

plaintiff.

## III.   CBP IS NOT STATUTORILY REQUIRED TO PUBLISH THE REQUESTED NAMES AND ADDRESSES

     Though plaintiff's Complaint is styled exclusively as a Freedom of Information Act case, in

the first round of briefing in this case, SPRC asserted that CBP should be including the names and

addresses of the affected individuals and companies in the published newspaper notices. See

Plaintiff's Opposition to Defendant's  Motion to Dismiss at 12-15, USDC PACER # 18. SPRC

would prefer that CBP publish the names and addresses in the newspaper, which would obviate the

need to file FOIA requests and simplify SPRC's efforts to market itself and solicit new clients. See

id.

     As a threshold matter, plaintiff never explains the basis on which the Court has jurisdiction

to adjudicate such a claim. SPRC did not raise a due process claim in either its Complaint or the

Amended Complaint. The only statutory cause of action cited in the Amended Complaint is the

FOIA, and plaintiff has not even endeavored to argue that the lack of publication of the names and

addresses contravenes any provision of the FOIA. See Amended Complaint. The Amended

Complaint does cite the Declaratory Judgment Act, 28 U.S.C. § 2201, but the Act does not, by itself, create a basis for federal jurisdiction.[4] "[T]he Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction. . . ." GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 619 (7th Cir. 1995); see also Borg-Warner Protective Services Corp. v. United States, 81 F. Supp. 2d 20, 28-29 (D.D.C. 2000); aff'd 245 F.3d 831 (D.C. Cir. 2001). A request for declaratory relief will not confer jurisdiction on the federal courts if jurisdiction would not otherwise exist. See Skelly Oil Co. v. Phillips Petrol. Co., 339 U.S. 667, 671 (1950); Nashoba Communications Ltd. Partnership v. Town of Danvers, 893 F.2d 435, 437 (1st Cir. 1990).

In any event, CBP's practice of not including names and addresses in its published forfeiture notices is entirely consistent with the relevant statutory framework.  With respect to public notice of forfeiture proceedings, Section 1607 of Title 19 provides that:

> the appropriate customs officer shall cause a notice of seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of Treasury may direct.  Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

19 U.S.C. § 1607 (emphasis added).  The statute thus makes it clear that the manner of publication

---

[4]The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

of the notice is a matter committed to the discretion of the Secretary.[5]  The implementing regulation, 19 C.F.R. § 162.45, does not require names and addresses to be included in the notice.  See 19 C.F.R. § 162.45.

Plaintiff claims that 19 U.S.C. §1607 must be read in pari materia with a 46 U.S.C. app. § 327, which provides:

> In every case where a forfeiture of any vessel or merchandise shall accrue, it shall be the duty of the collector or other proper officer, who shall give notice of the seizure of such vessel or of such merchandise, to insert in the same advertisement the name and the place of residence of the person to whom any such vessel and merchandise belonged or were consigned, at the time of such seizure, if the same be known to him.

This provision of the appendix to Title 46 of the United States Code ("Shipping") has already been addressed and encompassed in CBP's regulations.  19 C.F.R. § 162.45(a)(4) requires CBP to include "the name and place of residence of the person to whom any vessel or merchandise seized for forfeiture under the navigation laws belongs or is consigned, if that information is known to the Fines, Penalties, and Forfeitures Officer."  In other words, where the seizure is effected under the authority of Title 46 of the U.S. Code, CBP does, in fact, include the name and place of residence of the owner/consignee, if known.  Where Title 46 does not apply, there is neither a statutory nor a regulatory requirement that the name and address of the person from whom the property was seized be included in the notice.  For this reason, even if SPRC had the ability to challenge the manner in which CBP publishes notices of forfeiture proceedings, CBP would prevail on such a challenge.

## IV.  CONCLUSION

WHEREFORE, defendant requests that its Renewed Motion for Summary Judgment be

---

[5]This discretion now lies with the Secretary of the Department of Homeland Security, pursuant to 6 U.S.C. § 552(d).

granted, that judgment be entered for defendant, and that this matter be dismissed with prejudice.

A proposed order consistent with the foregoing is included.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated: October 11, 2006

-24-