UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SEIZED PROPERTY RECOVERY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-1570(AK) |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, | ) ) ) | |
| Defendant. | ) ) | |

PLAINTIFF'S RENEWED POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION OPPOSING DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S
RENEWED CROSS MOTION FOR SUMMARY JUDGMENT

## I. FACTUAL BACKGROUND

**A.    Release Of Names And Addresses**

When the defendant, U. S. Customs and Border Protection ["Customs"], intends to

summarily forfeit seized property [other than controlled substances], it publishes such intent

in local newspapers as prescribed in 19 C.F.R. §162.45. [1]  Customs never publishes the

names and addresses from whom the property was seized unless required to do so under

provisions of 19 C.F.R. §162.45(a).

Plaintiff, Seized Property Recovery Corporation ["SPRC"] is incorporated in the State

---

[1] As examples, Customs in Miami publishes in the Daily Business Review; in Los Angeles The Daily Journal; in New York/Newark in the New York Post; in San Francisco the CAL LAW; and, in San Juan in El Nuevo Dia.  Herrick Dec. paragraphs 11 & 12.

1

of Florida and is located in Miami-Dade County, Florida.

SPRC has submitted and continues to submit Freedom of Information Act ["FOIA"] requests to Customs as various ports in the United States for names and addresses of persons from whom Customs has seized property as set forth in the notices published in local newspapers. Some of these requests and appeals are set forth in Counts I-XXIII of the Amended Complaint.

It is the intent of SPRC to notify persons from whom Customs has seized property that they should take immediate action by filing an administrative petition, cost bond and/or claim to avoid the forfeiture of their property. These persons could retain the services of SPRC for assistance; do nothing; hire their own attorney; and/or, proceed on their own.

One example of how this notification by SPRC would be helpful may be found in Fernando Mesa Valderrama v. United States of America, 417 F. 3d 1189 (11th Cir. 2005). It appears Valderrama was not an avid reader of the Miami Daily Business Review. Starting on August 14, 2003 Customs began publication of its intent to forfeit Valderrama's $100,000 check. Valderrama, supra, p. 1193. The check was administratively forfeited on September 3, 2003. This case points out the need to publish the names and addresses in the newspapers which will be discussed in detail infra.[2] This case points to a mixed legal and factual dilemma. Had SPRC filed a FOIA request on August 3, 2003 for Valderrama's name and

---

[2] Had Valderrama's name and address been published there would have been no need to proceed through the time consuming FOIA request process.

address, according to Customs' new directive (Renewed Herrick Declaration ¶ 9 [Herrick Dec.]), by the time the name and address was released, the $100,000 check would have been forfeited. [3]

Defendant's Factual Background at page 2 is correct in stating "...the responses to SPRC's requests from the various ports were not uniform." There was a time when Customs was releasing requested names and addresses. Herrick Declaration ¶¶ 4-7. There was a time when Customs was publishing names and addresses. Herrick Dec. ¶ 8. The defendant's Factual Background refers to a reverse FOIA process and cites to Richard Chovanec Declaration ¶ 22 citing to Executive Order 12,600 and 19 C.F.R. § 103.35. The E. O. and regulation refer to "submitters who are defined as corporations, state governments and foreign governments." Individuals from whom Customs seized currency are not "submitters," and, therefore, neither the E. O. or the regulation are applicable. Some of the merchandise seized by Customs is from individuals and, therefore, neither the E. O. nor the regulations are applicable. Customs must explain in detail to the Court why these individuals are subject to the Customs "reverse FOIA" process.

When merchandise is seized from corporations, neither the E. O. nor the regulation shields the release of names and addresses since there is obviously no privacy issue involved. The E. O. specifically states at Section 8(b) "[t]he information has been published or has

---

[3] It should be noted that Customs has not promulgated regulations for expediting FOIA requests as required by 5 U.S.C. section 552(a)(6)(E).

been officially made available to the public." In the case of merchandise imported into the United States, pursuant to 19 C.F.R. §103.31(e)(3) the names and addresses of the shipper, consignee and notify party are officially made available to the public.

When Customs publishes a notice of forfeiture for 3 consecutive weeks there is no longer an ongoing law enforcement proceeding. Herrick Dec. ¶ 13.

**B.   Publishing Names And Addresses**

In its amended complaint, SPRC seeks a declaratory judgment to require Customs to publish names and addresses in its notices of seizure. There was a time in April, 2005 when Customs began publishing names and addresses with no adverse results. Herrick Dec. ¶ 4. Other Federal, state and local law enforcement agencies publish names and addresses in their notices of seizure on a regular basis. Herrick Dec. ¶ 10.

