## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SEIZED PROPERTY RECOVERY CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1570 (AK)** |
| | ) | |
| **UNITED STATES CUSTOMS AND BORDER PROTECTION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

**I**.    **INTRODUCTION**

In its consolidated opposition to defendant's renewed motion for summary judgment and cross motion for summary judgment ("Pl. Opp."), plaintiff Seized Property Recovery Corporation ("SPRC") asserts that if it is provided the names and addresses of individuals subject to Customs and Border Protection ("CBP") forfeiture proceedings, it could offer "proper representation" by which those individuals "may be able to recover their property."  Pl. Opp. at 8; see also id. at 15.  SPRC claims that contacting these individuals constitutes a "public interest" sufficient to overcome any privacy interest these individuals may have in not having their names and addresses made public and associated with a CBP seizure.

The principal problem with plaintiff's contention becomes readily apparent when one considers other types of Freedom of Information Act ("FOIA") requesters who could make the same or similar claims in an effort to obtain access to names and addresses maintained in government files.

For example, would a federal agency have to release the names and addresses of agency employees who made administrative claims of discrimination to an employment lawyer, on the basis that the lawyer may solicit her legal services to the employees?  Could an accountant obtain the names and addresses of persons served with tax delinquency notices by the Internal Revenue Service?  Could a company with expertise in assisting with social security matters obtain the names and addresses of persons who submitted claims for disability benefits?

There are numerous means by which legal service providers such as SPRC may make potential clients aware of its services.  Names and address of individuals maintained in government files should not, however, be treated as direct mail solicitation lists.  The concept of the term "privacy" under the FOIA encompasses an individual's interest in "control[ing] information concerning his or her person"; that concept would have little salience if the government were required to give up individuals' names and addresses so that the requester could, in turn, solicit those individuals for business.  Department of Justice v. Reporters' Committee for Freedom of the Press, 489 U.S. 749, 771 (1989); see also id. at n.20 (FOIA not designed to "'mak[e] the government's collection of data available to anyone who has any socially useful purpose for it'").

Moreover, it is black-letter FOIA law that "[a]s a general rule, the withholding of information under FOIA cannot be predicated on the identity of the requester."  Favish v. National Archives and Records Administration, 541 U.S. 157, 170 (2004) (citing Reporters' Committee, 489 U.S. at 771).  The fact that SPRC wants to use the information to advance the pecuniary interest(s) of the third parties (while at the same time advancing its own pecuniary interest) does not change the character of the information at issue, which is where the focus correctly belongs.  The information at issue here – names and addresses of persons whose property has been seized by CBP and is subject to forfeiture

proceedings – is not in the <u>public</u> interest, nor does it say anything about what the government is "up to."

In this regard, it should be noted that those courts which have considered this issue have routinely rejected the argument that helping private individuals is the type of "public interest" contemplated by FOIA exemptions 6 and 7(C).  <u>See</u> <u>Professional Programs Group v. Department of Commerce</u>, 29 F.3d 1349, 1354 (9th Cir. 1994); <u>Minnis v. United States Dept. of Agriculture</u>, 737 F.2d 784, 787 (9th Cir.1984); <u>Schoettle v. Kemp</u>, 733  F. Supp. 1395, 1397-98 (D. Haw. 1990).  In fact, another Court of Appeals has already squarely considered whether the names and addresses of persons who have been subject to seizures by the U.S. Customs Service (CBP's predecessor) should be released under the FOIA, and *answered the question in the negative*.  <u>See</u> <u>O'Kane v. United States Customs Service</u>, 169 F.3d 1308 (11th Cir. 1999) (<u>cited in</u> Defendant's Renewed Motion for Summary Judgment ("Def. Mem.") at 12).  SPRC's failure to even acknowledge let alone address a case that is virtually indistinguishable from the instant matter is telling.

For the reasons set forth below, and for the reasons set forth in defendant's renewed Motion for Summary Judgment, CBP submits that its withholding determinations under Exemptions 6, 7(C) and 7(A) should be affirmed.  Further, CBP is not required under statute or regulation to include names and addresses in its published notices of forfeiture proceedings, with the exception of seizures conducted pursuant to navigation laws.

