UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEIZED PROPERTY RECOVERY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 05-1570(AK) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

There is no principal problem with plaintiff's contention when the defendant attempts to posit "other types of Freedom of Information Act ("FOIA") requestors who could make the same or similar claims." The Court is only being called upon to decide plaintiff's claims within the context of what is being requested. Plaintiff does not seek to have the government maintain direct mail solicitation lists. Plaintiff seeks the names and addresses of persons whose seized property is about to be forfeited. This is absolutely in the public interest and has everything to do with what the defendant is up to.

In Professional Programs Group v. Department of Commerce, 29 F. 3d 1349 (9th Cir. 1994) the plaintiff produced no evidence as to how the release of the names and addresses

1

would contribute to what the government is up to. The Supreme Court recently emphasized that the only relevant "public interest in disclosure" is "the extent to which disclosure would . . . 'contribute significantly to public understanding of the operations or activities of the government.'" United States Dept. of Defense v. FLRA, 114 S. Ct. 1006, 1012, 127 L. Ed. 2d 325 (1994) (quoting Reporters Committee, 489 U.S. at 775). In Minnis v. United States Dept. of Agriculture, 737 F. 2d 784 (9th Cir. 1994) the court found there was "absent any asserted public interest in disclosure." In O'Kane v. United States Customs Service, 169 F. 3d 1308 (11th Cir. 1999) it appears that attorney Michael O'Kane [1] was seeking the names and addresses of all persons whose property had been seized because they were entitled to legal representation. The court rejected the request because something more than legal representation had to be demonstrated.

In the instant case, plaintiff does not seek the names and addresses of all persons whose property has been seized but only those whose property is about to be forfeited. [2] This case is distinguishable because the defendant is about to forfeit property for which they received no notice of the impending forfeiture and/or with knowledgeable representation could obtain restoration of their property through administrative or judicial relief. Examples of these situations have been set forth in plaintiff's prior pleadings. For instance, plaintiff

---

[1] Interestingly Mr. O'Kane is an active member of the Florida Bar working in Saudi Arabia.

[2] For example, the defendant in many cases will remit or cancel a forfeiture upon the filing of a petition pursuant to 19 U.S.C. section 1618. In those cases no notice of forfeiture would be mailed and/or published.

has presented unrebutted evidence that mail sent to the names and addresses provided by the defendant have been returned undeliverable; the vast number of currency seizures from individuals should not be forfeited pursuant to defendant's own mitigation guidelines; and, defendant generally publishes its forfeiture notices in obscure newspapers which are probably never read by the interested party.

## II. THE NAMES AND ADDRESSES OF INDIVIDUALS ARE NOT PROPERLY WITHHELD FROM DISCLOSURE UNDER EXEMPTIONS 6 AND 7(C)

Plaintiff is correct in its contention that the government has provided no credible evidence of the privacy interests of any of the individuals from whom they seized property. There was a time during these administrative proceedings where the defendant was publishing the names and addresses of persons with the seizure notices and providing the names of these individuals to the plaintiff. There is not a scintilla of evidence in the record that one person whose name was published or who received mail from the plaintiff ever objected to the publication of their name and address or releasing their name and address to the plaintiff.

First, of the copious cited authority there is not a single instance where an individual has come forward or joined in the litigation complaining that his or her name should not be released. We know from a reading of these cases that the courts have speculated that "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." Since in these reported cases the names and addresses were not released the individuals were probably unaware of the pending litigation that could affect

them.

Second, it is an equally settled fact and a truism that once individuals have their property seized by the defendant they are automatically associated with law enforcement proceedings. Their names are entered into law enforcement computers which potentially subjects them to scrutiny whenever they arrive or depart the United States and the information may be accessed by any law enforcement officer in the United States. In Fitzgibbon v. CIA, 911 F. 2d 755 (DC Cir. 1990) the court was concerned with the stigma of criminal activity. "We have said quite recently that 'exemption 7(C) takes particular note of the "strong interest" of individuals, whether they be suspects, witnesses, or investigators, "in not being associated unwarrantedly with alleged criminal activity."' Dunkelberger v. Department of Justice, 285 U.S. App. D.C. 85, 906 F.2d 779, 781 (D.C. Cir. 1990) (quoting Stern v. FBI, 237 U.S. App. D.C. 302, 737 F.2d 84, 91-92 (D.C. Cir. 1984))." The defendant has cited to no case where an individuals association with an administrative proceeding creates a stigma or is considered an association with a law enforcement proceeding involving criminal activity. Any perceived stigma would be the act of seizure not representation in an administrative forfeiture proceeding.

