UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| SEIZED PROPERTY RECOVERY,            ) | |
| CORPORATION                                    ) | |
|                                                          ) | |
| Plaintiff,            ) | Civil Action No. 05-1570 (AK) |
|                                                          ) | |
| v.            ) | |
|                                                          ) | |
| UNITED STATES CUSTOMS AND           ) | |
| BORDER PROTECTION,                         ) | |
|                                                          ) | |
| Defendant.            ) | |
| _____ ) | |

## MEMORANDUM OPINION[1]

Now pending before the Court are Defendant's Renewed Motion for Summary Judgment ("Def. Mot.") [36], Plaintiff's Renewed Opposition [39] and Cross-Motion for Summary Judgment [42] (collectively "Pl. Mot."), Defendant's Reply to Plaintiff's Opposition [41] and Opposition to Plaintiff's Cross-Motion for Summary Judgment [43] (collectively "Def. Reply"), and Plaintiff's Response to Defendant's Reply and Reply to Defendant's Opposition [44] (collectively "Pl. Reply").

## BACKGROUND

**I.     United States Customs and Border Protection and Administrative Forfeiture**

Defendant, United States Customs and Border Protection ("Defendant," "Customs" or "CBP"), is a unified border agency within the Department of Homeland Security.  (Decl. of

---

[1]By consent of the parties, this case was referred to the undersigned magistrate judge for all purposes and trial pursuant to 28 U.S.C. § 636(c).  *See* Minute Order dated 5/2/06 (approving Consent to Jurisdiction by a U.S. Magistrate Judge).

Richard F. Chovanec[2] ("Chovanec Decl.") ¶ 2.)  It is a law enforcement agency "with full

authority to assess penalties and liquidated damages, seize merchandise for violation of CBP

laws or those of other federal agencies that are enforced by CBP, remit forfeitures, mitigate

penalties, decide petitions, and cancel claims."  (*Id.* ¶ 3 (citing, *inter alia*, Homeland Security Act

of 2002, Pub. L. No. 107-296, 116 Stat. 2135).)

When Customs seizes certain property valued under $500,000, it may forego

judicial proceedings and proceed by administrative forfeiture.  *See* 19 U.S.C. §§ 1607-1609

(2000).  Before it may forfeit the property, however, Customs must give notice to any parties in

interest and inform them of the applicable procedures for contesting the forfeiture.  *See* 19 U.S.C.

§ 1607(a).  Customs also must publish the notice for three successive weeks "in such a manner as

the Secretary of [the Department of Homeland Security] may direct."  *Id.*

The notice requirements set forth in 19 U.S.C. § 1607 are implemented by 19 C.F.R. §

162.45.  Section 162.45 directs that, for seized property valued between $2,500 and $500,000,

notice of forfeiture must be published "in a newspaper circulated at the Customs port and in the

judicial district where the property was seized."[3]  *See* 19 C.F.R. § 162.45(b).  According to the

regulation, the notice of forfeiture must, *inter alia*, (1) describe the property seized; (2) list the

time, cause and place of seizure; and (3) set forth the procedures by which parties in interest may

contest the forfeiture.  *See* 19 C.F.R. § 162.45(a).  The regulations do not require inclusion of the

---

[2]Richard F. Chovanec is the acting Freedom of Information Act ("FOIA") Appeals Officer and acting Branch Chief of the FOIA Appeals, Policy & Litigation Branch ("FAPLB"), Regulations and Disclosure Law Division, Office of Regulations and Rulings ("OR&R"), U.S. Customs and Border Protection, Department of Homeland Security.  (Chovanec Decl. ¶ 1.)

[3]Section 162.45 also directs that, for seized property valued at $2,500 or less, notice shall be posted "in the customhouse nearest the place of seizure."  *See* 19 C.F.R. § 162.45(b).

name and address of the person to whom the seized property belongs or is consigned, unless the property was seized "under the navigation laws."  *See id.*

## II.     Seized Property Recovery Corporation and FOIA Requests

Plaintiff Seized Property Recovery Corporation ("Plaintiff" or "SPRC") is a Florida corporation (Am. Compl. [12] ¶ 4) whose business includes "representing corporations and individuals on issues pending with Customs" (*see* Renewed Decl. of Peter S. Herrick[4] ("Herrick Decl.") ¶ 13).  In 2004 and 2005, Plaintiff filed numerous Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, requests with different Customs Ports in the United States.  (*Id.* ¶ 1.) The requests sought names and addresses of certain individuals and commercial entities from whom Customs had seized property which it intended to forfeit.  (*Id.* ¶ 2.)  Plaintiff had learned of these seizures and planned forfeitures through notices published in local newspapers.  (*See* Pl. Mot at 2.)  (In accordance with agency regulations, the names and addresses of the interested parties had not been included in the published notices.  (*See* 19 C.F.R. § 162.45(a).))  Plaintiff wanted to obtain the names and addresses so that it could contact the interested parties and offer them its services in seeking remission of their property.  (*See* Pl. Mot. at 2, 8, 13-14; *see also* Reply at 23.)