During the period when Customs was publishing names and addresses SPRC and/or undersigned counsel immediately discontinued making FOIA requests for names and addresses. Herrick Dec. ¶ 14. However, when Customs ceased publishing names and addresses either undersigned counsel and/or SPRC resumed filing FOIA requests for names and addresses. Herrick Dec. ¶ 9.

When Customs was publishing the names and addresses SPRC is aware that it saved it a considerable amount of time, energy and expense in not having to file FOIA requests and appeals to all of the ports. SPRC would further assume that during this period it saved Customs' ports and appeals office a considerable amount of time, energy and expense in not

4

having to respond to these FOIA requests and appeals. Herrick Dec. ¶ 17. Furthermore, it should be noted that Customs has produced no evidence from individuals or corporations objecting to letters they received from SPRC or any other entity that was privy to this information.

## II. **STANDARD OF REVIEW**

SPRC agrees with the standard of review set forth by the defendant and adopts it as its own.

## III. THE NAMES AND ADDRESSES OF INDIVIDUALS WHO HAVE BEEN SUBJECT TO A CUSTOMS SEIZURE ARE NOT PROPERLY EXEMPT FROM DISCLOSURE UNDER 5 U.S.C. §§552(b)(6) OR (b)(7)(C)

**A.      Individuals Who Have Had Property Seized by Customs Do Not Have a Substantial Privacy Interest In Not Having Their Names and Addresses Made Publicly Available.**

1.      The Relevant Case Law, Including Washington Post v. Department of Agriculture, Does Not Support Withholding the Names and Addresses Under The Facts and Circumstances of this case.

Since the commencement of this litigation Customs issued a "directive" to its Fines, Penalties and Forfeiture field offices that it may release business names and addresses requested under FOIA under certain conditions. This authority to release the business names and addresses follows admonition in The Washington Post Company v. United States Department of Agriculture, 943 F. Supp. 31, 35 (USDC DC 1996) at footnote 4, that "[t]he address of a business itself receives no protection at all under Exemption 6 because a

business entity has no 'personal privacy' interest. See infra note 6."

Turning to the issue of releasing the names and addresses of individuals the defendant would have us believe that "[t]he law interpreting the FOIA has long recognized the stigma that follows from having one's name associated with law enforcement." If there is a "stigma," and Customs has not provided any proof that there is any stigma in the pending requests, it was caused by Customs at the time of seizure. Perhaps a greater stigma nowadays would be that of an alleged terrorist. Nevertheless in the two concurrent cases <u>Associated Press v. United States Department of Defense</u>, 410 F. Supp. 2d 147, 150 (DC SDNY 2006) Judge Rakoff brushed aside the government's 5 U.S.C. §552(b)(6) claim and ordered the release of the names of the terrorist detainees at Guantanamo:

> "'The Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to [certain other exemptions]." <u>United States v. Ray</u>, 502 U.S. 164, 172, 112 S. Ct. 541 (1991). The government must show that disclosure 'would constitute' (as opposed to 'could reasonably be expected to constitute') a 'clearly unwarranted' (as opposed to simply 'unwarranted') invasion of personal privacy. <u>United States Dep't. of Justice v. Reporters Comm. for Freedom Of Press</u>, 489 U. S. 164, 172, 109 S. Ct. 1468 (1989)."

"Turning then to Exemption 6, the exemption, on its face, creates a presumption in favor of disclosure." <u>Associated Press</u>, 2006 U. S. Dist. LEXIS 2456 **12. [4] . The government has not provided any credible evidence that their seizures of property from

---

[4] Because the decision on the motion for reconsideration is also cited <u>Associated Press v. U. S. Department of Defense</u>, at 410 F. Supp. 2d 147 we have cited to this case with paragraph numbering rather than page numbers.

individuals has created a stigma for these individuals.  On the contrary, in measuring the balancing of interests pursuant to Exemption 6, it is necessary to open the operations of the government to determine if these individuals have been denied due process. The government has failed to provide any competent evidence that these individuals have an expectation of confidentiality and/or privacy when their property was seized.  See, e.g. *Associated Press*, **14 & 15. The government has not introduced a scintilla of evidence that these individuals would be subject to embarrassment or retaliation. See, e.g. *Associated Press* **20.  The government has produced no evidence that the addresses provided by these individuals are their home addresses and not their business addresses.  As noted in *Washington Post* at page 35, "[w]hile their business addresses might in many instances be the same as their home addresses...." The "list" of individuals being sought by SPRC is defined by the characteristic that their property has been seized by the government and is about to be forfeited absent an opportunity to pursue their due process rights.

The court in *Washington Post* concluded that there was a significant public interest in shedding light on the workings of the Department of Agriculture which outweighed any privacy interests.  A significant public interest lies in shedding light on the government's attempts to deny these individuals their due process rights to recover their seized property.