## II.    THE NAMES AND ADDRESSES OF INDIVIDUALS ARE PROPERLY WITHHELD FROM DISCLOSURE UNDER EXEMPTIONS 6 AND 7(C)

### A.    Individuals Who Have Had Property Seized by the Government Have a Substantial Privacy Interest in Not Having Their Names and Addresses Made Publicly Available

SPRC contends that "the government has provided no credible evidence of the privacy interests of any of the individuals from whom they seized property." Pl. Opp. at 10. This statement is patently incorrect, both in view of the decisional case law and the record evidence before the Court.

First, there is copious authority for the proposition that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." NARFE v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989). See United States Department of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 502 (1994); Painting and Drywall Preservation Fund v. Department of Housing and Urban Development, 936 F.2d 1300, 1302 (D.C. Cir. 1991); Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991); Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 135 (3d Cir.1974)); see also Department of Agriculture v. FLRA, 836 F.2d 1139, 1143 (8th Cir. 1988); Minnis v. Department of Agriculture, 737 F.2d 784, 787 (9th Cir.1984); Heights Community Congress v. Veterans Administration, 732 F.2d 526, 529 (6th Cir.1984); American Federation of Government Employees v. United States, 712 F.2d 931, 932 (4th Cir. 1983).

Second, it is an equally settled proposition of law that individuals have a strong privacy interest in not being associated with law enforcement proceedings. See Kimberlin v. Department of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998); Nation Magazine v. United States Customs Serv., 71 F.3d 885, 896 (D.C. Cir.1995); Computer Prof'ls for Social Responsibility v. United States Secret

Service, 72 F.3d 897, 904 (D.C. Cir.1996); McDonnell v. United States, 4 F.3d 1227, 1255 (3d

Cir.1993)); Dunkelberger v. United States Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir.1990).

Indeed, as the Court of Appeals for this Circuit has expressly held, "[i]t is surely beyond dispute that

'the mention of an individual's name in a law enforcement file will engender comment and

speculation and carries a stigmatizing connotation.'" Fitzgibbon v. CIA, 911 F.2d 755, 785 (quoting

Branch v. FBI, 658 F.Supp. 204, 209 (D.D.C.1987)); see also id. ("The individual's privacy interest

is quite clear."); see Kimberlin, 139 F.3d at 949 ("[i]t goes almost without saying, moreover, that

individuals other than those whose names appear in the file retain a strong privacy interest in not

being associated with an investigation involving professional misconduct.").[1]   The fact that the

forfeiture proceedings in which SPRC are interested is now administrative in nature does not change

the fact that the property at issue was initially seized by CBP as part of CBP's enforcement of the

more than 400 laws that CBP enforces at the nation's borders.

        Third, the declaration of Richard Chovanec explains that "individuals who have been

involved in seizure proceedings have a significant privacy interest in their names and addresses."

Declaration of Richard Chovanec at ¶ 28.  Defendant is unaware of any case authority (and plaintiff

has provided none) indicating that more is required for a court to conclude that a bona fide privacy

interest exists.  In this regard, defendant would note that at least with respect to addresses, this Court

recognizes a privacy interest in home addresses sufficient to warrant a specific Local Rule providing

that addresses are not to be filed on the public docket through the Court's Electronic Case Filing

---

        [1]SPRC advances the novel – and nonsensical – argument that because CBP's seizure
"caused the stigma" giving rise to the privacy interest, CBP cannot invoke FOIA exemption
claims related to protecting personal privacy.  See Pl. Opp. at 6.  Under this argument, Reporters
Committee for Freedom of Press, 489 U.S. 749 (1989) is wrongly decided, because the
government created the "rap sheets" sought in that FOIA case.

("ECF") system.  See Local Civil Rule 5.4(f); see also "Notice Regarding Privacy and Public Access to Electronic Case Files," dated September 2004 (available at **www.dcd.uscourts.gov/civil-privacy.pdf**).  Further, in this case, CBP has supplied numerous examples of correspondence from those subject to CBP seizures affirmatively indicating that they do not want their names and addresses released.  See Chovanec Dec. at ¶¶ 23a-23g.