Of the thousands of seizure cases processed each year by the defendant, they have introduced only a few pieces of correspondence where persons or their attorneys did not want their names and addresses released to the plaintiff. This is hardly numerous examples.

Plaintiff does not seek the names and addresses of everyone who had their goods seized by the defendant as O'Kane tried to do. Plaintiff only seeks the names and addresses

of those persons from whom the defendant has seized their property and is about to forfeit the property if these persons do not immediately come forward to seek remission.

Finally, we address the defendant's claim that "some names and addresses were released by the ports in error." This conclusion by the defendant is a total fabrication! The release of names and addresses and the publication of names and addresses by the defendant was ordered by Joanne Roman Stump, Chief, Disclosure Law Branch, Office of Regulations and Rulings, U. S. Customs and Border Protection. In that letter and subsequent letters [Herrick's Renewed Declaration ¶¶ 1-4] Ms. Stump issued these orders as the chief legal officer of the Disclosure Law Branch. Based on Ms. Stump's orders the Ports of Miami and Long Beach began releasing requested names and addresses and publishing names and addresses of persons whose seized property was about to be forfeited.

Upon receipt of this information the plaintiff mailed notices to these persons. There is no evidence in the record that any of these persons ever objected to the defendant that the release of their names and addresses was an invasion of their personal privacy. These names included individuals and corporations.

Subsequently, the Acting Executive Director, Trade Compliance and Facilitation, U. S. Customs and Border Protection issued a memorandum to the ports countermanding the orders of Ms. Stump. If should be noted that the Trade Compliance office is an operations office and not the legal office of the defendant. This memorandum triggered this long and expensive litigation.

Thus, this Court is being called upon to decide in favor of the position taken by the

chief legal officer of the Disclosure Law Branch or the non-legal opinion of the Trade Compliance office.

Plaintiff is not arguing that the defendant has waived the privacy rights of persons by its prior acts. In Lakin Law Firm v. FTC, 352 F. 3d 1122 (7th Cir. 2003) the names and addresses of persons who had voluntarily complained to the FTC were not released. There is nothing voluntary about the seizing of one's property. Again, August v. Federal Bureau of Investigations, 328 F. 3d 697 (DC Cir. 2003) the court was concerned with personal privacy during a criminal investigation which is not an issue in the instant case.

For these reasons the defendant has not satisfied its burden to show that individuals subject to defendant's notices of forfeiture have a privacy interest in not having their names and addresses publicly released.

**B.     Release and Publication of Names and Addresses Will Result in the Disclosure of What the Government is "Up To."**

Again, Mays v. DEA, 234 F 3d 1324 (DC Cir. 2000) is concerned with personal privacy issues involving criminal investigations which is not an issue in this case. In Lepelletier v. F.D.I.C., 23 Fed. Appx. 4; 2001 U.S. App. LEXIS 25874 (DC Cir. 2001) the court noted that the FDIC had released all of the requested names and addresses.

> "When presented with a due process challenge, a court must determine, first, whether there has been a deprivation of a property interest, and, if so, what process is due. See Morrissey v. Brewer, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); Propert v. District of Columbia, 292 U.S. App. D.C. 219, 948 F.2d 1327, 1331 (D.C. Cir. 1991). It is clear that the depositors have a protected property interest in their unclaimed funds. Thus, the only question here is whether they have received the process they are due. As mentioned above, the District Court found that the due process rights of the

depositors had not been violated, because they had received adequate notice. However, in the course of its decision, the District Court did not cite the seminal case of Mathews v. Eldridge, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), nor did it consider the three factors articulated in that case...." Lepelletier v. F.D.I.C., 164 F. 3d 37, 45 (DC Cir. 1999).

The above excerpt is squarely on point with this case. The plaintiff has presented a due process challenge in that persons are about to have their seized property forfeited and the process that is due them, *viz.* the right to be represented in seeking the remission of their property is being denied.