The Customs's responses to Plaintiff's requests varied initially.  In many instances, Customs Ports withheld the requested names and addresses under FOIA Exemptions 7(A) or 7(C).  (*See* Letters from Long Beach Customs Port to Herrick, *attached as* Exs. 4 & 7 to

---

[4]According to the Divisions of Corporations, Florida Department of State, Mr. Herrick is the listed principal officer and director for SPRC.  (Public Inquiry, Corporations Online, Florida Department of State, available at www.sunbiz.org, *attached as* Ex. 1 to Def. Mot.)

Chovanec Decl.)  In other cases, the Ports released names but withheld addresses under FOIA

Exemptions 3 or 7(C).  (*See* Letters from San Francisco and Newark Customs Ports to Herrick,

*attached as* Exs. 9 & 13 to Chovanec Decl.)  Still in other instances, the names and addresses

were released following an appeal by Plaintiff to Customs's Disclosure Law Branch.[5]  (*See*

Letters from Disclosure Law Branch to Herrick, *attached as* Exs. A-D to Herrick Decl.)

Customs also wavered in its position on whether to include names and addresses of

interested parties in the published forfeiture notices.  On March 17, 2005 the Customs Disclosure

Law Branch informed Plaintiff that it was "instructing the [Fines, Penalties & Forfeiture] Officer

at the Miami Service Port that in the future, it should include [names and addresses] in its public

notices of seizure and sale as it is a regulatory requirement."[6]  (Letter from Disclosure Law

Branch to Herrick of 3/17/05, *attached as* Ex. A to Herrick Decl.)  The Disclosure Law Branch

reiterated this position in another letter to Plaintiff regarding the Port of Long Beach, California.

(Letter from Disclosure Law Branch to Herrick of 3/17/05, *attached as* Ex. A to Herrick Decl.)

Subsequent to the issuance of these letters, the Ports of Miami and Long Beach began including

names and addresses in their published notices.  (*See* Herrick Decl. ¶ 8; Excerpt from Los

Angeles Daily Journal, *attached as* Ex. E to Herrick Decl.)  Once these Customs Ports began

publishing names and addresses of interested parties, Plaintiff ceased requesting names and

addresses from the agency.  (Herrick Decl. ¶ 14; *see also*, *e.g.*, Letter from Herrick to Disclosure

Law Branch of 4/19/05, *attached as* Ex. N to Herrick Decl. (withdrawing all pending FOIA

---

[5]The Disclosure Law Branch is now known as the FOIA Appeals, Policy & Litigation Branch ("FAPLB"). (*See* Chovanec Decl. ¶ 6.)

[6]The regulatory requirement to which Customs referred was 19 C.F.R. 162.45(a)(4).  (Herrick Decl. ¶ 4; Ex. A to Herrick Decl.).

appeals relating to the Port of Los Angeles/Long Beach after the Port began publishing names and addresses of interested parties).)

On or shortly after May 5, 2005, however, names and addresses disappeared from these Ports' published notices.  (Herrick Decl. ¶ 9.)  Plaintiff later learned that on May 5, 2005, Customs's Acting Executive Director, Trade Compliance and Facilitation, had directed the Ports to cease publishing the requested names and addresses unless the property at issue had been seized pursuant to the navigation laws, *i.e.*, Title 46 of the United States Code.  (*Id.* ¶ 9; Memorandum from Acting Exec. Dir. to Field Operations Directors of 5/5/05, *attached as* Ex. F to Herrick Decl.)  As a result, Plaintiff resumed its FOIA requests for names and addresses. (Herrick Decl. ¶ 9.)

Plaintiff filed its original Complaint in this action on August 3, 2005 seeking review of several Customs decisions denying FOIA requests for names and/or addresses of individuals and commercial entities from whom property had been seized.  (*See* Compl. ¶¶ 21-34.)  Plaintiff filed an Amended Complaint on October 14, 2005 seeking review of at least 19 additional FOIA denials by Customs.  (*See* Am. Compl. ¶¶ 35-107.)  Plaintiff also seeks a declaratory judgment, under 28 U.S.C. §2201, "that Customs must include the names and addresses of persons from whom it seized property" in its forfeiture publication notices, pursuant to 19 U.S.C. § 1607.  (*See id.* ¶ 2; *see also id.* ¶¶ 108-09.)

Both sides have filed cross motions for summary judgment, which are now ripe for decision.

**LEGAL STANDARD**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party points to facts showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party may not rest on mere allegations, but must point to specific facts in the record showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere scintilla of evidence in support of [the non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving] party." *Id.* at 252. In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all inferences are to be drawn in his favor." *Id.* at 255.