In the instant case there is a significant public interest in the manner in which Customs administers its administrative forfeiture proceedings.  The Federal government's forfeiture proceedings have been under continuing scathing attack by the courts, Congress, the media

and persons affected by the forfeitures. An excellent discussion of these abuses may be found in <u>Prosecution and Defense of Forfeiture Cases</u>, David B. Smith, Matthew Bender, (1999). Of special interest in the publication is the article at ¶ 1.02 **The Swing of the Pendulum: Reaction to Overzealous Use of the Forfeiture Weapon.** While there are a myriad number of government abuses set forth in this article there is one example of note:

> "Lest the reader suppose that these strong comments are the stuff of law reviews but no judicial opinions, let us look at what the Second Circuit has told the government. In one opinion, authored by Judge Pratt, the court stated that it 'continue[d] to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes.'" at page 1-32.6.

The issue with the attempt by Customs to forfeit property is for the owner of the property to be made aware of what his, her or its government is up to. Quite possibly, the person from whom their property has been seized have no idea that with the proper representation and advocacy they may be able to recover their property. "The fact that disclosure would permit plaintiff and his clients to contact these individuals is hardly significant. As in other investigations or litigation, the persons contacted could simply decline to talk to them." <u>Michael A. Hertzberg v. Ann M. Veneman</u>, 273 F. Supp. 2d 67, 86 (DDC 2003).

Once Customs releases the names and addresses to SPRC or any other party, if these persons are contacted by SPRC or any other party they could simply decline to talk to them.

2.    There is Some Evidence in the Record that Some  Individuals Do Not Want Their Names and Addresses Released

The Chovanec Dec at ¶ 28 states: "[i]n this case, CBP submits that individuals who

8

have been involved in seizure proceedings have a significant privacy interest in their names and addresses. For example, with respect to individuals, case law has long recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." No case law was cited. In its motion, the government cites to <u>Davis v. U. S. Department of Justice</u>, 968 F. 2d 1276 (DC Cir. 1992). In that case the court found that public interest barely existed. Furthermore, the court identified exactly what the stigma would be, e. g. a former federal cabinet member's drinking and dating while on a business trip. The government cites to <u>Computer Professionals for Social Responsibility v. U. S. Secret Service</u>, 72 F. 3d 1276 (DC Cir. 1996). In that case the court held there was a strong interest of individuals, whether they are suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity as the basis for the exemption. The Customs seizure cases at issue here do not involve criminal activity. The government cites to <u>Brunetti v. FBI</u>, 357 F. Supp. 2d 97 (DDC 2004). In that case the court found a protectable privacy interest because it was a criminal case. Customs has offered no proof that the individuals in the seizure cases referred to in the Chovanec Dec. ¶ 33 were involved in any criminal activity.

From a sampling of several letters that were returned out of at least ten times that number which were mailed by Customs, the government points to two examples, Chovanec Dec.¶ ¶ 23(f) & (g) for the broad proposition put forth by their attorneys that they would "fear for their personal safety" if their names and addresses were released. The government

goes on to state that "CBP could readily establish the privacy interest of the individuals...." This is a statement without substance as the government has provided no credible evidence of the privacy interests of any of the individuals from whom they seized property.

Of the 43 letters, Chovanec Dec. ¶ 22, sent by Customs to persons who might be targeted by SPRC, there are only 7 examples cited of persons who wanted to protect their privacy. Chovanec Dec. ¶ 23. Since the letters were being sent by Customs from whom Customs had seized their property, in all likelihood they may have been more receptive to a letter from an independent third party rather than a law enforcement agency.

According to the Chovanec Dec. ¶ 24, many of the letters could not be delivered or there was no response. Amazingly, although Customs maintains these seizures are "law enforcement proceedings" and there is a privacy interest to be protected, the agency has totally lost track of the whereabouts of the persons from whom they seized property. How can an agency have an ongoing "law enforcement proceeding" when they have lost the alleged guilty owner of the seized property?

So what is Customs up to regarding their administrative forfeitures? Pursuant to the Fifth Amendment of the U. S. Constitution, Customs cannot confiscate or forfeit property without due process. Notice required by the due process clause requires the property owner to be apprised of the forfeiture proceeding and the rights available for the return of the property. See, e. g. Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 305, 315 (1950). Mere knowledge that one's property has been seized does not equate with

10

knowledge of the forfeiture proceeding. See, <u>Gonzalez-Gonzalez v. United States</u>, 257 F. 3d 31, 38 (1st Cir. 2001).

If in the "reverse FOIA" process, letters are being returned to Customs as undeliverable, then Customs is forfeiting property without actual knowledge to the property owner of the forfeiture proceeding. If there is no response, it is difficult to know whether there has been actual knowledge. Also, as demonstrated *supra*, generally Customs publishes notices of forfeiture in obscure publications.