Plaintiff cites Associated Press v. United States Department of Defense, 410 F. Supp.2d 147, 150 (S.D.N.Y. 2006), purportedly in furtherance of its claim that individuals have no privacy interest with respect to their names.[2]  However, the Associated Press decision is distinguishable in two key aspects.  First, the detainees were canvassed about whether their names should be made available to the requester, and only a small percentage of the detainees expressed an interest in having their names kept confidential.  See id. at 149-150.  Second, the court found that "none of the detainees [not even the 17 who declined to have their names released] had a reasonable expectation of privacy with respect to the identifying information they provided."  Id. at 150.  The detainees had provided the requested identifying information as part of a tribunal, where they were given no promise of confidentiality.  See id.  That is a far cry from persons who have had the property seized by CBP, who would most assuredly be surprised (and dismayed) to learn that if someone sends a letter to CBP stating "I want the names and home addresses of everyone who had their goods seized by the agency" the government would be legally required to hand out that information, and could do nothing to protect their privacy.  See, e.g., Chovanec Dec. at ¶¶ 23a-g.[3]

_____

[2]This case did not evaluate the privacy interest in addresses, as all of the third-party individuals were detainees in Guantanamo Bay, Cuba.

[3]It is important to keep in mind that a release under FOIA is a public release.  Once the information is released, it is a release to all.  If a subsequent requester sought to obtain the exact

Finally, plaintiff claims that "there was a time when Customs was releasing requested names and addresses" and "[t]here was a time when Customs was publishing names and addresses." See Herrick Dec. at ¶¶ 4-8. The citations in Mr. Herrick's declaration refer largely to prior initial responses from the various ports in response to Mr. Herrick's FOIA request, which defendant has acknowledged was not uniform at the outset. See id.; see also Renewed Motion to Dismiss at 2-3. However, even if some names and addresses were released by the ports in error, that does not impact defendant's ability to assert Exemptions 6 and 7(C) on other names and addresses now. Personal privacy cannot be waived by prior acts of the government. For example, in Sherman v. United States Dep't of the Army, 244 F.3d 357, 364 (5th Cir. 2001), the requesting party argued that the Army's prior practice of disregarding an individual's privacy right in his or her Social Security Number effectively waived the Army's ability to rely on Exemption 6. Looking to the Supreme Court's holding that "the privacy interest at stake in FOIA exemption analysis belongs to the individual, not the agency holding the information," see Reporter's Comm, 489 U.S. at 763-65, the Fifth Circuit concluded that:

> only the individual whose informational privacy interests are protected by exemption 6 can effect a waiver of those privacy interests when they are threatened by an FOIA request. For that reason, we do not accept Sherman's argument that the Army has waived its authority to implement exemption 6.

Id. Further, the Sherman opinion acknowledged that the substantial weight of the decisional law considering this same issue in the Exemption 7(C) context also found that the government cannot waive an individual's privacy interest through prior disclosures. See Sherman, 244 F.3d at 364

---

same list of names and addresses and sought to post the names and addresses on a website or blog, CBP would have to provide the list to that requester as well. See Favish, 541 U.S. at 171 ("if the information is subject to disclosure, it belongs to all.")

n.12.[4]  Other cases are in accord.  See Lakin Law Firm v. FTC, 352 F.3d 1122, 1124 (7th Cir. 2003) ("[m]oreover, the FTC cannot waive individual consumers' privacy interests – whatever it does or fails to do"); cf. August v. Federal Bureau of Investigation, 328 F.3d 697, 701 (D.C. Cir. 2003) (citing Sherman).

For these reasons, defendant has satisfied its burden to show that individuals subject to CBP seizures have a privacy interest in not having their names and addresses publicly released.

**B.     A List of Names and Addresses says Nothing About What the Government is "Up To."**

SPRC claims that "[i]n the instant case there is a significant public interest in the manner in which Customs administers its administrative forfeiture proceedings" Pl. Opp. at 7-8.  Even assuming the truth of this statement, SPRC also acknowledges that it is not seeking any "substantive information" from CBP.  See id. at 15.  A list of names and addresses says nothing about the manner in which CBP administers its administrative forfeiture proceedings.  As this Circuit has held, "[a]bsent exceptional circumstances, the balance categorically favors withholding the names and addresses of third parties as 'the type of information sought is simply not very probative of an agency's behavior or performance.'"  Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (quoting