> "However, this case is distinguishable from the court's previous cases in an important respect: the individuals in those cases had no clear interest in the disclosure of their names and addresses. In other words, unlike the instant case, the individuals in the aforecited cases had no clear prospect of securing a direct benefit by virtue of disclosure. In Painting and Drywall, a nonprofit cooperative sought the disclosure of the names, addresses, and social security numbers associated with those who had been employed by three Department of Housing and Urban Development-assisted projects to ensure compliance with 'laws affecting public-works projects in California.' 936 F.2d at 1301. The court found that the disclosure of this information 'would constitute a substantial invasion of privacy,' because the 'same information would have to be provided, for example, to creditors, salesmen, and union organizers.' Id. at 1303. And the employees in Painting and Drywall had no clear interest in the release of this information; the only possible benefit to them was 'that the information would facilitate investigation of government efforts to enforce' the laws. Id.
>
> Likewise, in NARFE the court found that the privacy interest associated with the release of the names and addresses of those former federal employees who received annuity payments was 'significant,' because there was 'little reason to doubt that the barrage of solicitations predicted will in fact arrive--in the mail, over the telephone, and at the front door of the listed annuitants.' 879 F.2d at 878. And the annuitants there did not have a corresponding clear interest in the release of their names. The only benefit that they could enjoy from such a release was the possible receipt of information about NARFE, an organization that sought 'to protect and to further the interests of individuals eligible to participate in the federal Government's civilian retirement system.'

Id. at 874. This benefit falls far short of the clear and direct interest that the depositors have at stake in this case-namely, learning of their personal bank deposits and recovering them.

Therefore, although this court has stated that a slight privacy interest outweighs no public interest, see NARFE, 879 F.2d at 879, this formulation is inapposite here, i.e., where the individuals whom the government seeks to protect have a clear interest in the release of the requested information. Indeed, for individuals with sizeable accounts, the interest in disclosure may be substantial. Accordingly, we hold that the FOIA analysis under Exemption 6 must include consideration of any interest the individual might have in the release of the information, particularly when the individuals who are 'protected' under this exemption are likely unaware of the information that could benefit them.

In this case, a number of the depositors have a significant pecuniary interest at stake, and disclosure of their names will greatly increase the probability that they (or their heirs) will be reunited with their funds. Thus, it is overly paternalistic to insist upon protecting an individual's privacy interest when there is good reason to believe that he or she would rather have both the publicity and the money than have neither. Accordingly, the list-of-names information sought by Lepelletier may be released under FOIA. However, because we remain particularly concerned with the possibility of invading the privacy of the depositors, and because there is no discernible public interest in disclosure, we believe any release of the depositors' names must be limited in two significant ways...." Lepelletier, supra, p. 47.

As in *Lepelletier*, persons who are about to have their seized property forfeited have a significant pecuniary interest at stake, and disclosure of their names and addresses will greatly increase the probability that they will be reunited with their property. There is good reason to believe that he or she or it would rather have both the publicity and the property than have neither.

### C. *Lepelletier* Does Call for Release of the Names and Addresses in the Circumstances Presented Here

*Lepelletier* has been fully addressed *supra* and in plaintiff's renewed motion for

summary judgment. However, plaintiff states that it is possible individuals are **unaware** of information that could benefit them. Plaintiff has provided much more than a scintilla of information of competent evidence of the abuses individuals have suffered in the government's forfeiture proceedings. This was primarily addressed in the referenced treatise. Plaintiff is using the FOIA to inform persons of steps they can take to recover their property which is a public interest.

### III. THE AGENCY'S ASSERTION OF 7(A) FOR THE NAMES AND ADDRESSES OF CERTAIN COMMERCIAL ENTITIES CANNOT BE SUSTAINED

If entities may be the subject of a different ICE investigation(s) then why would the defendant publish notices of forfeiture. It makes no sense. If there are several pending criminal investigations by ICE of the same entity whose property is about to be forfeited, then the pending administrative forfeiture proceeding is always held in abeyance until the criminal proceeding has completed. An example of this was cited in the *John Doe* case. The fact of the matter is that the Gloria Marshal declaration and assertions by ICE are not credible.

The defendant has totally failed to explain why they are forfeiting property when there are ongoing investigations against the same entities. They have not indicated there are any statute of limitations problems. They have not explained if currency or other property is perishable. Why hasn't the defendant explained the reasons for not deferring forfeiture until all law enforcement proceedings against the entity have been concluded. Furthermore, if the forfeiture becomes judicial either because of the dollar value exceeding $500,000 or because

the petitioner has filed a claim and cost bond, then the government's "ongoing law enforcement proceeding" will be subjected to discovery and other exposure. With this as background it is quite clear that there are no other pending law enforcement proceedings involving the entities whose seized property is about to be forfeited. Therefore, once the defendant publishes a notice of forfeiture this is a signal that there are no other pending law enforcement proceedings against this entity and there is, therefore, no basis for an exemption 7(A) claim.