**ANALYSIS**

**I.    Plaintiff's Claims under the Freedom of Information Act**

Under FOIA, an agency is obligated to produce requested information unless it falls under one of the Act's exemptions. *Public Citizen Health Research Group v. National Institutes of Health*, 209 F. Supp. 2d 37, 42 (D.D.C. 2002) (citing *Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). In hearing claims brought under FOIA, the district court has jurisdiction to "order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The agency bears the burden to justify withholding any requested

documents, and the court exercises *de novo* review of the agency's decision.  *See* 5 U.S.C. § 552(a)(4)(B).

In the FOIA context, the Court may award summary judgment to an agency on the basis of information provided in affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981).

As mentioned previously, Plaintiff seeks release of the names and/or addresses of certain individuals or commercial entities from whom Customs seized property which it intended to forfeit.  Customs asserts that the names and addresses of the individuals are exempt from disclosure under 5 U.S.C. § 552(b)(6) ("Exemption 6") and  5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").  Customs also asserts that the names and addresses of the commercial entities are exempt under 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)").

A.    *FOIA Exemptions 6 and 7(C)*

Exemptions 6 allows an agency to withhold requested information in order to protect individuals' personal privacy interests.  Specifically, the exemption applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[7]  5 U.S.C. §552(b)(6).  In determining whether the release of

---

[7]Information that applies "to a particular individual" meets the threshold requirement of Exemption 6 that the information be contained in "personnel and medical files and similar files."  *See United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

requested information constitutes a "clearly unwarranted invasion of personal privacy," the court must balance the individual's right to privacy against the public's interest in disclosure. *See United States Dep't of Defense v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 495 (1994). If no public interest is found, then withholding the information is proper, even if the privacy interest is only modest. *Nat'l Ass'n of Retired Fed. Employees ("NARFE") v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("[S]omething, even a modest privacy interest, outweighs nothing every time.") Given the "clearly unwarranted" language of Exemption 6, however, "the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Washington Post Co. v. United States Dep't of Health and Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982); *see also Ripskis v. Dep't of Housing and Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984) ("[T]he 'clearly unwarranted' language of Exemption 6 weights the scales in favor of disclosure.")

Exemption 7(C), the law enforcement counterpart to Exemption 6, protects against the disclosure of "records or information compiled for law enforcement purposes" to the extent that such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As a threshold matter, Exemption 7(C) applies only to "records or information compiled for law enforcement purposes[.]" 5 U.S.C. § 552(b)(7)(C). Once this threshold is met, the court must, as with Exemption 6, balance the individual's right to privacy against the public interest in disclosure. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989). Because of the absence of "clearly" from the language of Exemption 7(C), and because of its protection against disclosures that "could reasonably be expected" to invade personal privacy, it is "somewhat broader" than the

Exemption 6 standard.  *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).  Despite these differences between the two exemptions, the privacy inquiry for each is "essentially the same."  *See FLRA v. Dep't of Veteran Affairs*, 958 F.2d 503, 509 (2d Cir. 1992).  The difference in the court's analysis thus lies in "the *magnitude* of the public interest that is required to override the respective privacy interests protected by the exemptions"  *Id.*

1.    *Law Enforcement Records Threshold for Exemption 7(C)*

As previously mentioned, to make a withholding under Exemption 7, an agency must show that the documents or information at issue were "complied for law enforcement purposes." *See* 5 U.S.C. § 552(7).  "A record is considered to have been compiled for law enforcement purposes if it was created or acquired in the course of an investigation related to the enforcement of federal laws and the nexus between the investigation and one of the agency's law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir.1996) (internal quotation marks omitted).  Customs is a law enforcement agency "with full authority to assess penalties and liquidated damages, seize merchandise for violation of CBP laws or those of other federal agencies that are enforced by CBP, remit forfeitures, mitigate penalties, decide petitions, and cancel claims."  (Chovanec Decl. ¶ 3 (citing 19 U.S.C. §§ 1589a, 1592, 1595, 1595a and 1618).)  Customs submits that, here, the requested names and addresses are contained within its law enforcement files because they were gathered in the exercise of an agency duty, *i.e.*, "the seizure of goods for violation of CPB laws or those of other federal agencies that are enforced by CPB."  (*See* Def. Mot. at 8-9.)  Upon

consideration of this purpose, and its clear relationship to the agency's law enforcement duties, the Court concludes that Customs has met this threshold requirement.