Here, the balancing between the privacy interest and what the government is up to weighs heavily in favor of what the government is doing when the rights of the owners of the seized property are being denied due process. SPRC strongly disagrees with the conclusions reached in the Chovanec Dec. ¶ 32 "that a protectible privacy interest exists that would be threatened by disclosure...." What Customs is claiming is that it is better to protect personal privacy by not releasing names and addresses of individuals than it is to give these individuals the opportunity to save their seized property from forfeiture. This position defies common sense. In the balance due process outweighs a possible privacy interest.

As an illustration as to why the names and addresses should be released to determine what Customs is up to  may be found by beginning with Chovanec Dec. ¶ 19. SPRC requested the names and addresses from whom Customs had seized currency in 15 separate cases. On information and belief the currency in these cases had been seized for alleged violations by individuals of 31 U.S.C. §§5316 and/or 5317. Furthermore, also on

11

information and belief, Customs was attempting to forfeit all of the currency that had been seized from these individuals without any mitigation. However, this action is directly contrary to Customs' mitigation guidelines. Herrick Dec. ¶ 16. If the names and addresses of these individuals are released, they may be contacted by an entity other than Customs and advised of their rights to obtain at least 95% recovery of their seized currency.

Contrary to the assertion made by Customs that "[i]n this case, the public interest in disclosure of names and addresses is either completely non-existent or negligible," individuals need to know why Customs is forfeiting their property, when, by their own guidelines, they are entitled to mitigation or remission.

The seizure and forfeiture abuses by Customs resulted in the passage of the Civil Asset Reform Act of 2000 ["CAFRA"]. Most of the seizure cases involving individuals concern currency. In the currency cases being published for forfeiture, Customs is seeking the forfeiture of all of the seized currency. As an example, from the numerous FOIA appeals filed by SPRC, a sampling of eighteen (18) cases shows Customs is attempting to forfeit all of the seized currency. Roy Leon's Renewed Declaration, paragraph 5 [Leon Dec.] attached as Exhibit R. Unless the currency is drug related, forfeiture of all of the seized currency is contrary to CAFRA; Customs own mitigation guidelines; and, United States v. Bajakajiian, 118 S. Ct. 2028 (1998) and its progeny.

3.    The Release Of The Names And Addresses Serves A Public Interest

The government has the burden to prove that the release of the names and addresses

requested by SPRC is "clearly unwarranted." In <u>National Archives and Records Administration v. Favish</u>, 541 U.S. 157 (2004) the court was interpreting 5 U.S.C. §552(b)(7)(C). At page 171 the court cited to the general FOIA rule as follows:

"FOIA is often explained as a means for citizens to know 'what the Government is up to.' [<u>Reporters Committee</u>] Id., 489 U.S. 749, at 773, 103 L. Ed. 2d 774, 109 S. Ct. 1468. This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy. The statement confirms that, as a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve. The information belongs to citizens to do with as they choose. Furthermore, as we have noted, the disclosure does not depend on the identity of the requester. As a general rule, if the information is subject to disclosure, it belongs to all.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

Where the privacy concerns addressed by Exemption 7(c) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

We do not in this single decision attempt to define the reasons that will suffice, or the necessary nexus between the   requested information and the asserted public interest that would be advanced by disclosure. On the other hand, there must be some stability with respect to both the specific category of personal privacy interests protected by the statute and the specific category of public interests that could outweigh the privacy claim. Otherwise, courts will be left to balance in an ad hoc manner with little or no real guidance. Id., 489 U.S. 749, at 776, 103 L. Ed. 2d 774, 109 S. Ct. 1468. In the case of photographic images and other data pertaining to an individual who died under mysterious circumstances, the justification most likely to satisfy Exemption 7(C)'s public interest requirement is that the information is necessary to show the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties."

It is the intent of SPRC, in satisfying the public interest requirement, to contact the individuals  to show them the investigative agency or other responsible officials acted

negligently or otherwise improperly in the performance of their duties by not mitigating the seizure especially of currency for alleged violations of reporting requirements.

>    4.    Parties Who Have an Interest in Forfeiture Proceedings May or
>    May Not be Provided Individual Notice of the Proceedings.

Customs is required by 19 U.S.C. §1607(a) to send written notice of the pending forfeiture proceedings to all interested parties. However, the realities, which is unbelievable for a "law enforcement" agency such as Customs, is that they cannot locate the persons from whom they seized property to provide them due process notice. For example, the Chovanec Dec. ¶ 24 states: "[t]he remaining letters sent to the parties associated with the remaining case numbers for Counts I-III were returned to sender [presumably Customs] marked 'not deliverable as addressed,' 'forwarding order expired.' 'attempted not known,' and/or 'unable to forward;' or otherwise a response has not been received by OR & R." There is no explanation what further steps Customs took to deliver written notice to these individuals. See, also, Leon Declaration, Exhibit B.