---

[4]Citing Fiduccia v. U.S. Dept. of Justice, 185 F.3d 1035, 1047 (9th Cir. 1999) (concluding that Justice Department did not waive individual's privacy interest in investigation files recognized in exemption 7(C) by notifying public of ongoing criminal investigation involving individual); Halpern v. FBI, 181 F.3d 279, 297 (2d Cir. 1999) ("Confidentiality interests [under exemption 7(C)] cannot be waived through prior public disclosure or the passage of time."); Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (recognizing that only individual with privacy interest in information could waive that interest for purposes of section 7(C) exemption); Massey v. F.B.I., 3 F.3d 620, 624 (2nd Cir.1993) ( "[W]e are not convinced that the doctrine of waiver applies to exemption (b)(7)(C).") Kiraly v. F.B.I., 728 F.2d 273, 279 (6th Cir. 1984) (rejecting argument that by testifying in a trial related to a police investigation, an individual waived any privacy interest in FBI investigation records protected from public dissemination by exemption 7(C)).

-8-

SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir.1991)); Schrecker v. U.S. Dep't of

Justice, 349 F.3d 657, 666 (D.C. Cir. 2003); NARFE, 879 F.2d at 879 ("[t]he lesson for this case .

. . is that unless the public would learn something directly about the workings of the Government

by knowing the names and addresses of its annuitants, their disclosure is not affected with the public

interest.") (emphasis in original); Sheet Metal Workers' Int's Ass'n, Local 19 v. Department of

Veteran's Affairs, 135 F.3d 891, 903 (3d Cir. 1998) ("The release of names, addresses, and similar

'private' information reveals little, if anything, about the operations of the Department of Veterans

Affairs.") (citing Department of Defense v. Federal Labor Relations Authority, 510 U.S. 487, 494

(1994)); Painting Industry of Hawaii Market Recovery Fund v. Department of Air Force, 26 F.3d

1479 (9th Cir. 1994); Painting & Drywall, 936 F.2d at 1303; Brown v. EPA, 384 F. Supp.2d 271, 279

& 279 n.7 (D.D.C. 2005).

> The Lepelletier decision is entirely consistent with this line of authority:

> What [the requester] seeks here are the names associated with those accounts. But those names will not shed light on the FDIC's performance of its duties, because they do not speak to the issue of how much money will be recovered by the FDIC upon termination of the receiverships. Nor do the names speak to what the agency has done in preparing for the termination of these receiverships. Accordingly, there is no clearly discernible public interest in releasing the names associated with the unclaimed deposits, because such a release would not inform the public of what the FDIC is "up to."

Lepelletier v. F.D.I.C., 164 F.3d 37, 47 (D.C. Cir. 1999) (emphasis added).  The above excerpt is

squarely on point with this case: the mere release of names and addresses will not "shed light on

[CBP's] performance of its duties . . . [and] there is no clearly discernable public interest in releasing

the names associated with [seizures], because such a release would not inform the public of what the

FDIC is 'up to.'"

As there is no public interest in the release of names and addresses, the privacy/public interest balance falls entirely on the privacy side, calling for withholding of the requested materials under Exemptions 6 and 7(C).  See NARFE, 879 F.2d at 879 ("something, even a modest privacy interest, outweighs nothing every time").

### C.    Lepelletier v. FDIC Does Not Call for Release of the Names and Addresses in the Circumstances Presented Here

In its opening motion, CBP articulated several reasons why the D.C. Circuit's decision in Lepelletier v. FDIC does not call for release of the names and addresses in this case.  These reasons may be summarized as follows:

• Lepelletier was solely an Exemption 6 case; CBP here is also asserting exemption 7(C), which is both more protective of personal privacy and permits the categorical withholding of the identities of third parties mentioned in law enforcement files;

• In Lepelletier, release would only be revealing the fact that the subject individuals had bank deposits, hardly a stigmatizing activity; here, release would reveal that his or her property had been seized by the government, a matter involving a far greater privacy interest;

• Lepelletier appeared to turn on a novel factual predicate; namely, the fact that a statutory change in notification requirements created the possibility that at least some depositors might not be notified of changes in the law.  Here, in contrast, plaintiff "is not taking issue with [CBP's] notices of seizure."  Pl. Opp. at 24 n.6.

Plaintiff has not responded to any of the foregoing in any meaningful fashion.  See Pl. Opp. at 22-26 (SPRC's Lepelletier discussion).   The arguments advanced by SPRC in its discussion of Lepelletier does nothing to advance its cause for release under the FOIA.