Finally, the plaintiff had identified approximately 133 cases involving commercial entities for which it had not received the names and addresses. As of December 28, 2006 the defendant provided plaintiff with 79 names and addresses from the Port of Long Beach/Los Angeles. There remains approximately 54 names and addresses of commercial entities from the Ports of Newark, JFK, Houston and San Francisco that have not been released. This further demonstrates how the defendant has been misleading the Court and the plaintiff with its dilatory practices.

### IV.  SPRC'S CLAIM THAT CBP IS OBLIGATED TO PUBLISH THE NAMES AND ADDRESSES WITH ITS FORFEITURE NOTICE SHOULD BE GRANTED

#### A.  Plaintiff's Complaint Identified a Cause of Action for Challenging the Information Included in CBP's Forfeiture Notices

No further discussions is required on this issue.

#### B.  Any APA Claim May or May Not Be Barred by the Six Year Statute of Limitations

Plaintiff did not raise an APA claim. However, it has challenged an interpretation of

10

the regulation at issue, 19 C.F.R. §162.45. Specifically, plaintiff requests the Court to make a finding that Ms. Stump's interpretation of section 162.45 is in accordance with the law and that the interpretation by the Trade Compliance office is not in accordance with the law. Again it is important to note that while Ms. Stump's orders were being implemented and the plaintiff was mailing letters to the names that had been released and/or published there is not a single shred of evidence that any of these persons ever complained to the defendant about their names being released.

> C.  **There is A Statutory Requirement to Publish Names and Addresses in Notices of Forfeiture (not notices of seizure) When the Seizures of any Property are Made by Customs Officers**

To carry out the legislative intent of publishing names and addresses in notices of forfeiture the identified sections of law must be read in *pari materia*. The courts are frequently required to employ the rule of *pari materia*.

> "In addition, reading section 1592(e) in *pari materia* n3 with section 1592(b), the language 'any monetary penalty claimed' before this Court refers back to the 'written penalty claim' issued in the administrative proceedings, suggesting that it is the same claim. The term 'recovery' underscores that a 1592 action before this Court is an enforcement suit allowing the government to recover on a claim that it perfected in the administrative proceedings. n4 See 19 U.S.C. § 1592.
>
> - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -
>
> n3 Cf. Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127-28, 116 S. Ct. 494, 133 L. Ed. 2d 461 (1995) (explaining application of this rule of construction in interpreting two subsections of statute). 'This [in *pari materia*] principle of statutory construction provides that legislative intent "is to be deduced from the whole statute and every material part of the same."' Dal-Tile Corp. v. United States, 17 C.I.T. 764, 768, 829 F. Supp. 394, 397 (1993)

11

(citations omitted)." United States v. Optrex America, Inc. 2005 Ct. Intl. Trade LEXIS 168; SLIP OP. 2005-160; 28 Int'l Trade Rep. (BNA) 1041. Cf. Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 46 L. Ed. 2d 542, 96 S. Ct. 584 (1976).

It is quite clear that when the Court employs the rule of *pari materia* in this statutory construction that the position taken by Ms. Stump must be upheld.

## CONCLUSION

Through this FOIA litigation plaintiff is requesting the Court to adopt the interpretation of Ms. Stump that the names and addresses of persons from whom the defendant has seized any property must be released and published in the notice of forfeiture. Had it not been for the erroneous interpretation of law by the Trade Compliance office there never would have been this litigation. Because no person who received mail from the plaintiff ever complained to the defendant, there is proof, in reality, not the abstract, that actual affected persons did not believe their privacy had been compromised.

Furthermore, as set forth in *Lepelletier, supra*, these persons have a pecuniary [property] interest in knowing what their government is up to. Because these persons want to be reunited with their property and because of due process considerations the balancing favors the release and publication of the names and addresses.

Respectfully submitted,

Peter S. Herrick, P.A.
Peter S. Herrick
Attorney for Plaintiff
3520 Crystal View Court

Miami, Florida 33133
Tel. 305-858-2332
Fax. 305-858-6347
Email pherrick@bellsouth.net
D C Bar 137935