                    2.     *Privacy Interest*

Customs asserts that the individuals whose names and addresses are contained within the forfeiture records have a significant privacy interest in not having their names and addresses publicly released.  (Def. Mot. at 9-11.)  Customs first argues that these individuals have a privacy interest in not having their names publicly associated with a seizure and forfeiture proceedings. (*Id.* at 10 (citing Chovanec Decl. ¶ 28).)  According to Customs, the damage to reputation that would follow from such an association is "well-established in the law."  (*Id.* (citing *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992); *Computer Professional for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 904-05 (D.C. Cir. 1996); *Brunetti v. FBI*, 357 F. Supp. 2d 97, 105 (D.D.C. 2004)).)  Second, Customs contends that the individuals have a privacy interest "in avoiding an influx of solicitation letters from [Plaintiff], or any competitors of [Plaintiff] that might seek to submit the same or similar FOIA requests for precisely the same purposes."  (Def. Mot. at 11.)

In further support of its position, Customs cites the results of a "reverse FOIA" process it conducted in response to Plaintiff's initial requests.[8]  (*See id.* (citing Chovanec Decl. ¶¶ 22-23).) Through this process, Customs contacted several dozen of the third parties to determine whether they consented to having their information released.  (*See id.* at 3; Chovanec Decl ¶ 22; Exs. 17-

---

[8]These initial FOIA requests, reflected in Counts I-III of Plaintiff's original Complaint, seek name and/or address information associated with approximately 48 seizure cases.  (*See* Chovanec Decl. ¶¶ 10-21; *see also* Compl. ¶¶ 21-34.)  Counts I-III of Plaintiff's original Complaint are identical to Counts I-III of the Amended Complaint. (*See* Compl. ¶¶ 21-34; Am. Compl. ¶¶ 21-34.)

22 to Chovanec Decl.)  Customs received seven responses, all of which expressed a desire that

the requested information be withheld.  (*See* Chovanec Decl. ¶ 23 (citing Exs. 23-29).)  Of these

responses, three came from individuals expressing personal privacy or safety concerns.  (*See*

Chovanec Decl. ¶ 23(d) (citing Ex. 26, *i.e.*, letter from counsel stating that release of the

information would invade right to privacy of his client and his client's family); Chovanec Decl. ¶

23(f) (citing Ex. 28, *i.e.*, letter from attorney stating that release of information would endanger

his client's family because of client's cooperation in drug trafficking investigation); Chovanec

Decl. ¶23(g) (citing Ex. 29, *i.e.*, letter from counsel stating that release of information would

invade client's privacy and possibly endanger client's family).)

       The Court concludes that Customs has adequately demonstrated that the individuals at

issue have a privacy interest in the nondisclosure of their names and addresses.  Although the

release of names and other identifying information is not "inherently and always a significant

threat to the privacy of the individuals," *United States Dep't of State v. Ray*, 502 U.S. 164, 176 n.

12 (quoting *NARFE*, 879 F.2d at 877); *accord Washington Post*, 943 F. Supp. at 34, it is well

recognized that "the privacy interest of an individual in avoiding the unlimited disclosure of his

or her name and address is significant."  *NARFE v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).

Beyond this general privacy interest, individuals have a privacy interest in not being associated

with law enforcement proceedings, "whether [the individuals] be investigators, suspects,

witnesses, or informants."  *See Schrecker v. United States Dep't of Justice*, 349 F.3d 657, 661

(D.C. Cir. 2003); *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir.

1995); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 767 ("It is surely beyond dispute that 'the

mention of an individual's name in a law enforcement file will engender comment and

speculation and carries a stigmatizing connotation.'"). Here, as previously discussed, *supra* at 9-10, the names and addresses at issue were compiled in connection with seizures conducted by Customs. Release of the names and addresses would automatically associate the individuals with such law enforcement proceedings and possibly cause comment, speculation and opprobrium. *See* Chovanec Decl. ¶ 28; *see also Fitzgibbon*, 911 F.2d at 767.

Finally, individuals have a privacy interest in the nondisclosure of their names and addresses when linked to financial information, especially when this information could be used for solicitation purposes. *See NARFE*, 879 F.2d at 876 (citing *Aronson v. Dep't of Housing and Urban Dev.*, 822 F.2d 182, 186 (1st Cir. 1987) ("When it becomes a matter of public knowledge that someone is owed a substantial sum of money, that individual may become a target for those who would like to secure a share of that sum by means scrupulous or otherwise.")); *accord Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999). Here, the disclosure of individuals' names and addresses would almost certainly lead to solicitations, as Plaintiff readily acknowledges.[9] (*See* Pl. Mot. at 23 ("What these individuals need to know is that there is professional and legal assistance available to help them regain their property. The only way this can occur is for contact to be made with them by a business such as SPRC."); *id.* at 13 ("It is the intent of SPRC . . . to contact the individuals[.]").)

---

[9]Citing *Hertzberg v. Veneman*, 273 F. Supp. 2d 67 (D.D.C. 2003), Plaintiff asserts that the likelihood of solicitation does not create a privacy interest because individuals could "simply decline to talk to" solicitors. (Pl. Mot. at 8). The Court finds this argument unavailing. Unlike the present case, the witness statements at issue in *Hertzberg* were not part of law enforcement records, and did not contain financial information.