Since SPRC has started receiving requested names and addresses of businesses from Customs it has encountered the same problem of letters being undelivered. SPRC then has the ability to research the names on the internet and to use a private agency to locate the business.

>    5.    Releasing a List of Names and Addresses Does
>    Shed Light on Customs Operations

The information published by Customs in the newspaper usually identifies the

property seized; the case number; the date to respond; whether a claim and cost bond must be filed; and, the law violated. At this stage SPRC does not need any substantive information from Customs. SPRC needs to get information to these persons to explain their rights to recover their property.

As examples we would refer to the Chovanec Declaration. At paragraph 23c. the law firm was claiming its client was a "purveyor of first quality merchandise." Definitely a mitigating factor. At paragraph 23e. the attorney was claiming the seized property was "pre-marketing samples." Again a mitigating factor. At paragraph 23f. the attorney was claiming his client was cooperating with the U. S. Attorney. Again a mitigating factor. Aggressive pursuit of these mitigating factors could lead to the release of the seized merchandise if the citizenry knew what its government was up to.

## IV.  EXEMPTION 7(A)

Once Customs publishes a notice of its intent to forfeit property, there is no pending law enforcement proceeding. The Customs' <u>Seized Asset Management and Enforcement Procedures Handbook</u> states that "[t]he seizing agent is responsible for notifying FP&F immediately if any item that has been seized has been included in a criminal indictment.... If appropriate, the administrative process should be stayed pending judicial disposition." Herrick Dec. ¶ 19.  SPRC takes strong exception to Gloria Marshall's Declaration ¶ 6 that the the release of names and addresses of the 14 seizure numbers would interfere with a law enforcement proceeding. Here we have a sworn statement by a government official that the

seized merchandise will be forfeited during an ongoing law enforcement proceeding. This makes no sense.

As an example of the priorities of the government proceedings reference is made to John Doe v. The United States, 16 Cl. Ct. 412 (1989) in which undersigned counsel represented the plaintiff/informer. The proceedings in this case were stayed 2 years and 10 months pending the outcome of the underlying criminal and civil forfeiture proceedings of One Lear Jet Aircraft. United States v. One Lear Jet Aircraft, 808 F. 2d 765 (11th Cir. 1987). This example proves the government will not go forward with administrative proceedings until the underlying criminal law enforcement proceeding is completed. Again we do not believe Customs is being candid with the Court on the "law enforcement proceeding" issue.

As to the issue of the release of such information that could be expected to interfere with law enforcement proceedings the government cites to Solar Sources, Inc. v. United States, 142 F. 3d 1033 (DC Cir. 1998). However, in that case, the government failed to point out that at page 1036 the court made a finding that "[a]lthogh the Government has concluded its criminal proceedings against the four defendants named in the appellants' FOIA request, the Antitrust Division's investigation is ongoing." The government has also cited to Alyeska Pipeline Service Co. v. Environmental Protection Agency, 856 F. 2d 309, 312 (DC Cir. 1988). In that case at page 312 the court made its finding that "h]itherto we have realized that it is not enough for an agency to shore up its exemption claim merely with general and conclusory statements regarding the effect of disclosure. n30...." Footnote 30 refers to

James T. Campbell v. Department of Health and Human Services, 682 F. 2d 256 (DC Cir.

1982). In *Campbell* at page 265 the court pointed ut that in an Exemption 7(A) case "... that

the district court must conduct a more focused and particularized review of the

documentation on which the government bases its claim that the information Campbell seeks

would interfere with the investigation."

The government declarations set forth merely general and conclusory statements. It

has offered no proof that in any of the cases for which the names and addresses have been

requested that there is in fact any pending law enforcement proceeding.

## V.  CUSTOMS IS STATUTORILY REQUIRED TO
## PUBLISH THE REQUESTED NAMES AND ADDRESSES

### A.    The Declaratory Judgment Act

SPRC's Amended Complaint cites to the Declaratory Judgment Act, 28 U.S.C. §2201

for this Court's jurisdiction to require Customs to publish the names and addresses from

whom it has seized property.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides:

> "In a case of actual controversy within its jurisdiction, . . . any court of
> the United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought. Any such declaration shall
> have the force and effect of a final judgment or decree and shall be reviewable
> as such."