SPRC's first argument is a curious one.  Plaintiff states, "[i]t is possible that individuals are aware of the information that could benefit them.  However, unlike the FDIC, the U.S. Customs and Border Protection is not a benign federal agency. [CBP] is a very aggressive law enforcement agency

-10-

. . . Quite possibly, unless they know there is a professional organization that can represent their interests they are likely intimidated to take on the government." Pl. Opp. at 22-23; see also id. at 23 As a threshold matter, plaintiff's intimations that CBP does not deal with persons subject to forfeiture proceedings in a fair manner, or that people are "intimidated to take on the government" are not supported by even a scintilla of competent evidence. Second, SPRC's assertion that "[w]hat these individuals need to know is that there is professional and legal assistance available to help them regain their property" lays bare that this case has nothing to do with informing the public about what the government is "up to." Pl. Opp. at 23. Rather, it is a case about SPRC's attempt to use the FOIA to inform the public what it can do for them, a purpose that is not a "public interest' under the decisional law. See supra page 3 (citing cases).

Further, plaintiff correctly notes that greater amounts of process are accorded depending on the dollar amounts at issue, as anticipated by Lepelletier. At levels below $5,000, a notice is provided to the interested parties. See 19 C.F.R. § 162.45. If the amount is above $5,000 then publication of the notice of seizure provides an additional means of notice. See 19 C.F.R. § 162.45(b). Finally, the regulations at issue only address property not exceeding $500,000 in value. See 19 C.F.R. § 162.45(a). As plaintiff explains, at that point the case must be referred to the U.S. Attorney for judicial proceedings, which has its own process and procedural rights. See Pl. Opp. at 24. Though defendant submits that the assertion of 7(C) takes this case outside of the Lepelletier holding altogether, the fact is that the regulatory scheme in place provides additional procedural due process at higher dollar levels.

For these reasons, defendant submits that its assertion of Exemptions 6 and 7(C) in withholding the names and addresses of individuals who have had their property seized by CBP and

are subject to forfeiture proceedings should be sustained.

**III.    THE AGENCY'S ASSERTION OF 7(A) FOR THE NAMES AND ADDRESSES OF CERTAIN COMMERCIAL ENTITIES SHOULD BE SUSTAINED**

CBP has acknowledged from the outset that the personal privacy interests reflected in FOIA exemptions 6 and 7(C) do not extend to commercial/business entities. See Def. Mem. at 9 (citing Sims v. CIA, 642 F.2d 562, 572 n.47 (D.C. Cir. 1980); Nat'l Parks & Conservation Ass'n v. Kleppe, 547 F.2d 673, 685 n. 44 (D.C. Cir. 1976)). As such, those names and addresses are properly releasable, unless subject to withholding under Exemption 7(A) because release would be expected to detrimentally interfere with ongoing law enforcement proceedings. See Def. Mem. at 18-20 and Revised Declaration of Gloria Marshall (attached as Reply Exhibit 1 hereto).[5]

SPRC challenges defendant's assertion of Exemption 7(A), stating "[o]nce [CBP] publishes a notice of its intent to forfeit its property, there is no pending law enforcement proceeding." Pl. Opp. at 15 (citing Herrick Dec. at ¶ 19; Doe v. United States, 16 Cl. Ct. 412 (1989)). This assertion misses the specific nature of the law enforcement proceedings at issue here. As explained in the Declaration of Gloria Marshall, "CBP withheld information relating to certain seizure numbers based on exemption 7(A) because the subjects associated with those seizure numbers are being investigated by ICE for various violations of law that may or may not be associated with those particular seizures." Declaration of Gloria Marshall at ¶ 6 (emphasis added). In other words, the entity subject to the noticed forfeiture proceedings may be the subject of a different ICE investigation(s), separate and apart from the investigation attendant to the seizure giving rise to the proceeding published in

---

[5]The Declaration of Gloria Marshall filed with defendant's Renewed Motion had some errors with respect to the seizure numbers for which Exemption 7(A) has been asserted. A revised declaration is being included with this opposition/reply.

the newspaper.  See Solar Sources Inc. v. United States, 142 F.3d 1033,1040 (D.C. Cir. 1998) ("The

fact that the Government has closed a particular investigation does not make it any less likely that

disclosure in this case 'could reasonably be expected to interfere with enforcement proceedings'");

Mapother v. Department of Justice, 3 F.3d 1533, 1540 (D.C. Cir. 1993); New England Med. Ctr.