3.    *Public Interest In Disclosure*

Having found that a privacy interest exists, the Court now turns to assessing any

countervailing public interest in disclosure.  In order to serve the public interest contemplated by

FOIA, disclosure must "shed light on an agency's performance of its statutory duties." *Reporters*

*Comm.*, 489 U.S. at 773; *accord Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C.

Cir. 2002); *see also Reporters Comm.*, 489 U.S. at 773 (teaching that central purpose of FOIA is

to enable citizens "to be informed about 'what their government is up to.'").  Moreover, "[t]here

must be a nexus between the information that is sought under FOIA and the ability of the public

to gain an understanding" about the agency's operations.  *Sun-Sentinel Co.*, No. 05-60340-CIV,

2006 WL 1316983, at *7 (S.D.Fla. Apr. 14, 2006).

Plaintiff contends that the release of the names and addresses will "satisfy[] the public

interest requirement" by allowing it to "contact the individuals to show them [that Customs

officials] acted negligently or otherwise improperly in the performance of their duties by not

mitigating the seizure especially of currency for alleged violations of reporting requirements."

(*See* Pl. Mot. at 13-14.)  According to Plaintiff, Customs has committed various due process

abuses in its administration of forfeitures, such as overzealous attempts to forfeit currency in

contravention of its own mitigation guidelines (*id.* at 11-12), and failure to provide adequate

forfeiture notice to parties in interest.[10]  (Pl. Mot. at 11, 14.)  To demonstrate the inadequate

notice of forfeiture, Plaintiff asserts: (1) that some of the third parties did not receive actual

notice, as evidenced by the "reverse FOIA" letters returned to Customs as undeliverable (*id.* at

14; Pl. Reply at 2-3); (2) that Customs provided no explanation about further steps taken to

contact such property owners (Pl. Mot. at 14); and (3) that, generally, notices of forfeiture are

published in "obscure newspapers which are probably never read by the interested party" (Pl.

Reply at 3; *see also* Pl. Mot. at 25).  Plaintiff also states that, without assistance from a business

such as itself, owners of seized property might be intimidated by the government (*id.* at 22) and

unaware that they can potentially recover their property "with the proper representation and

advocacy" (*id.* at 8).

      The Court agrees with Plaintiff that there is an element of public interest in shedding light

on how Customs performs its duties.  However, there is no appropriate nexus between this public

interest and the names and addresses of individuals whose property has been seized.  *See*

*NARFE*, 879 F.2d at 879 (no public interest "unless the public would learn something directly

about the workings of the *Government* by knowing the names and addresses"); *Lepelletier*, 164

F.3d at 47 (no public interest where names associated with unclaimed bank accounts do "not

shed light on the FDIC's performance of its duties"); *Hertzberg*, 273 F. Supp. 2d at 88 (no

---

[10]Although, clearly, Plaintiff makes these arguments in support of the public interest in disclosure under FOIA Exemptions 6 and 7(C), it also employs them as a separate but indistinct due process challenge to Customs's forfeiture notification procedures.  (*See* Pl. Reply at 7 ("The Plaintiff has presented a due process challenge in that persons about to have their seized property forfeited and the process that is due them . . . is being denied."); *see also* Pl. Mot. at 24-26 (applying factors from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to Customs' forfeiture notification procedures.)  Plaintiff's separate due process claim has several fatal problems.  First, Plaintiff has failed to plead such a cause of action anywhere in its Complaint or Amended Complaint.  Second, although Plaintiff seeks to raise the rights of third parties, it has failed to demonstrate in any way that it has met the requirements for standing under Article III or those of prudential *jus tertii* standing.  *See Lepelletier*, 164 F.3d at 42.  Finally, the alleged deprivation to the property owners would not be properly cured by relying on companies or lawyers to selectively contact only those individuals or corporations whose property interests were worth their time and effort.

disclosure where "the link between the request and the potential illumination of agency action is too attenuated").  Name and addresses information of individuals whose property is subject to forfeiture would not inform the public citizenry of how Customs administers its seizure operations, forfeiture proceedings and notification procedures.  Furthermore, any documents containing information about Customs's performance or behavior would advance this purpose regardless of whether they contained the names and addresses of individuals whose property was subject to forfeiture.