The government has cited to GNB Battery Technologies, Inc. v. Gould, Inc., 65 F. 3d 615

(7th Cir. 1995) for the proposition that the Declaratory Judgment Act is not an independent

source of federal subject matter jurisdiction. SPRC agrees. SPRC believes *GNB* supports

its claim for a declaratory judgment. At page 619 that court determined:

> "However, because the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, see <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671, 94 L. Ed. 1194, 70 S. Ct. 876 (1950), the district court must possess an independent basis for jurisdiction. In this case, GNB premises jurisdiction over Count One on 'federal question jurisdiction. See 28 U.S.C. § 1331. The 'presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' <u>Burda v. M. Ecker Co.</u>, 954 F.2d 434, 438 (7th Cir. 1992).
>
> Under the 'well-pleaded complaint' rule, 'federal law must create the cause of action, or some substantial, disputed question of federal law must be an element in the plaintiff's claim.' <u>Commercial Nat'l Bank v. Demos, 18 F.3d 485, 488 (7th Cir. 1994)</u>; see generally <u>Ceres Terminals, Inc. v. Industrial Comm'n,</u> 53 F.3d 183 (7th Cir. 1995). In declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant. <u>Nuclear Eng'g Co. v. Scott</u>, 660 F.2d 241, 253 (7th Cir. 1981), cert. denied, 455 U.S. 993 (1982). In this case, Count One of GNB's complaint presumes the possibility of an action by Gould under §§ 107(a) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9067(a), 9613(f)(1), a federal cause of action. Thus, GNB's complaint is a request for a declaration of nonliability under CERCLA. It therefore constitutes an adequate request for declaratory relief and supports our federal question jurisdiction."

SPRC is challenging the validity of 19 C.F.R. §162.45(a)(4) in that Customs should not limit

the publication of names and addresses to only those cases arising under Title 46 of the U.

S. Code. SPRC would argue that its Amended Complaint is well pled and raises a federal

question under 28 U.S.C. §1331. While section 1331 was not raised in the Amended

Complaint we would respectfully request the Court to conform the pleadings to the evidence

presented.

In the case of <u>Coalition to Preserve the Integrity of American Trademarks v. United States</u>, 790 F 2d 903 (DC Cir. 1986) the appellants sought injunctive and declaratory relief to prevent Customs from enforcing a portion of its regulations regarding trademarks as not being in conformance with the statute.  That court at page 918 held:

> "We turn to the remedy. The appellants have requested that the Customs Service be enjoined from enforcing the present regulations and ordered, in effect, to enforce the statute to its fullest. We think, however, that injunctive relief is inappropriate at this juncture of the controversy. The appellants have leveled a facial challenge to the validity of the regulations; the relief they seek is not an order compelling the Customs Service to exclude specific goods, but rather a broad decree that would entail continuing supervision by the courts. We must decline the invitation. Although the appellants are entitled to declaratory relief -- 'an alternative to the strong medicine of the injunction,' <u>Steffel v. Thompson</u>, 415 U.S. 452, 466, 39 L. Ed. 2d 505, 94 S. Ct. 1209 (1974) -- their request for injunctive relief should be denied.

> For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the district court with instructions to issue a declaratory judgment that the Customs regulations in question, 19 C.F.R. § 133.21© (1) - (3), are contrary to Section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526, and hence unlawful."

In the Supreme Court's review of this decision, <u>K Mart Corp. v. Cartier</u>, 486 U.S. 281, 108 S. Ct. 1811 (1988) it reversed the appeals court as to 19 C.F.R. §133.21(c)(1)-(2) and affirmed as to section 133.21(c)(3).

## B.    The Rule Of *In Pari Materia* Requires Customs To Publish The Names And Addresses From Whom Customs Has Seized Property

The statutes administered by Customs requires the names and addresses  from whom Customs has seized property to be included in the same advertisement as the notice of

19

forfeiture. The statutes at issue are as follows:

46 U.S.C. §327  Notice of seizure

> "In every case where a forfeiture of any vessel or merchandise shall accrue, it shall be the duty of the collector or other proper officer, who shall give notice of the seizure of such vessel or of such merchandise, to insert in the same advertisement the name and the place of residence of the person to whom any such vessel and merchandise belonged or were consigned, at the time of such seizure, if the same be known to him."

46 U.S.C. §328  Recovery of forfeitures and penalties

> "All penalties and forfeitures which shall be incurred by virtue of this Title my be sue for, prosecuted and recovered as penalties and forfeitures incurred by virtue of the laws relating to the collection of duties, and shall be appropriated in like manner; except when otherwise expressly prescribed."

19 U.S.C. §1600  Application of the customs laws to other seizures  by customs officers

> "The procedures set forth in sections 602-619 of this Act (19 U.S.C. 1602 through 1619) shall apply to seizures of any property effected by customs officers under any law enforced or administered by the Customs Service unless such law specifies different procedures."