Hosp. v. NLRB, 548 F.2d 377, 385-86 (1st Cir. 1976); Kuffel v. United States, 882 F. Supp. 1116,

1126 (D.D.C. 1995) (ruling that Exemption 7(A) remains applicable when inmate has criminal

prosecutions pending in other cases).  Thus, the fact that a forfeiture proceeding has been initiated

on a seizure is not inconsistent with the assertion that there are ongoing law enforcement proceedings

warranting the assertion of Exemption 7(A).

　　　SPRC also claims that the agency's assertion of ongoing law enforcement proceedings is

too conclusory to satisfy federal court review.  See Pl. Opp. at 17.  Of course, defendant cannot

identify the specific investigation(s) at issue; to do so could well interfere with those investigations

to the same or greater extent than the release of the names and addresses under FOIA.  See Curran

v. Department of Justice, 813 F.2d 473, 475 (1st Cir. 1987) ("Provision of the detail which a

satisfactory Vaughn index entails would itself probably breach the dike.") (cited in Solar Sources,

142 F.3d at 1033).  However, the fact that CBP has identified only a subset of the commercial

entities for withholding indicates that there is a reason for treating those names and addresses in a

different manner.  Further, when plaintiff raised legitimate concerns about the scope of the 7(A)

assertions in the first round of summary judgment briefing, CBP did go back to ICE  to ascertain

whether there were ongoing law enforcement proceedings for each of the seizure numbers.  This

inquiry did result in a reduced assertion of 7(A), with only thirteen seizure numbers now subject to

withholding on this basis.  See Revised Marshall Dec. at ¶ 6.  CBP's second review, and voluntary

withdrawal of its earlier filed motion, should assuage any concerns that CBP is not making its best efforts to be candid with the Court and plaintiff.  See Pl. Opp. at 16.

Though CBP takes strong issue with plaintiff's characterization that defendant has "misled the court" (deliberately or otherwise), plaintiff's opposition does raise a valid outstanding issue; namely, that as of the date of filing its opposition memorandum (November 30, 2006), SPRC had not yet received all of the names and addresses that CBP represented would be released in the agency's renewed Motion for Summary Judgment.  See Pl. Opp. 27.  These releases should have been made, and with this opposition/reply defendant is filing a sworn declaration that the releases will be completed on or before December 28, 2006.  See Declaration of Robert Theirry (Reply Ex. 2).

For these reasons, defendant's assertion of Exemption 7(A) with respect to the seizure numbers set forth in the Revised Declaration of Gloria Marshall should be affirmed by this Court.

## IV.    SPRC'S CLAIM THAT CBP IS OBLIGATED TO PUBLISH THE NAMES AND ADDRESSES WITH ITS FORFEITURE NOTICE SHOULD BE DISMISSED

### A.    Plaintiff's Complaint Fails to Identify a Cause of Action for Challenging the Information Included in CBP's Forfeiture Notices

In its opening Motion, CBP argued that SPRC had failed to identify a cause of action on which its purported challenge to the adequacy of the agency's seizure notices is based.  See Def. Mem. at 21-22.  In response, SPRC looks to GNB Battery Technologies v. Gould, 65 F.3d 615 (7th Cir. 1995), Coalition to Preserve the Integrity of American Trademarks v. United States, 790 F.2d 903, 918 (D.C. Cir. 1986) and Kmart Corp. v. Cartier, 486 U.S. 281 (1988).  See Pl. Opp. at 18-19. Far from advancing plaintiff's cause, these cases all reinforce the critical flaw in plaintiff's Amended Complaint: the absence of an applicable waiver of sovereign immunity.  In GNB, declaratory relief

-14-

was permissible because of "the possibility of an action by Gould under §§ 107(a) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9067(a), 9613(f)(1), a federal cause of action." American Trademarks and Kmart were both brought under the Tariff Act of 1930, 19 U.S.C. § 1526. See American Trademarks, 790 F.2d at 918; Kmart, 486 U.S. at 285. Here, while SPRC claims federal court jurisdiction may be predicated under 28 U.S.C. § 1331, it has not identified a cause of action for his claim, and, as CBP explained in its opening memorandum, the Declaratory Judgment Act does not supply a cause of action. See Def. Mem. at 21-22.