4.    *Balancing Privacy Interest and Public Interest*

Given the privacy interest held by the individuals, balanced against the very limited or nonexistent public interest in disclosure, the Court concludes that Customs has overcome the presumption in favor of disclosure under Exemption 6.  *See NARFE*, 879 F.2d at 879.  The Court cannot ignore that Plaintiff's principal reason in seeking the disclosure of the names and addresses of those persons whose property had been seized by Customs is to solicit their business.  Plaintiff candidly acknowledges that it would contact each person identified for the purpose of representing them in seeking remission of the forfeiture of their property.  Thus, Customs will not be required to release the names and addresses of individuals whose property has been seized, because disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6).  Because Customs has met this burden under Exemption 6, the Court also holds that the agency has met the lighter burden under Exemption 7(C).  Therefore, disclosure also "could reasonably be expected to constitute an unwarranted invasion of personal privacy" under 5 U.S.C. § 552(b)(7)(C).

5.      *Exception to Exemption 6 under* Lepelletier

When reviewing an agency's Exemption 6 withholding, *Lepelletier* requires the court to

also consider the potential interest of the individuals in the disclosure of their names and

addresses.  *See Lepelletier v. FDIC*, 164 F.3d 37, 48 (D.C. Cir. 1999) (holding "that the FOIA

analysis under Exemption 6 must include consideration of any interest the individual might have

in the release of the information, particularly when the individuals who are 'protected' under this

exemption are likely unaware of the information that could benefit them.").

In *Lepelletier*, the FOIA requester, an independent money finder, sought from the Federal

Deposit Insurance Corporation ("FDIC") the names of depositors with unclaimed funds at three

failed banks for which FDIC was a receiver.  The United States Court of Appeals for the District

of Columbia Circuit found that individuals have "some privacy interest" in nondisclosure of

names and addresses in connection with financial information, especially where that information

may be used for solicitation purposes.  *Id.* at 47.  With regard to the corresponding public interest

in disclosure, the requester argued that release of the names would inform the public about how

much money the FDIC stood to recover once the bank receiverships were terminated.  The court

rejected this argument, observing that the names "do not speak to the issue of how much money

will be recovered by the FDIC upon termination of the receiverships." *Id.*  The circuit thus

concluded that "there is no clearly discernable public interest in releasing the names associated

with the unclaimed deposits, because such a release would not inform the public of what FDIC is

'up to.'" *Id.*

Although the circuit acknowledged its prior holding that "a slight privacy interest

outweighs no public interest," it considered the case at hand distinguishable because the

depositors had a "clear and direct interest . . . in learning of their personal bank deposits and recovering them." *Id.* at 48 (citing *NARFE*, 879 F.2d at 879). The court thus held that the names could be released under FOIA, stating that "it is overly paternalistic to insist upon protecting an individual's privacy interest when there is good reason to believe that he or she would rather have both the publicity and the money than have neither."[11] *Id.*

Like *Lepelletier*, this Court finds the individuals whose property is subject to forfeiture may have some interest in the release of their names and addresses. However, the interest of these individuals does not appear to be as "clear and direct" as that of the depositors in *Lepelletier*. For instance, the privacy interest in nondisclosure is significantly stronger here than in *Lepelletier*. The release of financial information in that case, though implicating some privacy interest, did not carry with it the potential stigma and embarrassment associated with the illegality of seizure and forfeiture proceedings. Furthermore, Plaintiff argues not so much that these individuals are unaware of their interest in the seized property, but rather that they are unaware that "there is professional and legal assistance to help them regain their property." (Pl. Mot. at 23; *see also id.* at 22 ("It is possible that the individuals are aware of the information that could benefit them."); *id.* at 23 ("[U]nless [the individuals] know there is a professional organization that can represent their interests they are likely intimidated to take on the

_____

[11]Because the circuit remained concerned about the privacy interest of the depositors, and because there was no discernable public interest in disclosure, it limited the FOIA release in two ways: (1) the name of each depositor was not to be matched with the amount owed to that individual; and (2) a depositor's name would be redacted where that individual's privacy interest outweighed "his or her interest in his or her money." *Lepelletier*, 164 F.3d at 48. The circuit instructed the district court, on remand, to determine the dollar amount below which a depositor's privacy interest outweighed "his or her interest in his or her money." *Id.* at 49. The district court was also instructed to determine whether due process required additional notice to be sent from the FDIC to the depositors. The circuit further stated that, were the lower court to require such additional notice from the FDIC, the balancing under FOIA would likely "favor nondisclosure for at least some depositors, because they will have no interest in receiving the same information repeatedly." *Id.*

Government."); *but see id.* at 11-14 (arguing that Customs gave inadequate notice to individuals whose property was subject to forfeiture).)

The Court concludes that the *Lepelletier* exception to Exemption 6 is not triggered, and this limited interest in the release of the names and addresses does not outweigh the privacy interest already described.[12]   *See* discussion, *supra*, at 10-12.

B.      *FOIA Exemption 7(A)*

In addition to the names and addresses of individuals withheld under Exemptions 6 and 7(C), Customs withholds names and addresses of several commercial entities under Exemption 7(A).  Customs states that these names and addresses are associated with 13 particular seizure case numbers.[13]   (*See* Reply at 13 (citing Rev. Decl. of Gloria Marshall ("Rev. Marshall Decl.") ¶ 6.)