19 U.S.C. §1607  Seizure; value $500,000 or less, prohibited articles, transporting conveyances, monetary instruments

> "(a) Notice of seizure.  If–
>     (1)  the value of such seized vessel, vehicle, aircraft, merchandise, or baggage does not exceed $500,000;
>     (2)  such seized merchandise is merchandise is merchandise the importation of which is prohibited;
>     (3)  such seized vessel, vehicle, or aircraft was used to import, export, transport, or store any controlled substance or listed chemical; or
>     (4)  such seized merchandise is any monetary instrument within the meaning of section 5312(a)(3) of title 31 of the United States Code;

the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article...."

It is SPRC's contention that when these sections are read together it is the intent of

Congress that the names and addresses of persons from whom Customs seized property must

be included in the advertised seizure notice.

> "Statutory provisions *in pari materia* normally are construed together to discern their meaning. Erienbaugh v. United States, 409 U.S. 239, 144, 341 L. Ed. 2d 446, 93 S. Ct. 477 (1972)(nting that the rule that statutes *in pari materia* should be construed together 'is...a logical extension of the principle that individual sections of a single statute should be construed together')...." Motion Picture Association of America, Inc. et al v. Federal Communications Commission, et al, 309 F. 3d 796, 802 (DC Cir. 2002).

The interplay between the forfeiture provisions of the Shipping Act [Title 46] and

Customs Act [Title 19] was settled in United States v. The Brazil, 134 F. 2d 929 (7th Cir.

1943). At page 930 the court stated: "[t]he incorporation by reference of another statute will

not render the incorporating act less particular or less specific, if the interpolated statute is

clear and the incorporating act is likewise clear."

Here, the interpolated statute, section 1607, is clear as to the requirement that notice

of seizure must be published for at least 3 consecutive weeks. The incorporating act, section

327, is clear that the notice of seizure must include the names and addresses of the persons

from whom the property was seized.

C.    **Federal Agency Precedent For Publishing Names And Addresses**

As set forth in the Factual Background *supra*, other federal, state and local agencies routinely publish names and/or addresses in their notices of forfeiture. Examples of these notices are set forth in the Herrick Dec. Exhibits G-L.

## VI. SUPPLEMENTAL BRIEFING

Supplemental briefing on the application of the test for nondisclosure under FOIA's Exemption 6 as refined by *Lepelletier v. FDIC,* 164 F. 3d 37, 47-49 (D.C. Cir. 1999).

### Privacy Interests

To begin, SPRC estimates that more than 75% of the names and addresses it seeks are businesses. As such these businesses have no privacy interest. As noted in Washington Post Co. v. U. S. Dept. of Agriculture, 943 F. Supp. 31, 37 n 6 (D.D.C. 1996):

> "n6 The Court notes that even if the release of the individuals' names, addresses and subsidy amounts constituted a clearly unwarranted invasion of privacy under Exemption 6, the Post still would be entitled to the names, addresses and subsidy amounts of all the business entity recipients, since corporations, businesses and partnerships have no privacy interest whatsoever under Exemption 6...National Parks and Conservation Ass'n v. Kleppe, 178 U.S. App. D.C. 376, 547 F. 2d 673, 685 n. 44 D.C. Cir. 1976)."

In *Lepelletier* at page 48 the court stated: "[a]ccordingly, we hold that the FOIA analysis under Exemption 6 must include consideration of any interest the individual might have in the release of the information, particularly when the individuals who are 'protected' under this exemption are likely unaware of the information that could benefit them." We believe this analysis needs some expansion. It is possible that the individuals are aware of the information that could benefit them. However, unlike the FDIC, the U. S. Customs and

22

Border Protection ["Customs"] is not a benign federal agency. Customs is a very aggressive law enforcement agency. The names and addresses being sought by SPRC are for those individuals from whom Customs has seized their property. Customs is on the verge of forfeiting their property when they send out and/or publish the notices. These individuals may already have been the subject of a criminal investigation. Quite possibly, unless they know there is a professional organization that can represent their interests they are likely intimidated to take on the Government.

What these individuals need to know is that there is professional and legal assistance available to help them regain their property. The only way this can occur is for contact to be made with them by a business such as SPRC.

## Minimum Dollar Amount vis-a-vis An Individual's Privacy Right

Customs already has three dollar break points under the laws they enforce. If the appraised value of the seized property is less than $2,500 then notice of the pending forfeiture is posted at the Customshouse. If the value is between $2,500 and $500,000 then notice of the impending forfeiture is mailed and/or published in the newspaper. If the value is in excess of $500,00 then the case must be automatically referred to the U. S. Attorney for judicial forfeiture proceedings.

While the appellant court remanded the case to the district court to determine the dollar amount below which an individual's privacy interest should be deemed to outweigh his or her interest, it is not known if the district court made this determination. There is no

23

mention of this determination in the district court's order of March 3, 2000. In reading Robert Lepelletier, Jr. v. FDIC, 23 Fed. Appx.4; 2001 U.S. App. LEXIS 25874 (D.C. Cir. 2001) there is no reference to this determination being made. The appeals court noted that the FDIC provided Lepelletier, Jr. with all of the requested names and addresses and there were no further documents to be released.