**B. Any APA Claim Would Be Barred by the Six Year Statute of Limitations**

Though SPRC has never identified it, a possible cause of action could be found in the Administrative Procedure Act, 5 U.S.C. § 701, et. seq., in which a reviewing court may set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. § 706. However, the regulation at issue, 19 C.F.R. § 162.45, has been in place more than six years, putting SPRC's challenge well outside the statute of limitations.[6] See 28 U.S.C. § 2401 ("Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); Impro Prods., Inc. v. Block, 722 F.2d 845, 850 (D.C. Cir. 1983) (interpreting 28 U.S.C § 2401 to apply to claims brought under the APA); see also James Madison Ltd v. Ludwig, 83 F.3d 1085, 1094 (D.C. Cir. 1996); Harris v. FAA, 215 F. Supp.2d 209, 214 (D.D.C. 2002). Thus, even if plaintiff had tried to bring an APA claim (which it did not), any such claim would be untimely.

**B.    There is No Statutory Requirement to Publish Names and Addresses in Notices**

---

[6]A technical change was made in 2005, raising the threshold value of seized property for which CBP must publish a forfeiture notice in a newspaper from $2,500 to $5,000. See 70 FR 8509 (Feb. 22, 2005).

-15-

**of Seizures When the Seizures Are Not Pursuant to the Navigation Laws**

SPRC's argument claiming that the inclusion of names and addresses in forfeiture notes is mandated by law is difficult to follow.  See Pl. Opp. at 19-21.  Suffice to say that simply juxtaposing statutes from two different titles of the United States Code in proximity to one another in a memorandum of points and authorities does not mean that the statutes must be "read together." SPRC claims that "the interplay between the forfeiture provisions of the Shipping Act [Title 46] and Customs Act [Title 19] was settled in United States v. The Brazil, 134 F.2d 929 (7th Cir. 1943).  Pl. Opp. at 21. The Brazil, however, dealt with a "narrow question," id. at 929; namely whether statutory language from the Shipping Act incorporated a provision of the Customs Act because the former *specifically* referenced "the law relating to the collection of duties."  The Court concluded that "[t]he provision that all forfeitures incurred may be 'prosecuted' and 'disposed of,' in 'the same court' and 'in the same manner,' to us plainly connotes that the causes of action under the two acts, the venue, the method of recovery, the procedure and the court's disposition shall be identical."  Id.  The "incorporation by reference" in The Brazil turned on statutory language limited to the remedies and limitations for the enforcement of forfeitures.  No reasonable reading of The Brazil suggests the argument proffered by SPRC here: that all provisions of Title 46 are incorporated into Title 19.[7]

Indeed, what Title 46 teaches is that when Congress wants to create specific notice requirements, it knows exactly how to do it.  Thus, for Title 46 (shipping) forfeitures, Congress has demanded that the agency "insert in the same advertisement the name and place of residence of the person to whom any such vessel and merchandise belonged or were consigned."  46 U.S.C. § 327

---

[7]While plaintiff refers to 46 U.S.C. § 327 as "the incorporating act," the statute makes no reference to Title 19, unlike the section of Title 46 at issue in The Brazil (Section 836).

-16-

(recodified as 46 U.S.C. § 503, see Pub.L. 109-304, § 4, Oct. 6, 2006, 120 Stat. 1490.).  In contrast, for 19 U.S.C. § 1607 seizures, notice shall be published "in such manner as the Secretary of the Treasury [now Homeland Security] may direct."  Congress has left the specifics of the notice procedure to the agency, and the Secretary's exercise of that discretion did not include a regulatory requirement to include names and addresses.[8]

## V.     CONCLUSION

Wherefore, CBP requests that the Court grant its renewed Motion for Summary Judgment, deny plaintiff's cross motion, enter judgment for defendant and dismiss this matter with prejudice.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
PETER D. BLUMBERG, Bar # 463247
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7157

Dated: December 18, 2006

---

[8]Since the manner of publishing the notices of seizure is committed to the discretion of the agency, SPRC's reference to what other federal, state and local agencies do is irrelevant.  See Pl. Opp. at 21-22.