As with Exemption 7(C), Exemption 7(A) allows for the withholding of records "compiled for law enforcement purposes."[14]   5 U.S.C. § 552(b)(7).  Specifically, it applies to law enforcement records that "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  In determining whether a government agency has

---

[12]Even if the names and addresses were subject to disclosure under the *Lepelletier* exception to Exemption 6, they would still be withheld under Exemption 7(C).

[13]Initially, Customs withheld the names and addresses of many additional commercial entities whose property had been seized.  At the prompting of Plaintiff, and following an internal inquiry with representatives from United States Immigration and Customs Enforcement ("ICE"), Customs determined that these additional names and addresses were no longer subject to Exemption 7(A).  (*See* Def. Mot. at 3-4; *see also* Def. Mot. for a Stay [28].)  Customs subsequently agreed to release them to Plaintiff, and currently claims to withhold only the names and addresses of commercial entities from the aforementioned 13 seizure cases.

[14]The Court has already determined that records compiled by Customs in connection with the seizure and forfeiture of assets are law enforcement records within the meaning of 5 U.S.C. § 552(b)(7).  *See* discussion, *supra*, at 9-10.

properly invoked this exemption, the court must make two inquiries: (1) whether there is a

pending or prospective law enforcement proceeding; and (2) whether release of the information

could reasonably be expected to cause some articulable harm to the proceeding.  *See Long v.*

*United States Dep't of Justice*, 450 F. Supp. 2d 42, 73 (D.D.C. 2006).

### 1.    Pending or Prospective Law Enforcement Proceeding

The parties disagree over whether there are ongoing law enforcement proceedings relating

to the FOIA requests at issue.  Plaintiff argues that the underlying law enforcement proceedings

have ended.  According to Plaintiff, "the government will not go forward with administrative

proceedings until the underlying criminal law enforcement proceeding is completed."  (Pl. Mot.

at 16 (citing *John Doe v. United States*, 16 Cl. Ct. 412 (1989); Herrick Decl. ¶ 19; *Seized Asset*

*Management and Enforcement Procedures Handbook* (*excerpt), attached as* Ex. S to Pl. Mot.)

Therefore, when Customs publishes a forfeiture notice, it is "a signal that there are no other

pending law enforcement proceedings against this entity[.]"  (Pl. Reply at 10; *see also* Pl. Mot. at

4.; Herrick Decl ¶13.)  Here, because Customs has already published notices of forfeiture in each

of the seizure cases, Plaintiff concludes that there are no ongoing law enforcement proceedings.

By contrast, Customs states that the United States Immigration and Customs Enforcement

("ICE") is currently investigating the entities associated with the aforementioned 13 seizure case

numbers "for various violations of law that may or may not have been associated with those

particular seizures."  (Def. Mot at 19; Rev. Marshall Decl. ¶ 6.)  In other words, according to

Customs, "the entity subject to the noticed forfeiture proceedings may be the subject of a

*different* ICE investigation(s), separate and apart from the investigation attendant to the seizure

giving rise to the proceedings published in the newspaper."  (Def. Reply at 12-13.)

The Court disagrees with Plaintiff's contention that there are no longer ongoing law enforcement proceedings. Plaintiff's argument mistakenly assumes that the ongoing law enforcement proceeding must be the same proceeding giving rise to the forfeiture proceedings. This is not the case. *See, e.g., Pinnavaia v. FBI*, No. 04-5115, 2004 WL 2348155, at *1 (D.C. Cir. Oct. 19, 2004) (upholding Exemption 7(A) withholding, stating that although FBI San Diego field office investigation was closed, files from New York FBI field office were still part of separate, ongoing investigation); *Kuffel v. United States Bureau of Prisons*, 882 F. Supp. 1116, 1126 (D.D.C. 1995) (Exemption 7(A) still applicable when inmate has criminal charges pending in other cases).

### 2. *Reasonable Expectation of Articulable Harm to the Proceeding*

The parties also disagree over whether release of the requested information would cause harm to the proceeding. According to Customs, the release of the names and addresses to third parties such as Plaintiff could lead to those third parties attempting to contact the named entities.[15] (Def. Mot. at 20; Rev. Marshall Decl. ¶ 7.) Such contact, in turn, could cause a named entity to become suspicious of law enforcement investigations against it, even if the seizure that led to the published notice of forfeiture is no longer under investigation. (*Id.*) As a result, "there is a reasonable expectation that the company or individual will alter its practices, *i.e.*, attempt to divert merchandise through different ports of entry, change parties with whom it conducts business such as a foreign shipper or supplier, or change a relationship with any confidential informant." (*Id.*) Therefore, Customs asserts that there is a reasonable expectation that release

---

[15]Plaintiff acknowledges that it needs the names and addresses of the individuals and commercial entities whose property was seized, for the purpose of contacting them and ultimately representing them. (*See* Pl. Mot. at 2, 8, 13-14; see also Reply at 23.)

of the names and addresses could interfere with ongoing ICE proceedings.  (*Id.*)

Plaintiff argues that Customs's declarations in support of its withholdings "set forth merely general and conclusory statements."  (Pl. Mot. at 17.)  Specifically, Plaintiff asserts that Customs has failed to submit any proof of the actual existence of these purported law enforcement proceedings.