It therefore appears that a minimum dollar amount is a nonissue.

## Whether The Written Notice Of Seizure Is Sufficient

While the Court has referred to a "written notice of seizure",[5] SPRC's interest is in the Customs' notice of its intent to forfeit the merchandise and will respond accordingly. We will address the Mathews v. Eldridge, 424 U.S. 319 (1976) factors referred to in *Lepelletier* at page 46.

## The Private Interest That Will Be Affected By The Official Action

The merchandise which Customs intends to forfeit has been seized from the owner, possessor or a person with a similar interest. If the person does not file a claim and cost bond [6] within 20 days of the notice the merchandise will become forfeit. Generally federal courts will not accept jurisdiction in these circumstances. The private interest in the property will become forfeit.

---

[5] SPRC is not taking issue with Customs' notices of seizure in this litigation.

[6] It is important to note that the Customs seizures most often suffered by individuals is that of their currency and/or monetary instruments when they are entering or departing the United States. Pursuant to the Civil Asset Forfeiture Reform Act of 2000 a claim and cost bond does not have to be posted to stop these forfeitures.

**The Risk Of An Erroneous Deprivation Of Such Interest Through The Procedure Used**

If the person is unaware that its property interest is about to be forfeited and that if it could file a claim and cost bond to stop the forfeiture proceeding then the erroneous deprivation would be avoided. For example, Customs at the Port of JFK in its notices of intent to forfeit advises that a claim and cost bond must be posted for currency seizures is wrong. Secondly, Customs publishes its notices of intent to forfeit in obscure publications such as the Miami Daily Business Review which has limited readership.

Publication of the names and addresses in the newspapers will permit entities such as SPRC to attempt to contact these persons and advise them of their rights to avoid any erroneous deprivations.

**The Probable Value, If Any, Of Additional Or Substitute Procedural Safeguards**

The first substitute procedural safeguard is to publish the name and address of the person in the newspapers used by Customs. When this is not done, and a FOIA request must be made to obtain this information, even if Customs responded diligently to the FOIA request, which it never does with the exception of the Port of Miami, the merchandise will already have been forfeited by the time SPRC received the information.[7]

Additionally, if Customs is mailing notices of intent to forfeit to persons they are aware have an interest in the property, many times their mailing information is wrong. As

---

[7] There is a possibility Customs might use its discretion to extend the time of forfeiture if it receives timely notice of a claim.

an example, of the limited number of names and addresses provided to SPRC by Customs 38 mailings have been returned as undeliverable. See Herick Dec. ¶ 20 for copies of these returned envelopes. It is quite unbelievable that with the available resources of the Government, they cannot locate the correct address from whom they seized property.

**The Government's Interest, Including The Function Involved And The Fiscal And Administrative Burdens That The Additional Or Substitute Procedural Requirement Would Entail**

Customs should publish the names and addresses of the persons who have an interest in the seized property at the time of the publication of the notices in the newspaper. This would be no burden to Customs because the person preparing this notice has the name and address with the additional information at that time. By publishing the names and addresses, SPRC for one, would immediately discontinue making FOIA requests for the names and addresses. This would be a welcome relief for Customs, especially at the Port of Los Angeles/Long Beach, who constantly complain that the requests are too burdensome.

The Court has considered whether additional criteria should be considered in undertaking this balancing. SPRC wants to undertake the same business opportunity as Lepelletier, *viz.* to notify persons that they may be able to prevent the forfeiture of their property with professional and legal representation.

### VI. The Government Has Misled The Court And SPRC On The Release Of Names And Addresses

In Counts I through XXIII of the amended complaint SPRC makes reference to approximately 233 Customs seizure cases for which SPRC has been requesting names and

addresses. In the Chovanec Dec. ¶ 33 approximately 100 of these seizure cases have been identified involving individuals for which Customs will not release the names and addresses. In the government's Motion for Summary Judgment at page 5 and in its Motion to Withdraw Summary Judgment Motion it represented to the Court and SPRC that "[d]efendant acknowledged that a number of the withholdings set forth in the February, 2006 Fields Declaration could not be sustained under the FOIA, and that an additional release of responsive names and addresses was therefore appropriate." To date, SPRC has not received any responsive names and addresses of persons from whom Customs seized property and whose seizure cases were set forth in Counts I through XXIII of the Amended Complaint.

We hope the Court will take very seriously the government's failure to do what they represented they were going to do.

Respectfully submitted,

Peter S. Herrick, P.A.
Peter S. Herrick
Attorney for Plaintiff
3520 Crystal View Court
Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Email pherrick@bellsouth.net
D C Bar 137935