The Court concludes that Customs has submitted sufficient evidence that release of the names and addresses at issue would give rise to a reasonable expectation of harm to law enforcement proceedings.  Plaintiff is correct that an agency must submit more than conclusory statements in support of its withholding under 7(A).  *See Campbell v. Dep't of Health and Human Servs.*, 682 F.2d 256, 259 (D.C. Cir. 1982).  Here, however, Customs has submitted a sworn declaration by Gloria Marshall, an agency representative from ICE, who bases her assessment of harm to the ICE proceedings upon her personal review of the case and upon information conveyed to her in the course of her official duties.  (Rev. Marshall Decl. ¶ 2.) Further, Marshall's elucidation of the harm expected from the release of the information at issue is logical and reasonably specific.  Although Customs does not identify the specific law enforcement proceedings underway, the Court is satisfied that the proceedings are not merely foreseeable or imagined.  Plaintiff's contention that Customs must give specific evidence of the actual pending law enforcement proceedings is without force, as the release of any such information would defeat the entire purpose of the withholding.

For the reasons explained above, the Court finds that Customs has adequately demonstrated that, pursuant to Exemption 7(A), release of the requested names and addresses could reasonably be expected to interfere with enforcement proceedings being conducted by ICE.

**II.    Plaintiff's Claim for Relief Under the Declaratory Judgment Act**

Plaintiff also brings a claim challenging the validity of 19 C.F.R. § 162.45 (*see* Am.

Compl. ¶¶ 2, 108-09), which requires Customs to include "the name and place of residence of the

person to whom any vessel or merchandise seized for forfeiture under the navigation laws

belongs or is consigned, if that information is known to the Fines, Penalties, and Forfeiture

Officer."  By its plain language, the regulation does not require Customs to publish the name and

address of an interested party unless the property was seized "under the navigation laws," *i.e.*,

Title 46 of the United States Code.  *See* 19 C.F.R. § 162.45.  For this reason, Plaintiff challenges

the validity of § 162.45, arguing that "Customs should not limit the publication of names and

addresses to only those cases arising under Title 46[.]"  (Pl. Mot. at 18.)  According to Plaintiff,

Customs is required by statute to include names and addresses not only when publishing

forfeiture notices pursuant to 46 U.S.C. § 327, but also for those published pursuant to 19 U.S.C.

§ 1607.

Although the Declaratory Judgement Act allows the Court to "declare the rights and other

legal relations of any interested party seeking such declaration,"  28 U.S.C. § 2201, "it is not an

independent source of federal subject matter jurisdiction," *GNB Battery Technologies, Inc. v.

Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995).  That is, Declaratory Judgment Act remedies are

available only if "'a judicially remediable right' already exists."  *Gallucci v. Chao*, 374 F. Supp.

2d 121, 128 (D.D.C. 2005) (citing *C & E Services, Inc. of Washington v. District of Columbia

Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002); *accord Skelly Oil Co. v. Phillips

Petrol. Co.*, 339 U.S. 667, 671 (1950).

Although Plaintiff purports to bring this claim under the Declaratory Judgment Act, it does not specify any cause of action *through which* the Court may exercise subject matter jurisdiction and grant declaratory relief.  As Customs points out, Plaintiff's Complaint and Amended Complaint mention only FOIA, and make no reference to arguable sources of jurisdiction such as the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, or the Due Process Clause of the Fifth Amendment, U.S. CONST. amend. V.[16]  (*See* Def. Mot at 21; Def. Reply at 15.)  Indeed, Plaintiff explicitly rejects the notion that it brings an Administrative Procedure Act claim.  (*See* Pl. Reply at 10 ("Plaintiff did not raise an APA claim.").)  As such, the Court concludes that Plaintiff has failed to state a cause of action seeking relief under the Declaratory Judgment Act.

## CONCLUSION

Accordingly, and for the reasons set forth herein, Customs's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgement is DENIED.  An Order consistent with this Memorandum Opinion will issue separately.


DATED:    August 17, 2007                          /s/
                                          ALAN KAY
                                          UNITED STATES MAGISTRATE JUDGE

---

[16]*See* note 10, *supra* (discussing inadequacy of Plaintiff's indistinct due process challenge to Customs's forfeiture notification procedures).